IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS



| | |
|---|---|
| CYTOLOGIX CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>VENTANA MEDICAL SYSTEMS, Inc.,<br><br>Defendant. | Civil Action No. 04-11783 (NG) |

**CYTOLOGIX CORPORATION'S MEMORANDUM OF LAW SUPPORTING
ITS MOTION FOR PROTECTIVE ORDER**

I. **Introduction**

In this case, discovery between two regular litigation opponents has been stalled pending entry of a protective order, because Ventana seeks to deviate substantially from the Court's and the parties' course of dealing and allow its in-house counsel to have access to all of CytoLogix's confidential information that has or will be produced in this case. CytoLogix moves this Court to compel production of discovery materials requested by the plaintiff and for entry of a suitable protective order that is consistent with prior orders negotiated between these parties and endorsed by this Court.

II. **Background**

The present infringement action concerns similar subject matter of a related case recently tried before this Court. (Civil Action No. 1:00-CV-12231-RWZ). In the previous case CytoLogix claimed that Ventana's Benchmark instrument infringed two CytoLogix patents. A jury agreed with CytoLogix and returned with a verdict of infringement. (Docket Entry 75, December 22, 2003). The present action concerns Ventana's attempt to design around those patents. CytoLogix contends that Ventana's new instruments infringe another, recently issued CytoLogix patent.

4

The issues in this case are discrete: CytoLogix asserts only two claims of a single patent against the defendant's new Benchmark XT and LT instruments. These claims present a single, focused, claim construction issue. A favorable ruling on this single issue is likely to dispose of this case in summary judgment in favor of CytoLogix. Discovery should conclude quickly once a protective order is in place, as much of the foundational information for this case has been produced in the prior litigations and is being treated, by agreement between the parties, as produced in the present case.

Ventana's refusal to respond to the outstanding discovery requests[1] is all that is preventing CytoLogix from filing its motion for summary judgment. Ventana predicates its non-compliance on a demand that its in-house counsel, Mr. Jeffrey Danis, should have access to all levels of CytoLogix's confidential information. Earlier discovery between the parties was governed by a provisional agreement that all information be treated on a restricted confidential basis. However, more recently Ventana has balked and refused to continue producing information pursuant to that agreement. At this point Ventana is simply leveraging its remaining discovery cooperation against a demand that it receive increased, and potentially harmful, access to CytoLogix's confidential information by refusing to proceed without a protective order.[2]

CytoLogix and Ventana have a long history of litigation. Over the past several years, the parties have engaged in at least four different cases in this Court and in the District of Arizona. In each of these cases discovery was carried out under substantially identical protective orders to protect the parties' confidential information. The parties did this specifically for the purpose of facilitating document production between the various cases. The protective order confined confidential information to outside counsel on a restricted confidential basis.

---

[1] The discovery includes responses to interrogatories, certain documents and a deposition
[2] CytoLogix has not moved to compel the outstanding discovery based on the expectation that the protective order is the only obstacle preventing Ventana's compliance. However, CytoLogix reserves the right to so move if Ventana continues to refuse to respond.

5

Now, Ventana wishes to amend the protective order, which would not only impact this case, but the previous cases as well – since material from the previous cases has been deemed produced in this case. In particular Ventana requests that its in-house counsel Mr. Danis be granted access to certain of CytoLogix's most sensitive and confidential information. CytoLogix asks this Court to deny Ventana's request, and instead enter substantially the same order as it did in prior litigations.

### III. Argument

#### A. The Proposed Order Protects The Confidentiality Of CytoLogix's Business Information

The Court "has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation." Vivid Techs., Inc. v. American Science & Eng'g., Inc., 200 F.3d 795, 803-04 (Fed. Cir. 1999). As part of those broad powers, Fed. R. Civ. P. 26(c) authorizes the Court to issue protective orders, upon party conference and a showing of good cause, that are designed to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c). The Court may order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7). Good cause is shown if the restrictions "protect a party from being put at a competitive disadvantage." Zenith Radio Corp. v. Matsushita Elec. Industrial Co., Ltd., 529 F. Supp. 866, 890 (E.D. Penn. 1981). The Court must balance the risk of inadvertent disclosure of confidential information to competitors against the risk of prejudice to the moving party's case. Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992).

Where the confidential information is so sensitive that its disclosure or further disclosures could work a clearly defined and serious injury, courts restrict access to the information to outside counsel and non-employees. United States v. Dentsply International, Inc., 187 F.R.D. 152, 161-162. (D. De. June 11, 1999); see also Drexel

6

Heritage Furnishings, Inc. v. Furniture USA, Inc., 200 F.R.D. 255 (M.D.N.C. April 18, 2001) (supplier lists disclosure limited to outside attorney's eyes only). Blanchard and Co., Inc. v. Barrick Gold Corp., 2004 WL 737485 (E.D.La. 2004).

A protective order is necessary here because CytoLogix's current and future profitability depends almost entirely on its intellectual property, some of which remains valuable in large part because it remains confidential. Although it has disposed of many of its assets, including its Artisan instrument to another company, DakoCytomation, Inc., it has retained ownership of certain intellectual properties, including the patent-in-suit. Granting access to the confidential information of CytoLogix would put CytoLogix at a competitive disadvantage with a company who is a competitor in the market. Ventana would have information that could advantage it in production, manufacture, research, development or licensing. CytoLogix's remaining value as a business venture lies almost solely in its intellectual property rights. Disclosure of this confidential information would be irreversibly harmful.

Ventana is not prejudiced by a protective order that excludes their in-house counsel. Courts routinely hold that where outside counsel has been retained by a party, is involved with the litigation from the outset, and is already fully familiar with the facts and disputes at issue, the exclusion of in-house counsel from confidential information is not unduly prejudicial. Brown Bag, supra, 960 F.2d at 1470; see also Norbrook Lab. Ltd. v. G.C. Hanford Mfg. Co., 2003 U.S. Dist. LEXIS 6851. 14-17 (N.D.N.Y. 2003); A. Hirsh Inc. v. United States, 11 C.I.T. 208, 657 F. Supp. 1297, 1305 (CIT 1987) ("In view of retained counsel's competence, it is not clear how plaintiff's position will be prejudiced by excluding [in-house counsel] from access to the nonpublic part of the agency record."); Intel Corp. v. VIA Technologies, Inc., 198 F.R.D. 525 (N.D. Cal. 2000). Ventana has retained outside counsel in this dispute as it has in previous related disputes. Previous protective orders which did not include disclosure to in-house counsel were deemed sufficient and did not prejudice Ventana. There is no benefit to including Mr.

7

Danis that is not outweighed by the unacceptably high risk of either utilization or inadvertent disclosure.

      i. <u>The protective order must allow CytoLogix to protect its duty to third parties</u>

CytoLogix has disposed of a substantial portion of its assets in a sale to DakoCytomation, Inc. CytoLogix owes a duty to that purchaser to keep confidential information regarding CytoLogix' former business activities. Under agreement of the parties to expedite discovery, these documents, generated in previous litigations between the parties concerning the same subject matter, have been deemed "produced" in the present case and are already in the possession of Ventana's outside counsel. (Lee Decl., Exhibit A). By issuing a protective order that expands the scope of access from the provisional agreement and previous protective orders issued by this Court, Mr. Danis, who was never contemplated in the previous agreements and orders, will suddenly become privy to the information contained therein.

**B. The Proposed Protective Order Accurately Reflects The Past Course of Dealings Between The Parties and Past Protective Orders Issued By This Court In Prior Litigations Between Them**

To facilitate discovery in this case, the parties agreed to take advantage of discovery exchanged in their prior cases by treating such material as "produced" in this case. (Lee Decl., Exhibit A). Pending the entry of a protective order in this case, the parties agreed to observe confidentiality designations by limiting access to outside counsel only. (Lee Decl., Exhibit B). Accordingly, a large amount of highly confidential information has already been exchanged in this case.[3]

Protective orders often recognize different categories of confidential information and afford them different levels of protection. Many protective orders, including *all* of

---

[3] This includes Ventana and CytoLogix confidential information. In addition, some of the confidential information is now owned by DakoCytomation Inc., which purchased certain assets including the Artisan® line from CytoLogix.

8

the stipulated protective orders from the prior litigations between these parties, provide that certain information may not be disclosed to employees of opposing parties, including those parties' in-house counsel.

Ventana's desire to depart from prior proceedings between the parties and amend the access provided in previous protective orders conflicts with the fact that the prior orders were acceptable to the Court and the same parties until this time. Several prior litigations have been carried out without complaint under the proposed protective order. No confidential information was endangered under the prior orders. Neither of the parties had cause to complain that it was prejudiced in its preparation for trial under the prior orders and none of the circumstances has materially changed, thus this Court should repeat its prior orders and issue substantially the same order as was issued in prior cases and earlier discovery.

**C. The Protective Order Should Not Provide Confidential Access To Ventana's Employees Who Are Competitive Decision-Makers.**

Despite Mr. Danis's role as an officer of the court, the risk of harm to the plaintiff and third parties who have purchased CytoLogix's confidential assets by exposure to confidential information cannot be eliminated. The law on counsel's access to confidential material is governed by the over-arching principles set-out in United States Steel Corp. v. United States, 730 F.2d 1465 (Fed.Cir.1984). As pronounced by the Federal Circuit, the policy underlying a restriction on counsel's access to confidential materials is the concern that counsel might inadvertently disclose the confidential material learned during the course of litigation. See id. at 1468. The competing interests to be evaluated in determining the outcome of such a dispute are one party's right to broad discovery and the other party's ability to protect its confidential materials from

misuse by competitors. See Brown Bag, supra, 960 F.2d at 1469-70; BB Asset Mgmt. v. Symantec Corp., 506 U.S. 869, 113 S.Ct. 198, 121 L.Ed.2d 141 (1992).

The Court's inquiry focuses on whether counsel can be a deemed a "competitive decision-maker," which the Federal Circuit says is shorthand for "a counsel's activities, association, and relationship with a client that is such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." U.S. Steel, supra, 730 F.2d at 1468, n. 3. A counsel's title as "in-house" or "retained" will not be dispositive on the issue. See id. In addition to determining whether a counsel is a competitive decision-maker, the Court must also analyze whether denying counsel access to confidential material would work a substantial hardship on one of the parties. See id.

In applying U.S. Steel, courts have recognized that patent prosecution is a form of competitive decision making and denied access to confidential information on these grounds. See Mikohn Gaming Corp. v. Acres Gaming, Inc., 50 USPQ2d 1783, 1786 (D. Nev. 1998) (stating that despite good faith, "it is unrealistic to expect that his knowledge" of secret technology would not influence counsel's advice to his client relating to pending patent applications or future patent applications). In re Papst Licensing, 2000 U.S. Dist. LEXIS 6347, 11 (E.D.La. May 4, 2000); Chan v. Intuit, Inc, 218 F.R.D. 659 (N.D.Cal. 2003). ("advice on the scope of patent claims must also be defined as competitive decision-making"). If counsel could inadvertently use confidential information obtained in the course of this litigation to shape advice regarding the scope of patent claims as part of the prosecution of patents for any party to this action, to the detriment of the opposing party, its competitor, then such counsel should either be denied access to confidential

10

information or be precluded from patenting for a party.  In re Papst Licensing, supra, 2000 U.S. Dist. LEXIS 6347 at 11.

Intellectual property licensing activity also falls within the boundaries set out by U.S. Steel.  See Intel Corp. v. VIA Techs., Inc., 198 F.R.D. 525, 531-32 (N.D. Cal. 2000) (denying access to counsel due to involvement in licensing and extensive contact with competitive decision-makers).  See also Safe Flight Instrument Corp. v. Sundstrand Data Control Corp., 682 F. Supp. 20, 22 (D. Del. 1988) (recognizing that one who receives confidential information will have difficulty in keeping "separate the applications he has extrapolated from documents from those he develops from his own ideas").

As a person who is involved in making competitive decisions for Ventana, Mr. Danis cannot be reasonably expected to keep separate the secrets of a competitor despite his best intentions.  His function as in-house counsel stresses his ability to judge between alternatives, and in doing so it would be impossible to keep confidential information, gained during litigation, from unintentionally influencing his decisions.

It is very difficult to police the dissemination of confidential information – particularly when such information is placed in the hands of a competitor.  CytoLogix's concerns in seeking to incorporate such restrictions are not merely hypothetical.  Mr. Danis has already violated the terms of a prior protective order between these parties by improperly possessing – at Ventana – certain CytoLogix documents that were designated as "Outside Counsel Only."  During litigation between Ventana and a third party, Mr. Danis admittedly had in his possession at Ventana CytoLogix documents that he was prohibited from possessing or viewing under the terms of a protective order from a prior litigation against CytoLogix.  Attached hereto are correspondence that reflect that

11

violation. (Lee Decl., Exhibit C). Mr. Danis was unable to explain the circumstances. Regardless of the cause, this evidence illustrates the dangers of producing confidential information generally and highlights the specific risks associated with allowing in-house counsel and Mr. Danis in particular access to highly confidential information.

i. <u>The defendant cannot demonstrate a compelling reason for its in-house counsel to have access to the confidential material</u>

Mr. Danis does not need access to CytoLogix's confidential information. The present case involves patents in which all, or substantially all, of the information that relates to liability is in the public domain or is confidential to Ventana. Little or none of CytoLogix's own confidential information bears any relationship to liability, and none of it bears any relationship to the infringement question.

**IV. Conclusion**

The protective order proposed by CytoLogix follows well-established precedent and bars competitive decision-makers, including those involved in patent prosecution and licensing, from receiving confidential material produced in litigation. Its restrictions are reasonable with respect to the nature of activities prohibited to those who receive confidential information. Moreover, it applies equally to all parties and prevents very real harm to CytoLogix.

Dated: March 15, 2005

By: _____
Michael Zeliger (BBO # 633654)
**FISH & RICHARDSON, P.C.**
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906
Attorney for Plaintiff
CYTOLOGIX CORPORATION

13