IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYTOLOGIX CORPORATION,<br><br>   Plaintiff,<br><br>  v.<br><br>VENTANA MEDICAL SYSTEMS, INC.,<br><br>   Defendant. | CIVIL ACTION NO. 04-11783 (RWZ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
STATEMENT OF UNDISPUTED FACTS**

  Pursuant to Local Rule 56.1, defendant Ventana Medical Systems, Inc. submits this statement of the material facts of record as to which there exists a genuine issue to be tried, in response to CytoLogix Corporation's Statement of Material Facts to Which There is No Genuine Dispute, filed December 13, 2005.

  1. CytoLogix Corporation ("CytoLogix") is the owner by assignment of United States Patent No. 6,541,261, the patent-in-suit ("the '261 patent"). (Zeliger Ex. 1, '261 Patent).

  **Response:** Not disputed that CytoLogix is the named assignee of the '261 patent, as indicated on the face of the patent.

  2. Ventana Medical Systems, Inc. ("Ventana") manufactures, sells and actually uses its BenchMark XT and BenchMark LT instruments. (Zeliger Ex. 2 at 58:21-25, Zeliger Exs. 9-11).

  **Response:** Not disputed.

  3. These instruments differ only in the number of slides that they hold. ("I don't believe that there's any other differences, other than capacity.") (Zeliger Ex. 2 at 45:20-21).

  **Response:** Not disputed for "these instruments" (*i.e.*, BenchMark XT and BenchMark LT), with respect to issues relevant to the pending motion.

-1-

     4. Ventana previously manufactured and sold its BenchMark instrument. (Zeliger Ex. 2).

     <u>Response</u>: Irrelevant. The prior-generation BenchMark instrument is not at issue in this litigation. Compl. ¶ 8 (Apr. 15, 2004) (Docket No. 1); Declaration of Roger J. Chin in Support of Defendant's Opposition to Plaintiff's Combined Motion for Claim Construction and Summary Judgment of Infringement, Ex. ("Chin Ex.") 26 at 3, filed concurrently herewith.

     5. The BenchMark has been adjudicated to infringe United States Patents 6,180,061 and 6,183,693, which patents were found to be valid. (*CytoLogix Corp. v. Ventana Medical Systems, Inc.*, 424 F.3d 1168 (Fed. Cir. 2005)).

     <u>Response</u>: Irrelevant. The prior-generation BenchMark instrument is not at issue in this litigation. Compl. ¶ 8; Chin Ex. 26 at 3. Additionally, while certain of Ventana's challenges to validity did not succeed in the prior litigation, others have been remanded for further consideration. *CytoLogix*, 424 F.3d at 1178. Finally, the patents were not "found to be valid" because "[c]ourts do not find patents 'valid,' only that the patent challenger did not carry the 'burden of establishing invalidity in the particular case before the court' under 35 U.S.C. § 282." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1429 n.3 (Fed. Cir. 1988).

     6. The slide carousel in the BenchMark rotated. (Zeliger Ex. 9 at 2 (VM000011), 3 (VM000012) and 4 (VM000013)).

     <u>Response</u>: Irrelevant. The prior-generation BenchMark instrument is not at issue in this litigation. Compl. ¶ 8; Chin Ex. 26 at 3. Furthermore, CytoLogix's record citations have nothing to do with either the BenchMark instrument or any slide carousel. Rather, the citations discuss the "reagent carousel" in the BenchMark XT and BenchMark LT. *See, e.g.*, Zeliger Ex. 9 at 2 (VM000011).

     7. The liquid dispenser in the BenchMark XT and BenchMark LT rotate. (Zeliger Ex. 9 at 2 (VM000011), 3 (VM000012) and 4 (VM000013)).

     <u>Response</u>: Not disputed that the liquid dispenser in the BenchMark XT and BenchMark LT is on a reagent carousel that rotates.

      8. The BenchMark and the BenchMark XT, BenchMark LT are otherwise very similar. (Zeliger Ex. 2 at 45:20-21).

      **Response**:  Irrelevant.  The prior-generation BenchMark instrument is not at issue in this litigation.  Compl. ¶ 8; Chin Ex. 26 at 3.  Furthermore, the undisputed record proves the very opposite of what CytoLogix asserts.  Ventana's witness, upon whom CytoLogix relies in paragraph 8, testified that "[t]here are many differences" between the BenchMark and the BenchMark XT.  Zeliger Ex. 2 at 47:7.  These differences include "performance differences as well in that the XT, because the slides don't move once they're fixed in place and the run begins, there's no motion, and so it tends to be more robust, more reliable.... With the BenchMark, there's constant motion, and the fluid bolus can move or be pushed off, or it can wick off."  *Id*. at 47:14-20.  As a result of these differences, with the BenchMark XT, "the end result, the stained tissue sample, was superior to that of the BenchMark."  *Id*. at 48:10-13.

      9. The '261 patent concerns automated instruments that replace manual slide staining techniques. (Zeliger Ex. 1).

      **Response**:  Not disputed.

      10. The '261 patent is in the same family as CytoLogix's '693 patent. (Zeliger Ex. 1).

      **Response**:  Not disputed.

      11. The '261 patent claims an improved slide staining method, which runs multiple procedures to numerous samples mounted on slides, concurrently. (Zeliger Ex. 1 at 1:66-27, 2:1-10.)

      **Response**:  Disputed.  The subject matter of asserted claims 1 and 2 is defined by the language of the claims.  *See* Chin Ex. 1 at 12:14-28.

      12. Unlike slide stainers existing in the prior art, the invention claimed by the '261 patent allows for individual slides to be heated to different temperatures. (Zeliger Ex. 1. at 2:5-10.)

      **Response**:  Disputed.  The patentees admitted that several prior art references, including "Tseung et al. and Brinker et al., like Muller et al. and Potter et al., disclose heating

of stationary samples to different temperatures." Chin Ex. 5 at 5. For example, the prior art Muller reference discloses individually heating samples on microscope slides to different temperatures. *See, e.g.*, Chin Ex. 16 at 3:27-28 & 29:31-33. Likewise, the patentees admitted that "the apparatus of [prior art] Bogen et al. is capable of individual temperature control." Chin Ex. 4 at 5. Mr. Loeffler, a named inventor of the '261 patent, testified that the patentees did not "ever design a slide processing device in which the slide platform did not move at all but which had the capability of heating some slides to a first defined temperature and heating other slides to another defined temperature." Chin Ex. 19 at 104:17-23.

13. Specifically, the '261 patent discloses and claims a way "to heat slides to different temperatures, independently of the temperatures of other slides." (Zeliger Ex. 1 at 2:7-9.)

**Response**: Disputed. The patentees admitted that heating slides to different temperatures was known in the prior art. *See, e.g.*, Chin Ex. 5 at 5; Chin Ex. 4 at 5. The patentees told the Patent Office that the '261 patent "provide[s] independent temperature control to heating elements <u>on a moving platform</u>." Chin Ex. 10 at 4 (emphasis added). Thus, "the problem overcome by the present invention" was "the problem of controlling the heating elements <u>on a moving platform</u>." *Id.* (emphasis added). *See also* response to paragraph 12, *supra*.

14. In addition, the invention allows for "complete random access, i.e., any reagent to any slide in any sequence." (Zeliger Ex. 1 at 7:41-43.)

**Response**: Irrelevant. The asserted claims 1 and 2 do not refer to "random access" or the sequence in which the liquid dispenser dispenses liquid onto the two or more microscope slides. Chin Ex. 1 at 12:14-28.

15. Such "random access" is advantageous because it allows the instrument run different staining protocols on different samples, all at the same time.
> As the '261 patent explains:
> Tissue sections or cellular monolayers are commonly examined by microscopic examination, for both research and clinical diagnostic purposes. Thin tissue sections or cellular preparations are

-4-

> commonly 1-10 microns thick, and are nearly transparent if untreated. In order to visualize various histologic features, a wide array of staining procedures have been developed over the years that highlight various cellular or extracellular components of the tissues. Histochemical stains, also commonly termed "special stains," employ chemical reactions to color various chemical moieties. Immunohistochemical stains employ antibodies as probes to color specific proteins, commonly via enzymatic deposition of a colored precipitate. *Each of these histochemical and immunohistochemical stains requires the addition and removal of reagents in a defined sequence for specific time periods, at defined temperatures. Therefore, a need arises for a slide stainer that can perform a diversity of stains simultaneously under computer control, as specified by the technologist.*

(Zeliger Ex. 1 at 1: 12-30, emphasis added.).

**Response:** Irrelevant. The asserted claims 1 and 2 do not refer to "random access" or the protocols for which the liquid dispenser dispenses liquid onto the two or more microscope slides. Chin Ex. 1 at 12:14-28.

16. The '261 patent has seven claims, six of which are dependent. (Zeliger Ex. 1) Claims 1 and 2 are asserted in this case.

**Response:** Not disputed.

17. Claim 1 is an independent claim:

> 1. A method of processing samples mounted on microscope slides comprising:
> placing two or more microscope slides on a platform;
> providing heating elements being under independent electronic control, and thereby capable of heating some slides to a different temperature than other slides;
> moving the platform and a liquid dispenser relative to each other;
> dispensing liquid from the dispenser onto the slides;
> and
> on the platform, heating one slide to a different temperature than a second slide.

(Zeliger Ex. 1 at 12:14-26.)

**Response:** Disputed. CytoLogix omits language ("capable of heating said slides, said heating elements") from the second step of claim 1. Claim 1 is an independent claim that recites:

> 1. A method of processing samples mounted on microscope slides comprising:
> placing two or more microscope slides on a platform;
> providing heating elements capable of heating said slides, said heating elements being under independent electronic control and thereby capable of heating some slides to a different temperature than other slides;
> moving the platform and a liquid dispenser relative to each other;
> dispensing liquid from the dispenser onto the slides; and
> on the platform, heating one slide to a different temperature than a second slide.

18. Claim 2 is a dependent claim:

> A method of processing samples mounted on microscope slides as claimed in claim 1, wherein each heating element heats only one slide.

(Zeliger Ex. 1 at 12:26-28.)

**Response:**  Not disputed.

19. The specification of the '261 patent explains the importance of indexing and independent slide heating: "Since various procedures require heat at different times to enhance the rate of chemical reaction, a means has been developed to heat slides to different temperatures, independently of the temperatures of other slides." (Zeliger Ex. 1 at 2:5-9.)

**Response:**  Not disputed.

20. The specification provides examples of these various procedures:

> Variables in these protocols can include the particular reagent used on the tissue sample, the time that the tissue sample is allowed to react with the reagent, whether the tissue sample is then heated, the rinse that is then used to wash the reagent away, followed by the subsequent removal of the rinse and reagent to allow subsequent exposure to a possibly different reagent.

(Zeliger Ex. 1 at 7:35-41.)

**Response:**  Not disputed.

21. A necessary component is that slides be aligned with the dispenser:

> It is possible to dispense from any of a plurality of cartridge pumps by rotating the reagent rotor so as to align a desired cartridge pump 46 with the hammer 26. This provides the capability of dispensing precisely measured amounts of reagent to any slide positioned underneath the cartridge pump 46 adjacent to actuator 26.

(Zeliger Ex. 1 at 5:29-35.)

**Response:**  Not disputed.

22. Two examples of achieving this alignment are described, wherein the slides rotate to the liquid dispenser, but nothing in the specification or this embodiment conflicts with the concept of relative motion.  Indeed the specification even notes that the examples should not be considered exclusive:

> While this invention has been particularly shown and described with references to preferred embodiments thereof, it will be understood by those skilled in the art that various changes in form and details may be made therein without departing from the spirit and scope of the invention as defined by the appended claims.

(Zeliger Ex. 1 at 12:3-8.)

**Response:**  Disputed.  There is no disclosure whatsoever of any "concept of relative

motion" in the '261 patent.  Rather, the specification consistently and repeatedly describes the

invention as one in which independently controlled slide heaters are mounted on a moving slide platform. The Abstract, the Summary of the Invention, and the Detailed Description of the Invention all describe the invention as one in which there is a moving slide platform. *See, e.g.*, Chin Ex. 1 at 2:27 ("moving slide stainer"), 2:30-31 ("moving plating"), 2:41-42 ("associated with a moving platform"), 3:62 ("slide rotor is driven to rotate"), 5:1 ("in frequent motion"), 5:5 ("slide rotator rotates") & 8:33 ("free rotation of the slide rotor 77"). CytoLogix cannot broaden the scope of properly construed claims by reference to boilerplate language in the specification, which does nothing to "provide a 'full' and 'exact' description of the claimed invention" as required by statute. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005); *see also Wang Labs., Inc. v. America Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999) ("The usage 'preferred' does not of itself broaden the claims beyond their support in the specification.").

23. The original claims in the application for the '261 patent referred to a "moving platform." (Zeliger Ex. 3 at 21 (claims 1, 3, 4).)

**Response**: Not disputed.

24. Throughout several amendments, the amended claims continued to refer to a "moving platform." (Zeliger Ex. 4 and Zeliger Ex. 5 at 2-3.)

**Response**: Not disputed.

25. However, following an interview with the patent examiner, the applicant voluntarily made a broadening amendment and removed the "moving platform" limitation from all claims. The following are "marked up" versions of these claims showing the changes:

> 1. (Thrice Amended) A method of processing samples mounted on microscope slides as claimed in claim 8 further comprising:
> [placing two or more microscope slides on a moving platform, the moving platform having heating elements thereon to heat said slides;]
> communicating data from a computer not located on the moving platform to electronic circuitry mounted on the moving platform; and
> processing the data in the electronic circuitry on the moving platform and supplying from the electronic circuitry on the moving platform, amounts of electrical power to the heating elements dependent on the data, to heat one of the slides to a different temperature than a second one of the slides.

> 5. (Twice Amended) A method of processing samples on microscope slides as claimed in claim 8 further comprising;
> [positioning a plurality of microscope slides bearing biologic samples on a moving platform, said moving platform having a plurality of heating elements controllable to individual temperatures and electronic circuitry thereon;]
> providing a computer comprising a user interface through which a desired temperature for each microscope slide is specified, said user interface being mounted off of the moving platform;
> sending data from the computer to the electronic circuitry on the moving platform over a group of conductors, the number of conductors in said group of conductors being less than the number of heating elements controllable to individual temperatures; and
> processing the data in the electronic circuitry on the moving platform, and supplying electrical power to the heating elements from the electronic circuitry on the moving platform.
>
> 6. (Amended) A method of processing samples mounted on microscope slides comprising:
> placing two or more microscope slides on a [moving] platform;
> providing heating elements capable of heating said slides, said heating elements being under independent electronic control and thereby capable of heating some slides to a different temperature than other slides; [and]
> <u>moving the platform and a liquid dispenser relative to each other;</u>
> <u>dispensing liquid from the dispenser onto the slides; and</u>
> on the [moving] platform, heating one slide to a different temperature than a second slide.
>
> 8. (Amended) A method of processing samples mounted on microscope slides as claimed in claim 6, wherein the platform is a moving platform [is] capable of indexing slides adjacent to a stationary liquid dispensing location.

(Zeliger Ex. 6 at 1-2.).

**Response:** Disputed. The patentees' changes were not a "broadening amendment" and they had not "removed the 'moving platform' limitation from all claims." Application claim 6 continued to require "moving the platform." The other application claims were amended to depend (either directly or indirectly) on application claim 6, and therefore, they also incorporated by reference the "moving the platform" requirement from application claim 6. 35 U.S.C. § 112 ¶ 4. Thus, after the amendment, the claims continued to require moving the slide platform. *See* Declaration of Geoffrey Nunberg in Support of Defendant's Opposition to Plaintiff's Combined Motion for Claim Construction and Summary Judgment of Infringement ¶¶ 7-16, filed concurrently herewith. The patentees simply relocated the requirement of moving the platform from the first element to the third element of application claim 6. Nowhere in the accompanying remarks did the patentees make any statement to corroborate CytoLogix's litigation-induced theory that this application introduced a broadening amendment. In fact, in this amendment the patentees retained the original

language of application claim 9, which continued to refer to the "said moving platform" of application claim 6. Chin Ex. 12 at 3. Finally, CytoLogix inaccurately quotes the excerpted portion of the record, by omitting underlining in application claims 1, 5 and 8, and by omitting the term "mounted" in the preamble of application claim 5.

> 26. The applicant expressly noted this change to the to the examiner:
>
> Amended independent claim 6 recites independent temperature control of slides in a system in which *a liquid dispenser and a slide supporting platform are moved relative to each other in order to dispense liquid on the slide*. None of the prior art, alone or in combination, teaches such a system.
>
> (Zeliger Ex. 6 at 4-5 (emphasis added).)

**Response:** Disputed, to the extent that "this change" refers to the alleged "broadening amendment" mentioned in paragraph 25. The patentees' statement confirms that both the slide platform and the liquid dispenser must move. By asserting that "a liquid dispenser <u>and</u> a slide supporting platform <u>are</u> moved," the patentees are indicating that both objects move. The verb "are" specifies that two or more objects move. *See* Chin Ex. 19 at 58:24-59:6 & 60:3-5. The patentees' statement in this regard is consistent with the description in the patent specification that "[t]he reagent rotor 4 and the slide rotor 3 rotate independently of each other." Chin Ex. 1 at 5:17-19.

> 27. The examiner explained that the key to the invention was staining capability coupled with independent and individual slide temperature control:
>
> Applicant asserted combination of automated staining w/ automated individual & independent slide temp. control was non-obvious. Exmr. indicated such combination was not presently claimed. Applicant's assertion that separate & distinct temp. controls., i.e. heating to different temperature, in the primary '114 reference would <u>not</u> have been considered purposeful nor desired in the environment of that disclosure would be considered as 2° evidence on non-obviousness when filed.
>
> (Zeliger Ex. 7.)

**Response:** Disputed. In this passage, the Patent Examiner says nothing about what was "the key to the invention." In relevant part, this passage merely restates what the applicants asserted during the interview. The Interview Summary does not show that agreement was reached. *See* Chin Ex. 13 (item 2f). At the time of the interview, the Patent

Examiner had not yet decided whether to allow the claims. Consequently, a Supplemental Amendment was submitted by the patentees three weeks after the interview. Chin Ex. 14. In response to the Supplemental Amendment, the Patent Examiner allowed the claims, explaining that "[t]he claims as now amended are directed to methods for processing samples which includes both dispensing of fluids <u>onto moveable sample slides</u> and simultaneously heating different sample slides to different temperatures." Chin Ex. 15 at 2 (emphasis added).

      28. The examiner later explained his rationale—the inventiveness of "the capability of heating simultaneously to different temperatures"—in his "statement of reasons for allowance":

> Applicant's response filed 10-04-02 obviates the rejections set out in the last office action. The claims as now amended are directed to methods for processing samples which includes both dispensing of fluids onto moveable sample slides and simultaneously heating different sample slides to different temperatures. The response filed by applicant, including the submitted articles in support of the argument, are in the totality sufficient to establish that *one of ordinary skill in the art viewing the apparatus of the '114 patent, would not have recognized any necessity nor desirability, absent applicant's disclosure, of providing the capability of heating simultaneously to different temperatures.*

(Zeliger Ex. 8 at 2 (emphasis added).)

**Response:** Disputed. The claims were not allowed based on the alleged "inventiveness of 'the capability of heating simultaneously to different temperatures.'" Rather, the Reasons for Allowance expressly states that the claims of the '261 patent, as allowed, require "dispensing of fluids onto moveable sample slides." Chin Ex. 15 at 2. The patentees and the Patent Examiner were in agreement that the prior art disclosed heating different samples on a stationary platform to different temperatures. According to the patentees: "Tseung et al. and Brinker et al., like Muller et al. and Potter et al., disclose heating of stationary samples to different temperatures." Chin Ex. 5 at 5; *see also* Chin Ex. 4 at 5 ("the apparatus of Bogen et al. is capable of individual temperature control"). According to the Patent Examiner: "Muller et al. teach a sample slide processing system having a plurality of heating elements, each of which has the capability of heating to different temperatures." Chin Ex. 9 at 4.

     29. The BenchMark XT processes samples mounted on microscope slides. (Zeliger Ex. 2 at 48:18-20, Zeliger Ex. 9 at 1 (VM000010), 209 (VM000218), Zeliger Ex. 10 at 5 (VM000444)).

     **Response:** Not disputed.

     30. The BenchMark LT processes samples mounted on microscope slides. (Zeliger Ex. 2 at 48:21-23, Zeliger Ex. 9 at 1 (VM000010), 209 (VM000218) and Zeliger Ex. 10 at 5 (VM000444)).

     **Response:** Not disputed.

     31. The BenchMark XT holds two or more microscope slides on a platform. (Zeliger Ex. 2 at 48:24-49:1, Zeliger Ex. 10 at 9 (VM000448) and 26 (VM000465)).

     **Response:** Disputed. As properly construed, the term "platform" in the claims of the '261 patent refers to a rotary carousel. *See* Defendant Ventana Medical Systems, Inc.'s Memorandum in Opposition to Plaintiff's Combined Motion for Claim Construction and Summary Judgment of Infringement ("Opp'n Mem.") at 25-28, filed concurrently herewith. The BenchMark XT does not have a rotary carousel. Rather, the slides are held in a support that is stationary and locked into place during slide processing. Zeliger Ex. 2 at 47:15-17 & 60:5-9.

     32. The BenchMark LT holds two or more microscope slides on a platform. (Zeliger Ex. 2 at 49:2-4, Zeliger Ex. 10 at 9 (VM000448) and 26 (VM000465)).

     **Response:** Disputed. As properly construed, the term "platform" in the claims of the '261 patent refers to a rotary carousel. *See* Opp'n Mem. at 25-28. The BenchMark LT does not have a rotary carousel. Rather, the slides are held in a support that is stationary and locked into place during slide processing. Zeliger Ex. 2 at 47:15-17 & 60:5-9.

     33. The BenchMark XT contains heating elements that are capable of heating some slides to different temperatures than other slides. (Zeliger Ex. 2 at 51:2-13, Zeliger Ex. 10 at 7 (VM000446)).

     **Response:** Not disputed.

34. The BenchMark LT contains heating elements that are capable of heating some slides to different temperatures than other slides. (Zeliger Ex. 2 at 51:2-15, Zeliger Ex. 10 at 7 (VM000446)).

**Response**:  Not disputed.

35. The BenchMark XT has heating elements that are under independent electronic control, such that slides can be heated to different temperatures. (Zeliger Ex. 2 at 51:2-13, Zeliger Ex. 10 at 7 (VM000446)).

**Response**:  Not disputed.

36. The BenchMark LT has heating elements that are under independent electronic control, such that slides can be heated to different temperatures. (Zeliger Ex. 2 at 51:2-15, Zeliger Ex. 10 at 7 (VM000446)).

**Response**:  Not disputed.

37. The liquid dispenser on the BenchMark XT moves relative to the slide sample platform. (Zeliger Ex. 2 at 83:23-25, Zeliger Ex. 9 at 2 (VM000011), 3 (VM000012) and 4 (VM000013), and Zeliger Ex. 11 at 14 (VM000249) and 19 (VM000254)).

**Response**:  Disputed.  As properly construed, the term "platform" in the claims of the '261 patent refers to a rotary carousel.  *See* Opp'n Mem. at 25-28.  The BenchMark XT does not have a rotary carousel.  Rather, the slides are held in a support that is stationary and locked into place during slide processing.  Zeliger Ex. 2 at 47:15-17 & 60:5-9.

38. The liquid dispenser on the BenchMark LT moves relative to the slide sample platform. (Zeliger Ex. 2 at 83:1-3, Zeliger Ex. 9 at 2 (VM000011), 3 (VM000012) and 4 (VM000013), and Zeliger Ex. 11 at 14 (VM000249) and 19 (VM000254)).

**Response**:  Disputed.  As properly construed, the term "platform" in the claims of the '261 patent refers to a rotary carousel.  *See* Opp'n Mem. at 25-28.  The BenchMark LT does not have a rotary carousel.  Rather, the slides are held in a support that is stationary and locked into place during slide processing.  Zeliger Ex. 2 at 47:15-17 & 60:5-9.

39. The BenchMark XT dispenses liquid from the dispenser onto the slides. (Zeliger Ex. 2 at 51:16-19, Zeliger Ex. 11 at 14 (VM000249)).

**Response**:  Not disputed.

40. The BenchMark LT dispenses liquid from the dispenser onto the slides. (Zeliger Ex. 2 at 51:20-22, Zeliger Ex. 11 at 14 (VM000249)).

**Response**: Not disputed.

41. The BenchMark XT heats one slide on a platform to a different temperature than another slide. (Zeliger Ex. 2 at 51:23-25, Zeliger Ex. 11 at 68 (VM000303)).

**Response**: Disputed. As properly construed, the term "platform" in the claims of the '261 patent refers to a rotary carousel. *See* Opp'n Mem. at 25-28. The BenchMark XT does not have a rotary carousel. Rather, the slides are held in a support that is stationary and locked into place during slide processing. Zeliger Ex. 2 at 47:15-17 & 60:5-9.

42. The BenchMark LT heats one slide on a platform to a different temperature than another slide. (Zeliger Ex. 2 at 52:1-3, Zeliger Ex. 11 at 68 (VM000303)).

**Response**: Disputed. As properly construed, the term "platform" in the claims of the '261 patent refers to a rotary carousel. *See* Opp'n Mem. at 25-28. The BenchMark LT does not have a rotary carousel. Rather, the slides are held in a support that is stationary and locked into place during slide processing. Zeliger Ex. 2 at 47:15-17 & 60:5-9.

43. In the BenchMark XT, each heating element heats only one slide. (Zeliger Ex. 2 at 52:4-6, Zeliger Ex. 11 at 68 (VM000303)).

**Response**: Not disputed.

44. In the BenchMark LT, each heating element heats only one slide. (Zeliger Ex. 2 at 52:7-9, Zeliger Ex. 11 at 68 (VM000303)).

**Response**: Not disputed.

Dated: April 4, 2006                              VENTANA MEDICAL SYSTEMS, INC.

By its attorneys,


　　　/s/ Roger J. Chin

Peter E. Gelhaar (BBO #188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, MA  02108
(617) 720-2880

Ron E. Shulman (*pro hac vice*)
Roger J. Chin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California  94304
(650) 493-9300

Jeffrey N. Danis (BBO #113880)
VENTANA MEDICAL SYSTEMS, INC.
1910 Innovation Park Drive
Tucson, Arizona  85737
(520) 229-3965

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 4, 2006.

　　　/s/ Roger J. Chin
　　　Roger J. Chin