Herbert Loeffler          CONFIDENTIAL          March 29, 2006
                          Boston, MA

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
                    CA NO. 04-11783-RWZ
CYTOLOGIX CORPORATION,
          Plaintiff,

   VS.

VENTANA MEDICAL SYSTEMS,
INC.,
          Defendant.
     **********************************

          UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF DELAWARE
                    CA NO. 04-1522-GMS

VENTANA MEDICAL SYSTEMS, INC.,
          Plaintiff,
   VS.
DAKO CYTOMATION CALIFORNIA, INC.,
          Defendant.


          VIDEOTAPE DEPOSITION OF HERBERT LOEFFLER,

a witness called to testify by counsel for the

Defendant in the above-entitled matters, pursuant

to Federal Rules of Civil Procedure, before

Julie A. Bates, Registered Professional Reporter

and Notary Public in and for the Commonwealth of

Massachusetts, at the offices of Donnelly,

Conroy & Gelhaar, One Beacon Street, Boston,

Massachusetts, on Wednesday, March 29, 2006,

commencing at 9:32 a.m.

Herbert Loeffler          CONFIDENTIAL          March 29, 2006
                        Boston, MA

---

Page 28

1              MR. ZELIGER:  Objection.  Lack of

2      foundation and calls for a legal conclusion

3      and calls for opinion testimony.

4              (The witness reviewed the

5      documents.)

6   A.  Claim 1 says, "place microscope slides on a

7      platform."  So it refers to that platform.

8      And then further on in claim 1 it

9      says, "moving the platform and a liquid

10     dispenser relative to each other."

11             And claim 7 says, "on said moving

12     platform."  So it refers to the platform

13     with the slides.  But claim 1, as I

14     understand it, is the -- an independent

15     claim that defines that the platforms may

16     move relative to each other.

17  Q.  There's only one platform in claim one,

18     right?

19             (The witness reviewed the

20     documents.)

21  A.  Let's see.  In claim 1 moving platform and

22     liquid dispenser -- well, it describes two

23     elements.  It describes a moving platform

24     and a liquid dispenser.

25  Q.  Right.  But there's only one platform

---

Alderson Reporting Company

ce572f69-9070-430c-8354-3ec7afe9ffff

Herbert Loeffler        CONFIDENTIAL          March 29, 2006
                        Boston, MA

Page 29

1       that's referred to in claim 1.  That's the
2       slide platform, right?
3   A.  Right.
4   Q.  And claim 7 refers to that platform
5       as, "said moving platform," right?
6   A.  That's what it says.
7   Q.  Okay.  Now let's go back to claim 1.  The
8       fourth step of claim 1 calls for
9       "dispensing liquid from the dispenser onto
10      the slides."  Do you see that?
11  A.  Yes, I see it.
12  Q.  And the dispenser called for in the fourth
13      step refers back to the same liquid
14      dispenser that was introduced in the third
15      step of claim 1, correct?
16              MR. ZELIGER:  Same objection.
17  A.  Third step of claim 1.  I'm looking for
18      that.
19              (The witness reviewed the
20      documents.)
21  A.  Line 31 says, "moving the platform and a
22      liquid dispenser relative to each other."
23  Q.  21 I think you meant.
24  A.  21, I'm sorry.
25  Q.  Right.  The third step says, "moving the

ce572f69-9070-430c-8354-3ec7afe9ffff

Herbert Loeffler        CONFIDENTIAL            March 29, 2006
                         Boston, MA

```
                                                      Page 58
 1          all of the additions to the --
 2   Q.     They were made during the deposition,
 3          that's correct.
 4   A.     All right.
 5   Q.     So you can ignore that for present
 6          purposes.  If you would just read the first
 7          sentence that bridges pages 4 and 5.
 8                  (The witness reviewed the
 9          documents.)
10   A.     I've read that.
11   Q.     Okay.  And you see here that your attorney
12          stated that "Amended independent claim 6
13          recites independent temperature control of
14          slides in a system"?
15                  MR. ZELIGER:  Objection.  Lack of
16          foundation.
17   A.     I see the language as it's written.
18   Q.     Okay.  And then he says it's "in a system
19          in which," quote, "a liquid dispenser and a
20          slide supporting platform are moved
21          relative to each other in order to dispense
22          liquid on the slide."  Do you see that?
23   A.     Yes, it does say that.
24   Q.     And it says, "liquid dispenser and a slide
25          supporting platform are moved," right?
```

Alderson Reporting Company
1111 14th Street, NW Suite 400 1-800-FOR-DEPO        Washington, DC 20005

ce572f69-9070-430c-8354-3ec7afe9ffff

Herbert Loeffler          CONFIDENTIAL                March 29, 2006
                            Boston, MA

Page 59

```
 1                    (The witness reviewed the
 2          documents.)
 3    A.    Yes, that's what it says.
 4    Q.    And "are," the verb "are," is plural,
 5          right?
 6    A.    Yes.
 7    Q.    And the reason it's plural is because two
 8          things are being moved; namely, a liquid
 9          dispenser and a slide supporting platform,
10          according to this sentence.
11                    MR. ZELIGER:  Objection.  Lack of
12          foundation.  According to part of the
13          sentence.
14    Q.    Correct?
15    A.    Could you please repeat the question?
16    Q.    Yes.  The reason the plural verb "are" is
17          used is because there are two subjects that
18          are being moved in this sentence; namely, a
19          liquid dispenser and a slide supporting
20          platform, correct?
21                    MR. ZELIGER:  Objection to the
22          form of the question.  Lack of foundation.
23          That's not what the sentence says, that's
24          what a part of the sentence says.
25    A.    Well, that part of the sentence just --
```

Alderson Reporting Company

ce572f69-9070-430c-8354-3ec7afe9ffff

Herbert Loeffler         CONFIDENTIAL              March 29, 2006
                          Boston, MA

---

                                                          Page 60

```
 1        does refer to two objects.  "Are" would be
 2        plural.
 3   Q.   Okay.  Does that tell you that both of them
 4        are moved relative to each other?
 5   A.   In that sentence, yes.
 6   Q.   Okay.  Not one or the other is moved, both
 7        are moved relative to each other, correct?
 8   A.   Well, "relative" means that they move in
 9        relation to each other.  It doesn't
10        necessarily mean -- it's back to the one,
11        the other, or both may move in order to
12        accomplish alignment.
13   Q.   Well, it doesn't say here "liquid dispenser
14        or a slide supporting platform is moved
15        relative to the other," does it?
16   A.   No, it doesn't say that.
17   Q.   It says both are moved, right?
18            MR. ZELIGER:  "...relative to
19        each other."
20   A.   Yeah.  The word "relative" is what makes it
21        possible to move one, the other, or both.
22   Q.   Okay.  What does "move" mean to you, the
23        verb "move"?
24   A.   Displacement in relation to a reference.
25   Q.   What does "displacement" mean?
```

---

ce572f69-9070-430c-8354-3ec7afe9ffff

Herbert Loeffler          CONFIDENTIAL               March 29, 2006
                          Boston, MA

Page 79

```
 1          after I do so, I'll ask you whether you
 2          gave that testimony.
 3                  "Question:  What you were telling
 4          the potential investors in your company
 5          about the machine is that it could do
 6          individual slide heating.
 7                  "Answer:  Yes."
 8                  Did you give that testimony, sir?
 9   A.     I have to believe you.
10   Q.     Now, in the Spectrum 50, like the device
11          described in the 114 patent, is it correct
12          that the slides on the rotary carousel and
13          the reagents on the reagent carousel were
14          indexed to a dispensing station so that a
15          particular reagent could be dispensed onto
16          a particular slide?
17   A.     That's true.
18   Q.     And what is your understanding of this term
19          indexing the slides and the reagents to
20          dispense reagent onto the slide?
21   A.     Rotating the carousels.
22   Q.     Now, earlier you mentioned that you
23          provided demonstrations of the Spectrum 50
24          to third parties once the machine got
25          transferred over to Bogen's lab.
```

ce572f69-9070-430c-8354-3ec7afe9ffff

Herbert Loeffler              CONFIDENTIAL                March 29, 2006
                              Boston, MA

Page 104

```
 1        stationary slides.
 2   Q.   So stationary -- I'm sorry.  So moving the
 3        slides became a necessary component for the
 4        design that you all came up with.
 5   A.   The slides were lighter and smaller than
 6        the other objects that we wanted to relate
 7        them to, so we moved the smaller element.
 8   Q.   Did you ever design a slide processing
 9        device in which the slide platform did not
10        move but which had the capability of
11        heating some slides to a first temperature
12        and heating other slides to a second
13        defined temperature?
14   A.   The Spectrum 50 was the first device that
15        we designed that did that.
16   Q.   Okay.  But you may have missed a component
17        of my question.  Did you ever design a
18        slide processing device in which the slide
19        platform did not move at all but which had
20        the capability of heating some slides to a
21        first defined temperature and heating other
22        slides to another defined temperature?
23   A.   No, we didn't do that.
24   Q.   Did you ever conceive of a slide processing
25        device in which the slide platform did not
```

Alderson Reporting Company

1111 14th Street, NW Suite 400 1-800-FOR-DEPO        Washington, DC 20005

Herbert Loeffler          CONFIDENTIAL          March 29, 2006
                            Boston, MA

Page 106

```
 1        261 patent the slide platform, whenever
 2        it's discussed, is described as rotating,
 3        correct?
 4               MR. ZELIGER:  If you remember.
 5   A.   Yeah, as far as I remember.
 6   Q.   Okay.  Is there any passage in the 261
 7        patent, according to your understanding,
 8        which demonstrates that you and your
 9        co-inventors contemplated the use of a
10        non-moving slide platform as being within
11        the scope of your invention?
12               MR. ZELIGER:  May I have that
13        back, please?
14               (The record was read as
15        requested.)
16               MR. ZELIGER:  Including the
17        claims?
18               MR. SHULMAN:  No.  The
19        description right now.
20               MR. ZELIGER:  Okay.
21   A.   I don't remember such a passage.
22   Q.   Okay.  Now, at some point after the phase 2
23        device was completed, you began working
24        with a company called Product Genesis to
25        further develop the prototype, correct?
```

Herbert Loeffler        CONFIDENTIAL             March 29, 2006
                        Boston, MA

```
 1        heated slides on the rotating platform to
 2        the stationary base, correct?
 3   A.   Yes.
 4   Q.   And by reducing the number of wires,
 5        Mr. Purbrick made the loop that carries the
 6        wires from the rotating platform to the
 7        stationary base sufficiently flexible so
 8        that the platform could freely rotate
 9        during operation, correct?
10   A.   Yes.
11   Q.   And that solution to the wiring loop issue
12        is what led to the filing of the
13        application of the 261 patent, correct?
14   A.   I assume.
15   Q.   And do you agree, sir, that if the slide
16        platform had been stationary as opposed to
17        rotating, then there was no need to reduce
18        the number of wires between the platform
19        and the base.
20   A.   Correct.
21             MR. ZELIGER:  Objection to the
22        form of the question.  Calls for
23        speculation.  But you may answer.
24             MR. SHULMAN:  Did you get his
25        answer?
```

Alderson Reporting Company

ce572f69-9070-430c-8354-3ec7afe9ffff