**DEPARTMENT OF COMMERCE**

**United States Patent and Trademark Office**

**37 CFR Parts 1, 3, 5, and 10**

[Docket No.: 980826226-0202-03]

RIN 0651-AA98

**Changes To Implement the Patent Business Goals**

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Final rule.

**SUMMARY:** The United States Patent and Trademark Office (Office) has established business goals for the organizations reporting to the Commissioner for Patents (Patent Business Goals). The focus of the Patent Business Goals is to increase the level of service to the public by raising the efficiency and effectiveness of the Office's business processes. In furtherance of the Patent Business Goals, the Office is changing the rules of practice to eliminate unnecessary formal requirements, streamline the patent application process, and simplify and clarify the provisions of the rules of practice.

**DATES:** *Effective Dates:* This rule is effective November 7, 2000, except that the changes to §§ 1.27, 1.78, 1.131, 1.132, 1.137, 1.152, 1.155, 1.324, 1.366, 1.740, and 1.760, and the removal of § 1.44 are effective September 8, 2000.

*Applicability Dates:* Computer program listings in compliance with former § 1.96 will be accepted until March 1, 2001. After that date, computer program listings must comply with revised § 1.96. Amendments in compliance with former § 1.121 will be accepted until March 1, 2001. After that date, amendments must comply with revised § 1.121.

The new two-year limit for requesting refunds under § 1.26 will be applied to any fee paid regardless of when it was paid. For previously paid fees, the two-year time period for requesting a refund will expire on the later of November 7, 2000 or the date that is two years from the date the fee was paid.

**FOR FURTHER INFORMATION CONTACT:** Hiram H. Bernstein ((703) 305-8713) or Robert W. Bahr ((703) 308-6906), Senior Legal Advisors, or Robert J. Spar, Director ((703) 308-5107), Office of Patent Legal Administration (OPLA), directly by phone, or by facsimile to (703) 305-1013, marked to the attention of Mr. Bernstein, or by mail addressed to: Box Comments—Patents, Commissioner for Patents, Washington, D.C. 20231.

Additionally, the following members of OPLA may be called directly for the matters indicated:

Robert Bahr ((703) 308-6906): §§ 1.22, 1.25, 1.26, 1.53, 1.55, 1.72, 1.76, 1.78, 1.112, 1.131, 1.132, 1.137, 1.138, 1.193, 1.311 through 1.313, 1.366, Part 5, and Part 10.

Hiram Bernstein ((703) 305-8713): §§ 1.9, 1.22, 1.26 through 1.28, 1.41, 1.48, 1.56, 1.85(c), 1.97, 1.98, 1.105, 1.111, 1.115, 1.133, 1.136, 1.322 through 1.324, and Part 3.

Robert Clarke ((703) 305-9177): Processing and petition fees, and § 1.52(b)(2).

James Engel ((703) 308-5106): §§ 1.152 *et seq.*

Eugenia Jones ((703) 306-5586): §§ 1.9, 1.27, and 1.28.

Jay Lucas ((703) 308-6868) or Anton Fetting ((703) 305-8449): §§ 1.96, and 1.821 *et seq.*

Joe Narcavage ((703) 305-1795): §§ 1.52(b)(6), 1.121, 1.125, and 1.173 *et seq.*

Kenneth Schor ((703) 308-6710): §§ 1.97, 1.98, 1.173 *et seq.*, 1.510 *et seq.*, and Part 3.

Fred Silverberg ((703) 305-8986): § 1.63 (oath or declaration) form.

Karin Tyson ((703) 306-3159): §§ 1.14, 1.33, 1.44, 1.47, 1.51, 1.52 (except (b)(2) and (b)(6)), 1.59, 1.63, 1.64, 1.67, 1.77, 1.84, 1.85 (except (c)), 1.163, and 1.720 *et seq.*

**SUPPLEMENTARY INFORMATION:** The organizations reporting to the Commissioner for Patents have established five business goals (Patent Business Goals) to meet the Office's Year 2000 commitments. The Patent Business Goals have been adopted as part of the Fiscal Year 1999 Corporate Plan Submission to the President. The five Patent Business Goals are:

Goal 1: Reduce Office processing time (cycle time) to twelve months or less for all inventions.

Goal 2: Establish fully-supported and integrated Industry Sectors.

Goal 3: Receive applications and publish patents electronically.

Goal 4: Exceed our customers' quality expectations, through the competencies and empowerment of our employees.

Goal 5: Align fees commensurate with resource utilization and customer efficiency.

This final rule makes changes to the regulations to support the Patent Business Goals. A properly reengineered or reinvented system eliminates the redundant or unnecessary steps that slow down processing and frustrate customers. In furtherance of the Patent Business Goals, these changes to the rules of practice take a fresh view of the business end of issuing patents, and continue a process of simplification. Formal requirements of rules that are no longer useful are eliminated. Once the intent of an applicant is understood, the Office will simply go forward with the processing. The essentials are maintained, while formalities are greatly reduced. The object is to focus on the substance of examination and decrease the time that an application for patent is sidelined with unnecessary procedural issues.

In streamlining this process, the Office will be able to issue a patent in a shorter time by eliminating formal requirements that must be performed by the applicant, his or her representatives and the Office itself. Applicants will benefit from a reduced overall cost to them for receiving patent protection and from a faster receipt of their patents.

The Office initially published an advance notice of proposed rulemaking containing twenty-one initiatives. *See Changes to Implement the Patent Business Goals*, Advance Notice of Proposed Rulemaking, 63 FR 53497 (October 5, 1998), 1215 *Off. Gaz. Pat. Office* (October 27, 1998) (Advance Notice). The Office published a notice of proposed rulemaking, proposing a number of changes to the rules of practice to implement the Patent Business Goals that contained about half of the topics set forth in the advance notice plus additional items. *See Changes to Implement the Patent Business Goals*, Notice of Proposed Rulemaking, 64 FR 53771 (October 4, 1999), 1228 *Off. Gaz. Pat. Office* 15 (November 2, 1999). This final rule contains a number of changes to the text of the rules as proposed for comment. The significant changes (as opposed to additional grammatical corrections) are discussed below. Familiarity with the Advance Notice and Notice of Proposed Rulemaking is assumed.

The title "Commissioner of Patents and Trademarks" was changed to "Director of the United States Patent and Trademark Office" by § 4732 of the "American Inventors Protection Act of 1999" (Title IV of the "Intellectual Property and Communications Omnibus Reform Act of 1999") that was incorporated and enacted into law on November 29, 1999, by § 1000(a)(9), Division B, of Public Law 106-113, 113 Stat. 1501 (1999). To avoid inconsistent use of the title "Commissioner" and "Director" in the rules of practice, the Office plans to change the title "Commissioner" wherever it appears in the rules of practice to "Director" in a separate rule change.

information is supplied, e.g., application number, any error in the information would significantly delay identification of the application being cited.

*Comment 48:* One comment suggested that the change to § 1.98(d) adds a great deal of complexity for very little benefit, particularly as the examiners should be considering the prosecution history, which is independent of whether the IDS in the prior application complied with § 1.97. Additionally, there is no justification to apply § 1.98(d)(2) retroactively.

*Response:* The comment has been adopted. The proposed required compliance with § 1.97 for the IDS in the prior application has not been carried forward in the final rule. It is also the intent of the Office, as stated in the preamble to the instant final rule, not to apply § 1.98(d)(2) retroactively.

*Section 1.102:* Section 1.102(d) is amended to refer to "the fee set forth in § 1.17(h)" for consistency with the changes to §§ 1.17(h) and 1.17(i). See discussion of changes to §§ 1.17(h) and 1.17(i).

*Section 1.103:* The proposal to amend § 1.103 was not proceeded with in this final rule, but has been included in the final rule to implement request for continued examination practice (the final rule resulting from *Changes to Application Examination and Provisional Application Practice,* Interim Rule, 65 FR 14865 (March 20, 2000), 1233 *Off. Gaz. Pat. Office* 47 (April 11, 2000)). The comments on the proposed amendment to § 1.103 have been treated in that final rule.

*Section 1.104:* Section 1.104(a)(2) (second sentence) is amended to add the phrase "in an Office action" to provide basis for the phrase "Office action" in §§ 1.111(a), (b), and 1.115(a).

Section 1.104(e) has been revised by deleting the last sentence thereof. The last sentence previously stated:

Failure to file such a statement does not give rise to any implication that the applicant or patent owner agrees with or acquiesces in the reasoning of the examiner.

This statement of the rule is inconsistent with recent decisions by the United States Supreme Court (Supreme Court) and the United States Court of Appeals for the Federal Circuit (Federal Circuit), which highlight the crucial role a prosecution history plays in determining the validity and scope of a patent. *See e.g., Warner-Jenkinson Co.* v. *Hilton Davis Chem. Co.,* 520 U.S. 17, 41 USPQ2d 1865 (1997); *Markman* v. *Westview Instruments,* 52 F.3d 967, 34 USPQ2d 1321 (Fed. Cir. 1995), aff'd 517 U.S. 320, 38 USPQ2d 1461 (1996); *Vitronics Corp.* v. *Conceptronic Inc.,* 90 F.3d 1576, 39 USPQ2d 1573 (Fed. Cir. 1996). The examiner's statement of reasons for allowance is an important source of prosecution file history. See for example *Zenith Labs., Inc.* v. *Bristol-Myers Squibb Co.,* 19 F.3d 1418, 30 USPQ2d 1285 (Fed. Cir. 1996), which references MPEP 1302.14 to this effect (Footnote 7 of the case).

In view of the recent case law dealing with prosecution history, the failure of an applicant to comment on damaging reasons for allowance would give rise to a presumption of acquiescence to those reasons, and the negative inferences that flow therefrom. Accordingly, the statement in the rule that failure to file comments on reasons for allowance does not give rise to any implication that an applicant (or patent owner) agrees with or acquiesces in the reasoning of the examiner is obsolete and out of step with recent case law. The deletion of this statement from the rule should require applicant to set forth his or her position in the file if he or she disagrees with the examiner's reasons for allowance, or be subject to inferences or presumptions to be determined on a case-by-case basis by a court reviewing the patent, the Office examining the patent in a reissue or reexamination proceeding, the Board of Patent Appeals and Interferences reviewing the patent in an interference proceeding, etc.

That the examiner does not respond to a statement by the applicant commenting on reasons for allowance does not mean that the examiner agrees with or acquiesces in the reasoning of such statement. While the Office may review and comment upon such a submission, the Office has no obligation to do so.

This revision of § 1.104(e) does not provide any new policy, but rather tracks the state of the case law established in the decisions of the Supreme Court and the Federal Circuit.

*Section 1.105:* Section 1.105 is a new section containing §§ 1.105(a) through (c), relating to requirements by the Office that certain information be supplied.

Section 1.105(a)(1) provides examiners or other Office employees explicit authority to require submission, from individuals identified under § 1.56(c) or any assignee, of such information as may be reasonably necessary for the Office to properly examine or treat a matter being addressed in an application filed under 35 U.S.C. 111 or 371, in a patent, or in a reexamination proceeding. The examples given that contain specific references in §§ 1.105(a)(1)(i), (iii), and (vii) to inventors, and in § 1.105(a)(2) to assignees who have exercised their right to prosecute under § 3.71 are not intended to limit the scope of general applicability for all individuals identified in § 1.56(c). Abandoned applications also fall within the scope of the rule to provide for handling of petition matters. New § 1.105 is simply an explicit recitation of inherent authority that exists pursuant to 35 U.S.C. 131 and 132, and continues the practice of providing explicit authority to Office employees as was done with the Board of Patent Appeals and Interferences under § 1.196(d) and with trademark examiners under § 2.61.

The explicit authority of the examiner under § 1.105 to require such information as may be reasonably necessary to properly examine an application or treat a matter therein will be effective for any Office action written on or after the date that is sixty days after the date of publication in the **Federal Register**.

The inherent authority of the Office to require applicants to reply to requirements for information under 35 U.S.C. 131 and 132 was made explicit in § 1.105(a)(1) to *encourage* its use by Office employees so that the Office can perform the best quality examination possible. The authority is not intended to be used by examiners without a reasonable basis, but to address legitimate concerns that may arise during the examination of an application or consideration of some matter.

Sections 1.105(a)(1)(i) through (a)(1)(vii) identify examples of the types of information that may be required to be submitted. Section 1.105(a)(1)(i) relates to the existence of any particularly relevant commercial database known to any of the inventors that could be searched for a particular aspect of the invention. Section 1.105(a)(1)(ii) relates to whether a search was made, and if so, what was searched. Section 1.105(a)(1)(iii) relates to a copy of any non-patent literature, published application, or patent (U.S. or foreign), by any of the inventors, that relates to the claimed invention. Section 1.105(a)(1)(iv) relates to a copy of any non-patent literature, published application, or patent (U.S. or foreign) that was used to draft the application. Section 1.105(a)(1)(v) relates to a copy of any non-patent literature, published application, or patent (U.S. or foreign) that was used in the invention process, such as by designing around or providing a solution to accomplish an invention result. Section 1.105(a)(1)(vi) relates to identification of improvements. Section 1.105(a)(1)(vii)