IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYTOLOGIX CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. 04-11783 (RWZ) |
| VENTANA MEDICAL SYSTEMS, INC., | |
| Defendant. | |

---

**CYTOLOGIX CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS
COMBINED MOTION FOR CLAIM CONSTRUCTION AND SUMMARY JUDGMENT
OF INFRINGEMENT**

---

Dated:  May 2, 2006

**KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
(617) 261-3100

Attorneys for Plaintiff
CytoLogix Corporation

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................1

II.    ARGUMENT ....................................................................................2

    A.    Ventana's Construction is Contrary to the Plain Meaning as Understood by Those of Skill in the Art ............................................................2

    B.    Ventana's Construction is Inconsistent with the File History .........................7

    C.    Ventana's Construction Renders Claim Language Superfluous........................12

    D.    Ventana's Construction Reads Out the Preferred Embodiment .......................14

    E.    Ventana's Construction of "Platform" Imports Details from the Preferred Embodiment into the Claims........................................................15

    F.    Infringement........................................................................18

III.    CONCLUSION..................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365 (Fed. Cir. 2003) ...........12

*AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019 (Fed. Cir. 1997) .......................................................12

*Anchor Wall System, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298 (Fed Cir. 2003) ...........................................................................................................................................15

*Armament System and Procedures, Inc. v. Monadnock Lifetime Products, Inc.*, 168 F.3d 1319, 1998 WL 537746 (Fed. Cir. 1998)..........................................................................12

*Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006) .................................................13

*CytoLogix Corp. v. Ventana Medical System, Inc.*, 424 F.3d 1168 (Fed. Cir. 2005) ....................14

*Elekta Instrument S.A. v. O.U.R. Scientific International, Inc.*, 214 F.3d 1302 (Fed. Cir. 2000) ...........................................................................................................................................13

*Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998).......................................15

*Glaxo Wellcome, Inc. v. Andrx Pharmaceuticals, Inc.*, 344 F.3d 1226 (Fed. Cir. 2003) ...............6

*Johns Hopkins University v. CellPro*, 152 F.3d 1542 (Fed. Cir. 1998).........................................15

*Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999).......10, 17, 18

*Kistler Instrumente AG v. United States*, 628 F.2d 1303 (1980) ...................................................10

*Middleton, Inc. v. Minnesota Mining and Manufacturing Co.*, 311 F.3d 1384 (Fed. Cir. 2002) ...........................................................................................................................................10

*NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062 (Fed. Cir. 2002) ........................15

*North America Vaccine, Inc. v. America Cyanamid Co.*, 7 F.3d 1571 (Fed. Cir. 1993) ...............14

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..........................................................5, 16

*SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107 (Fed. Cir. 1985) .........................16

*Salazar v. Procter & Gamble Co.*, 414 F.3d 1342 (Fed. Cir. 2005)..............................................12

*Thermalloy, Inc. v. Aavid Engineering, Inc.*, 121 F.3d 691 (Fed. Cir. 1997)................................12

*TurboCare v. General Electric Co.*, 264 F.3d 1111 (Fed. Cir. 2001)............................................16

*Unique Concepts, Inc. v. Brown*, 939 F.2d 1558 (Fed. Cir. 1991) ................................................13

*United States v. Telectronics, Inc.*, 857 F.2d 778 (Fed. Cir. 1988) ................................................10

*Wright Medical Technology, Inc. v. Osteonics Corp*, 122 F.3d 1440 (Fed. Cir. 1997).................14

**STATUTES**

37 C.F.R. § 1.75 ..............................................................................................................................14

Fed. R. Evid. 702 ..............................................................................................................................6

Manual of Patent Examining Procedure § 201.07 (2005)................................................................8

## I.    INTRODUCTION

This summary judgment motion turns on whether the claim phrase "moving the platform and a liquid dispenser relative to each other" requires: (a) relative motion between the platform and liquid dispenser; or (b) that both the platform and liquid dispenser move relative to the ground.

As explained in our opening brief, CytoLogix contends that the claim phrase "moving the platform and a liquid dispenser relative to each other" requires *relative* motion between platform and the dispenser.  The slide platform can move while holding the dispenser stationary, the dispenser can move while holding the platform stationary, or they can both move, so long as there is *relative* movement between the two.  It is the *relative* motion that accomplishes the purpose of the claim language:  lining up the liquid dispenser with the proper slide, so that reagent can be deposited onto the slide.

In its Opposition, Ventana attempts to eliminate the phrase "relative to each other" from the claim.  Indeed, Ventana frequently deletes the words "relative to each other" when it quotes the claim language in its Opposition, beginning in the Opposition's second sentence.  Instead of relative motion, Ventana argues that the claim requires that both the platform and liquid dispenser move relative to the ground.

Ventana's proposed construction violates numerous rules of claim construction: (a) it is contrary to the plain meaning of the phrase, as that phrase is understood by those of skill in the art; (b) it renders language in both claim 1 and claim 3 superfluous; (c) it is at odds with the file history; and (d) it reads out the patent's preferred embodiment.

Perhaps the most telling evidence that Ventana's construction is wrong, however, is that it is inconsistent with *Ventana's own patent*.  As discussed below, Ventana's has a pending

patent application directed to the accused products: an instrument with a moving liquid dispenser and a "stationary" slide platform. In the patent application, Ventana claims the instrument using virtually identical "relative movement" language: "said nozzle support and said slide support moving relative to one another such that the nozzles may apply liquids to the slides." Clearly, Ventana understood—until this litigation—that moving two items relative to each other can mean one or both move, so long as there is *relative* movement between the two.

## II.    ARGUMENT

A.    <u>Ventana's Construction is Contrary to the Plain Meaning as Understood by Those of Skill in the Art</u>

All motion is relative. For example, a passenger on a train, looking out the window, might say that "the landscape is passing by." A person standing next to the tracks, however, would say that the "train is passing by." Which is "moving" is a matter of perspective.

For this reason, basic physics textbooks teach that motion is defined with respect to a frame of reference. (*See* Exs. 12-14,[1] which are excerpts from basic physics treatises. *See also* Slocum Decl., ¶ 7.) From the train's frame of reference, the landscape is moving, and from the ground's frame, the train is moving. This principle is explained and demonstrated in an educational video from the University of Toronto entitled "Frames of Reference." A copy of this video is being filed with this Reply as Ex. 15.

In everyday language, we often omit the frame of reference from our description of motion. But it is still there. When a reference frame is not defined, it is generally assumed to be the reference frame of the person speaking. (Slocum Decl., ¶ 8.) For example, when a mother

---

[1] Exhibit numbers refer to the exhibits to the two Declarations of Michael E. Zeliger. Exhibits 1-11 were attached to the first Zeliger Declaration, filed with CytoLogix's initial motion papers. Exhibits 12-18 are attached to the Second Zeliger Declaration, filed with this Reply.

tells a child in the back seat of a car to "stop moving," she is not asking the child to jump out of the car, roll to a stop, and sit by the side of the road. She means for the child to stop moving *relative to her frame of reference*, the "moving" car. Similarly, when crossing guard signals a car to stop, he is not ordering the car to drive east at 1000 miles per hour to counter the rotation of the earth, he means to stop relative to the road. With respect to tissue staining instruments, the assumed reference frame is the frame of the person using the instrument—i.e., the room's floor or the bench top upon which the instrument rests. Since both of these are contiguous with the Earth ground, we refer to this frame of reference as "the ground."

If the disputed claim language simply stated "moving the platform and a liquid dispenser," without defining a frame of reference for the movement, then Ventana's construction would be correct. The assumed reference frame would be the user (the ground), and both items would have to "move" relative to the ground. But that is not what the claim says. It specifically says that the platform and liquid dispenser move *relative to each other*, which is entirely different. This language means that, from the perspective of the slide platform, the liquid dispenser is moving, and from the perspective of the dispenser, the platform is moving. (Slocum Decl., ¶ 9.)[2] There is *relative* movement between the two. Either or both can be moving relative to the ground, so long as the claim limitation—movement relative to each other—is satisfied. (Slocum Decl., ¶ 10.)

Once a sentence defines a frame of reference, it overrides any assumed frame of reference, and it is improper to change it, as Ventana attempts to do here. Ventana seeks to replace the phrase "relative to each other" with the (implied) phrase "relative to the ground."

---

[2] In physics jargon, an observer on the platform sees the dispenser moving, and an observer on the dispenser sees the platform moving. Which is moving relative to the ground is immaterial to the *relative* motion of the two items. (Slocum Decl., ¶ 9.)

That is contrary to the plain meaning of the claim language, as understood by one of skill in the art, whether that art be tissue staining instrumentation or basic physics. (Slocum Decl., ¶¶ 11-13.)

Perhaps the best evidence that Ventana's proposed construction is contrary to the plain meaning of the language is Ventana's own pre-litigation words. In 2003, Ventana filed a U.S. Patent Application directed to features of the products accused of infringement in this litigation. (Ex. 16.) The Application, No. 10/424,372, is entitled "Automated Molecular Pathology Apparatus Having Fixed Slide Platforms." As suggested by the title, the application describes a tissue staining instrument which "has the slides fixed in a stationary position and rotates the basic processing stations above the fixed slides." (Ex. 16, ¶ [0007]. *See also id.* at ¶ [0018].) The specification discloses rotating only the platform carrying the liquid dispensers. The slide platform does not rotate.

In the claims, Ventana uses language almost identical to the language at issue in this case:

> 45.    An automatic slide processing apparatus comprising:
> (a) a slide support;
> (b) heating elements for heating the slides;
> (c) a nozzle support having nozzles for applying liquids, **said nozzle support and said slide support moving relative to one another such that the nozzles may apply liquids to the slides**;
> (d) a reagent support; and
> (e) a reagent dispenser wherein said reagent dispenser is operative to directly access the slide support.

(Ex. 16, claim 45, emphasis added.) Thus, in 2003—prior to this litigation—Ventana clearly understood that moving two items relative to each other meant that one could move (relative to the ground) while the second remained "stationary." Given that Ventana's patent application discloses only a "stationary" slide support, this claim language cannot be read to require rotating

4

*both* the nozzle support and the slide support relative to the ground.  Ventana's own pending

patent application, therefore, is at odds with its proposed claim construction.

In its Opposition, the primary evidence Ventana presents in favor of its "plain meaning"

argument is a declaration from Professor Nunberg, a distinguished linguist.  Professor Nunberg's

evidence, however, is no evidence at all.  It is axiomatic that claims are interpreted from the

perspective of one of skill in the art.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir.

2005).  Although Professor Nunberg has impressive credentials as a linguist, he readily admitted

in his deposition that he has absolutely no experience with engineering or tissue staining

instruments and is not one of skill in the art in these fields:

> Q.   Do you have any experience with automated slide staining equipment,
> either professional experience or educational experience?
>
> A.   No.
>
> Q.   Do you have any such experience with designing mechanical
> equipment?
>
> A.   No.
>
> Q.   Do you have any such experience with the operation of laboratory
> instruments?
>
> A.   No.
>
> Q.   Do you have any such experience with pathology?
>
> A.   No.
>
> Q.   Do you have any such experience with cytology?
>
> A.   No.
>
> Q.   Do you have any experience working in a laboratory?
>
> A.   No.

Q.  Do you have any experience working with reagents?

A.  No.

Q.  Do you have any experience with slide-based cellular diagnostics?

A.  No.

Q.  In the process of forming your opinions that appear in your declaration, did you consult with anyone who has these experiences?

A.  No.

(Ex. 17, at 15-16.)  With respect to basic physics (which defines relative motion), Professor

Nunberg testified that high school physics was "a discipline which I hadn't mastered even a year,

a month after dropping the course or whatever."  (Ex. 17, at 50.)  His testimony as a linguist is

therefore not useful in this context, where one needs to understand the concept of "frame of

reference."  His deposition testimony revealed that he did not grasp the concept.  In particular, he

could not understand that when movement between two objects is defined by reciprocal frames

of reference, both are moving with respect to each other even if only one moves relative to the

ground.  (Ex. 17, at 73-77.)

Thus, Professor Nunberg is not qualified to testify about the meaning of claims in a tissue

staining instrumentation patent.  His declaration, therefore, does not assist the Court, and should

be ignored.  Fed. R. Evid. 702.  *See also Glaxo Wellcome, Inc. v. Andrx Pharmaceuticals, Inc.*,

344 F.3d 1226, 1229 (Fed. Cir. 2003) (pursuant to Fed. R. Evid. 702, a court construing claims

"may receive the testimony of experts *in the field of the invention*" (emphasis added)).

Even if this Court considers Professor Nunberg's declaration, however, it does not

actually help Ventana.  Professor Nunberg's primary point is that the word "moving" is a gerund

6

that applies to both the platform and the liquid dispenser. That is correct. What Professor Nunberg fails to appreciate, however, is that they both move *relative to each other's frame of reference*.

Consider, for example, the accused Ventana products, in which the liquid dispenser support spins above a slide platform that does not spin. To a (hypothetical tiny) observer standing on the slide platform, the liquid dispenser appears to move above her. And to an observer standing on the liquid dispenser, the slide platform appears to move below her. Thus, both are moving *relative to each other*, which is precisely what is called for by the claim. Professor Nunberg, having no background in engineering, tissue staining, or even basic physics, did not appreciate the meaning or importance of the phrase "relative to each other." He assumed that the platform and liquid dispenser both must move *relative to the ground*.

Although the Court should not need to consider expert testimony in ruling on this claim construction dispute, in order to fully rebut the Nunberg Declaration, CytoLogix submits, with this Reply, a short declaration from Professor Alex Slocum of MIT. Professor Slocum is indisputably an expert in tissue staining instrumentation, mechanical engineering, and physics, and is highly qualified to opine on the plain and ordinary meaning of the disputed claim term to those of skill in the art.

B.    Ventana's Construction is Inconsistent with the File History

The file history also supports CytoLogix's proposed construction of "moving the platform and a liquid dispenser relative to each other." The sequence of the prosecution (which Ventana obfuscates in its Opposition) makes this point clear.

As the Court no doubt recalls, in a trial in 2003, a jury found Ventana to be infringing two earlier CytoLogix patents, U.S. Patent Nos. 6,180,061 and 6,183,693. Both of those patents plainly required that the slide platform move relative to the ground, rather than requiring relative movement between the platform and the liquid dispenser.

During the course of that litigation, CytoLogix became concerned that Ventana might try to "design around" these patents by simply holding the slide platform stationary and rotating the liquid dispenser, rather than seeking a license from CytoLogix for its independent slide heating technology. For this reason, CytoLogix decided to pursue patent claims which would cover, more generally, relative motion between the platform and dispenser.

At the time, CytoLogix had a "continuation application"[3] of the '693 patent pending at the patent office. This is the application which became the '261 patent, the patent currently in-suit. In October 2002, towards the end of prosecution of the '261 patent, CytoLogix amended the independent claim to remove the requirement that the slide platform move, and replaced it with the requirement that the platform and liquid dispenser move relative to each other. The amendments to what became claims 1 and 3 are reproduced below. The underlined language was added by the amendment, and the bracketed, italicized language was deleted:

> [1.][4]    (Amended) A method of processing samples mounted on microscope slides comprising:
>     placing two or more microscope slides on a [*moving*] platform;
>     providing heating elements capable of heating said slides, said heating elements being under independent electronic control and thereby capable of heating some slides to a different temperature than other slides; [*and*]

---

[3] "A continuation is a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned or patented." Manual of Patent Examining Procedure § 201.07 (2005). In other words, a continuation application is a mechanism for seeking additional claims based on the specification of an earlier filed (but not yet issued) patent. The additional claims issue as a separate patent, with the priority date of the first application.

[4] Claims 1 and 3 were numbered 6 and 8 during prosecution.

<u>moving the platform and a liquid dispenser relative to each other;</u>
<u>dispensing liquid from the dispenser onto the slides; and</u>
on the [moving] platform, heating one slide to a different temperature than
a second slide.

[3.]    (Amended)  A method of processing samples mounted on
microscope slides as claimed in claim 6, wherein the <u>platform is a</u> moving
platform [*is*] capable of indexing slides adjacent to a stationary liquid dispensing
location.

(Statement of Facts, ¶ 25.)  These amendments make clear that claim 1 no longer required a

"moving" platform, but instead now requires that the platform and liquid dispenser move relative

to each other.  Claim 3 was amended to add the requirement that, for that dependent claim, the

slide platform must move (since platform movement was no longer already required by claim 1).

Around the time it submitted these amendments, CytoLogix conducted an interview with

the Examiner in which it emphasized patentability based on staining capability coupled with

independent and individual slide temperature control, and did *not* argue patentability based on a

"moving" slide platform.  The Examiner's interview notes, reproduced in our Opening Brief,

make this point clear.  (Statement of Facts, ¶ 27.)  The claims, as amended, were then allowed.

In its Opposition, Ventana places great emphasis on numerous passages during the

prosecution in which CytoLogix argued that certain claims distinguished the prior art because, in

part, they required a moving platform.  CytoLogix *did* make those arguments, and a rotating

platform *was* an aspect of the embodiment described in the specification.  What Ventana fails to

note, however, is that every one of those arguments was made either *before* the above

amendment to claim 1, or was directed to claims which *did* explicitly recite a moving platform.

CytoLogix never argued that the asserted claims—claims 1 and 2—distinguished the prior art

based on a moving platform.  Rather, as indicated in the Examiner's interview notes, CytoLogix

9

argued for patentability based on the "combination of automated staining w/ automated individual & independent slide temp. control." (Statement of Facts, ¶ 27.) As discussed in our Opening Brief, it is improper to read back into claims limitations that were originally there, but were removed during prosecution. *United States v. Telectronics, Inc.*, 857 F.2d 778, 783 (Fed. Cir. 1988); *Kistler Instrumente AG v. United States*, 628 F.2d 1303, 1308 (1980). The arguments CytoLogix made regarding the "moving platform" limitation should not restrict the broadened claims which do not have that limitation. *See Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, 311 F.3d 1384, 1388-89 (Fed. Cir. 2002) ("The inventor later filed a continuation that broadened the invention. The broader continuation applications claimed floor surfaces in general, not just smooth sporting surfaces. Therefore, the prosecution history in the context of varnishes for smooth bowling alleys does not limit the broader claims to other flooring surfaces."); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 991-92 (Fed. Cir. 1999) (prosecution history arguments regarding claims which contain a particular limitation "sheds no light on the meaning of" claims which do not include that limitation).

Ventana's Opposition also emphasizes the Examiner's reasons for allowance statement, which said as follows:

### *Allowable Subject Matter*

1.    Claims 1, 2 and 5-9 are allowed.

2.    The following is an examiner's statement of reasons for allowance:

Applicant's response filed 10-04-02 obviates the rejections set out in the last office action. The claims as now amended are directed to methods for processing samples which includes both dispensing of fluids onto moveable sample slides and simultaneously heating different sample slides to different temperatures. The response filed by applicant, including the submitted articles in support of the argument, are in the totality sufficient to establish that one of ordinary skill in the art viewing the apparatus of the '114 patent, would not have recognized any necessity nor desirability, absent applicant's disclosure, of providing the capability of heating simultaneously to different temperatures.

(Ex. 8, at 2.) In its Opposition, Ventana only reproduces the second sentence of ¶ 2 and argues that the Examiner's reference to "moveable sample slides" supports its proposed construction of "moving the platform and a liquid dispenser relative to each other." This argument ignores ¶ 1, which makes clear that the Examiner is summarizing—in a single statement—*all* of the allowed claims, including those that *do* require a moving slide platform (e.g., claim 8, which became claim 3). Even more importantly, Ventana omits the final sentence of ¶ 2, which states that the claims were allowed because the prior art did not suggest "providing the capability of heating [sample slides] simultaneously to different temperatures." In other words, allowance was based on the arguments CytoLogix made *after* claim 1 was amended to remove the requirement that the platform move: the independent slide heating discussed in the interview notes. Allowance of claim 1 was *not* based on any requirement that the slide platform move relative to the ground.

11

Since the Examiner's allowance was based on the independent slide heating feature, his reference to a "moveable slide platform" earlier in the statement is immaterial. *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-74 (Fed. Cir. 2003) (an applicant's silence in response to an examiner's characterization of a claim "does not reflect the applicant's clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization"). An Examiner's unilateral characterization of a claim in a Reasons for Allowance statement does not "amend" a claim, and an applicant's silence in response to the Examiner's characterization does not constitute the "clear and unambiguous disavowal of claim scope" required for an estoppel. *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005).

The file history, therefore, when analyzed in the proper context and sequence, fully supports CytoLogix's construction. If Ventana's construction were adopted, CytoLogix's final amendments and the Examiner's statement of reasons for allowance would make no sense.[5]

C.    Ventana's Construction Renders Claim Language Superfluous

Claims should not be construed in a manner which renders language in the claim superfluous. *Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are

---

[5] Along these same lines, Ventana argues that passages in the "summary of the invention" section of the specification which reference a moving slide platform are evidence that all the claims require a moving slide platform. The referenced passages of the summary, however, clearly state that they describe "one aspect" or "another aspect" of the invention (Ex. 1, col. 2, lines 30, 39), and do not state that they are in any way "essential" or "critical." As noted above, some claims *do* specifically claim the "moving platform" aspect of the invention. In any event, it is the claims, as issued, which define the scope of the invention, not the "summary" portion of the specification. *See Armament Sys. and Procedures, Inc. v. Monadnock Lifetime Prods., Inc.*, 168 F.3d 1319, 1998 WL 537746, at *2 (Fed. Cir. 1998) (unpublished). *See also AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997); *Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d 691, 692 (Fed. Cir. 1997).

merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration.   For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim.")  *See also Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305, 1307 (Fed. Cir. 2000); *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1563 (Fed. Cir. 1991).  This is exactly what Ventana attempts to do here.

If Ventana's construction is adopted, two specific passages—one in claim 1 and another in claim 3—would be rendered superfluous.  First, in claim 1, Ventana's construction reads out the language "relative to each other."  Since, according to Ventana the phrase "moving the platform and a liquid dispenser relative to each other" means they both must move, the words "relative to each other" add nothing and are superfluous.  Such an interpretation would violate the axiom emphasized by the Federal Circuit in *Bicon*.

Similarly, if claim 1 requires the slide platform to move relative to the ground, then language in claim 3 is rendered superfluous.  Claim 3 reads as follows:

> 3.  A method of processing samples mounted on microscope slides as claimed in claim 1, wherein the platform is **a moving platform** capable of indexing slides adjacent to a stationary liquid dispensing location.

If Ventana is correct that claim 1 already requires both the platform and the liquid dispenser to move, then there was no reason to include the bolded language "a moving platform" in claim 3. Indeed, Ventana's linguist expert admitted that under Ventana's construction, the bolded language "has no impact on the claim scope."  (Ex. 17, at 65.)

Moreover, under Ventana's construction, claim 3 is actually inconsistent with claim 1. Claim 3 specifically recites that the slide platform is "moving" while the liquid dispensing location is "stationary." If, as Ventana contends, claim 1 requires that they both move, then claim 3 clashes with claim 1. Independent claims should not be construed in a manner that excludes the requirements of a dependent claim. *See CytoLogix Corp. v. Ventana Medical Sys., Inc.*, 424 F.3d 1168, 1173 (Fed. Cir. 2005) (rejecting argument that claim 1 required capability of holding multiple slides where dependent claim recited holding only a single slide). Such a construction could result in a dependent claim being infringed where an independent claim is not. This would violate the structural requirement that dependent claims "further limit[]" the claims from which they depend. 37 C.F.R. § 1.75.[6]

D.    Ventana's Construction Reads Out the Preferred Embodiment

The final axiom violated by Ventana's claim construction is that it reads out the '261 patent's preferred embodiment. The '261 patent specification describes an instrument in which

---

[6] At pages 8-10 of its Opposition, Ventana places great emphasis on the fact that dependent claim 7 states "wherein said heating elements are mounted on said moving platform." According to Ventana, the use of the phrase "said moving platform" proves that claim 1 already requires a moving platform. The horse Ventana rides here, however, is nothing more than a clerical error. When CytoLogix amended the claims in October 2002 to remove the "moving" platform requirement from claim 1 and add it to claim 3, it simply failed to make a similar amendment to claim 7. (E.g., to remove the word "moving" from claim 7, as it had for claim 1, or make claim 7 depend from claim 3 instead of claim 1.) CytoLogix could fix this error by seeking a Certificate of Correction from the patent office, but since it is not asserting claim 7, there has been no reason to do so. The Court should not adopt a construction of claim 1 which reads out claim language, contradicts the plain meaning, contradicts the file history, and excludes the preferred embodiment in order to reconcile a clerical error in an unasserted claim. *See North Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993) ("While it is true that dependent claims can aid in interpreting the scope of claims from which they depend, they are only an aid to interpretation and are not conclusive. The dependent claim tail cannot wag the independent claim dog.") Any "inconsistency" resulting from leaving in the word "said" does not create the kind of clash between the scope of independent and dependent claims that concerns the Federal Circuit. *Compare with CytoLogix*, 424 F.3d at 1173; *Wright Medical Technology, Inc. v. Osteonics Corp*, 122 F.3d 1440, 1445 (Fed. Cir. 1997). Here, the "moving" requirement of claim 7 would be an additional limitation, and would not "clash" with the requirements of claim 1.

In any event, if the Court does insist on fully reconciling claims 1 and 7, the reference to "said moving platform" could be interpreted as referencing the motion relative to the liquid dispenser called for by claim 1.

14

the slide rotor rotates below a stationary "liquid dispensing and removal station." (Ex. 1, at col. 3, lines 56-61 and Fig. 1.) The liquid dispensing station "comprises a soft hammer 26 for engaging a portion of the cartridge pumps 46 [reagent bottles]." (*Id.* at col. 5, lines 25-51 and Figs. 1 and 8.) The slide rotor rotates the appropriate slide below the hammer in the dispensing station, and the hammer pushes liquid out of the appropriate reagent bottle. (*Id.*)

Applying claim 1 to this preferred embodiment, the platform is the slide rotor, and the liquid dispenser includes the hammer 26 within the stationary liquid dispensing station 5. The slide rotor does "move" relative to the ground, but the hammer 26 does not. Thus, if Ventana's construction (that both the platform and liquid dispenser must move relative to the ground) is correct, then claim 1 does not cover the disclosed embodiments.

It is well established that claim constructions which exclude the preferred embodiment are highly disfavored and are "rarely, if ever, correct." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed Cir 2003); *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is elementary that a claim construction that excludes the preferred embodiment is rarely, if ever, correct"); *Johns Hopkins University v. CellPro*, 152 F.3d 1542, 1555 (Fed. Cir. 1998); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1477 (Fed. Cir. 1998).

E.     Ventana's Construction of "Platform" Imports Details from the Preferred Embodiment into the Claims

In its Opposition, Ventana argues that the term "platform" should be construed to mean "a rotary carousel." This is a classic example of importing limitations from the specification into the claims.

The plain and ordinary meaning of the word "platform," and the construction the Court should adopt, is "a horizontal flat surface." This tracks Webster's Dictionary, which defines "platform" as "a usually raised horizontal flat surface." Webster's Collegiate Dictionary 891 (10th ed. 1996). (Ex. 18.) It is also consistent with the "standard English" definition of "platform" offered by Ventana's linguist expert, Professor Nunberg, in his deposition: "a raised surface on which objects are supported or arrayed." (Ex. 17, at 18.) Professor Nunberg also testified that—contrary to Ventana's position—a "platform" need not be round and need not be a rotary carousel. (Ex. 17, at 19.)

In support of its proposed construction ("a rotary carousel"), Ventana makes two arguments. First, it points out that in the preferred embodiment of the '261 specification, the slides are supported on a "slide rotary." Second, it references passages from the prosecution history which discuss carousels.

Regarding the preferred embodiment, it is axiomatic that details of embodiments described in the patent's specification, but not present in the claim language, may not be read into the claim. *TurboCare v. General Elec. Co.*, 264 F.3d 1111, 1123 (Fed. Cir. 2001); *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985). *See also Phillips*, 415 F.3d at 1323-24. Here, CytoLogix deliberately chose to use the broader term "platform" in the claim, rather than the term "slide rotor" used in the description of the preferred embodiment. There is no justification for changing the claim term "platform" to "slide rotor" simply because a slide rotor was the *preferred* embodiment.

As explained in *Johnson Worldwide*, there is a "heavy presumption in favor of the ordinary meaning of claim language." 175 F.3d at 989. "[A] party wishing to use statements in

16

the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms in the claim with which to draw in those statements….That is, claim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources." *Id.*, at 989-90 (citation omitted). *See also Phillips*, 415 F.3d at 1314. (where "the ordinary meaning of claim language as understood by a person of skill in the art [is] readily apparent…claim construction…involves little more than the application of the widely accepted meaning of commonly understood words").

Regarding the prosecution history, Ventana commits the same sin as before: it relies upon arguments made by CytoLogix *before* the claims were amended to remove the requirement that the slide platform move. Nowhere in the specification or file history did CytoLogix define the term "platform" to mean a rotary carousel.

Finally, it is important to note that Ventana's Rule 30(b)(6) witness had no difficulty understanding the term "platform" and applying it to Ventana's accused products. When asked whether the Benchmark XT and Benchmark LT "hold two or more microscopic slides on a platform," he answered "yes" both times. (Statement of Facts, ¶¶ 31, 32.)

Ventana's argument regarding "platform" is essentially a repeat of its argument regarding "moving the platform and a liquid dispenser relative to each other." Ventana attempts to read back into claim 1 the requirement that the slide platform move (relative to the ground), even though that limitation was expressly removed from the claim. The claim term "platform," like the relative movement clause, should be afforded its plain and ordinary meaning.

17

F.    Infringement

In its Opposition, Ventana does not dispute CytoLogix's description of the structure and operation of the accused products.  (Nor could it, since those descriptions came directly from testimony of Ventana's Rule 30(b)(6) witness.  *See* CytoLogix's Opening Brief, pp. 14-16 and Statement of Facts ¶¶ 29-44.)  Ventana's Opposition is based entirely on two (related) issues of claim construction: the meanings of "moving the platform and a liquid dispenser relative to each other" and "platform."

"Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree over [claim interpretation], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment."  *Johnson Worldwide*, 175 F.3d at 988-89 (citing *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996)).  The parties agree that Ventana's liquid dispenser support spins, while its slide support does not spin.  Consequently, if the Court adopts CytoLogix's construction of the disputed terms, then it is undisputed that Ventana's BenchMark XT and BenchMark LT instruments have a slide platform and a liquid dispenser that move relative to each other, and that all other limitations of claims 1 and 2 are met.  Summary judgment of infringement of claims 1 and 2, therefore, is warranted.[7]

---

[7] In fact, even if the Court adopts Ventana's construction, the BenchMark XT and BenchMark LT still infringe.  In both of these accused products, the slide support actually *does* move—it moves up and down to allow access to the slides.  CytoLogix, however, does not rely on this up-and-down movement in this summary judgment motion, preserving that argument instead for trial (if needed).  For purposes of this motion, the Court may assume that the slide supports in the accused products remains entirely stationary relative to the ground.

18

## III.    CONCLUSION

For the reasons stated above and in our Opening Memorandum, CytoLogix requests that the Court enter summary judgment that Ventana's BenchMark XT and BenchMark LT instruments infringe claims 1 and 2 of the '261 patent.


                                      **KIRKPATRICK & LOCKHART**
                                      **NICHOLSON GRAHAM LLP**

Dated: May 2, 2006                    */s/ Michael E. Zeliger*_____
                                      Michael E. Zeliger (BBO # 633654)
                                      David A. Simons (BBO # 638740)
                                      KIRKPATRICK & LOCKHART
                                      NICHOLSON GRAHAM LLP
                                      State Street Financial Center
                                      One Lincoln Street
                                      Boston, MA 02111-2950
                                      Tel: (617) 261-3100

                                      *Attorneys for Plaintiff CytoLogix Corporation*

19

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 2nd day of May, 2006, a true and correct copy of the foregoing CYTOLOGIX CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS COMBINED MOTION FOR CLAIM CONSTRUCTION AND SUMMARY JUDGMENT OF INFRINGEMENT was caused to be served on the attorneys at the following address as indicated:

<u>**BY E-MAIL**</u>

Roger J. Chin                                            *Attorneys for Defendant*
WILSON SONSINI GOODRICH & ROSATI        *Ventana Medical Systems, Inc.*
One Market
Spear Tower, Suite 3300
San Francisco, CA  94105

Ron E. Shulman
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA  94304

Michael S. D'Orsi
Peter E. Gelhaar
DONNELLY. CONROY & GELHAAR, LLP
One Beacon Street
Boston, MA  02108

                                            */s/ Michael E. Zeliger*
                                            Michael E. Zeliger