UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11783-RWZ

CYTOLOGIX CORPORATION

v.

VENTANA MEDICAL SYSTEMS, INC.

MEMORANDUM OF DECISION

June 20, 2006

ZOBEL, D.J.

Plaintiff CytoLogix Corporation sued defendant Ventana Medical Systems, Inc. for infringement of U.S. Patent No. 6,541,261 B1 (the "'261 patent") and U.S. Patent No. 6,783,733 B2 (the "'733 patent"). These patents concern "technology for staining tissue samples in connection with the diagnosis of diseases such as cancer." (Pl.'s Mem. in Support of Summ. J. and Claim Construction 1). Plaintiff accuses defendant's Benchmark instrument product line of infringing these patents and now moves for claim construction and summary judgment on claims 1 and 2 of the '261 patent. Defendant opposes.

The first claim of the '261 patent describes a method for processing samples mounted on microscope slides that are placed on a platform. See '261 Patent 12:14–25. In addition to other characteristics, the method provides for "moving the platform and a liquid dispenser relative to each other." Id. at 21-22. The second claim of the '261 patent depends from claim 1 and describes the same method with the

distinction that "each heating element heats only one slide." Id. at 26-28.  The parties dispute the meaning of the language, "moving the platform and a liquid dispenser relative to each other," and each party bases its summary judgment argument on its proposed claim construction.  According to plaintiff, the disputed language means that "[t]here is relative movement between the platform and the liquid dispenser.  Relative movement may be accomplished by moving the platform, or the liquid dispenser, or both."  (Pl.'s Mem. in Support of its Combined Mot. 7).  Defendant, on the other hand, urges that "[t]his claim language requires moving both 'the platform' and 'a liquid dispenser.'  It does not permit moving only one of them."  (Def.'s Mem. in Opp. to Pl.'s Combined Mot. 6).  Giving rise to the dispute are certain of defendant's slide processing products that – solely for purposes of arguing the instant motion, the parties agree – involve a mobile liquid dispenser but a stationary platform.

"[P]atent infringement analysis involves two steps: claim construction, and application of the construed claim to the accused product or process."  Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322, 1326 (Fed. Cir. 2006).  The first step, claim construction, requires that the Court construe "only those terms . . . that are in controversy, and only to the extent necessary to resolve the controversy."  Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999).  "[T]he words of a claim 'are generally given their ordinary and customary meaning,'" in other words, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  Phillips v. AWH Corp., 415 F.3d 1303, 1312-13

(Fed. Cir. 2005).  A disputed claim term may be interpreted according to "'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."  Id. at 1314.

Plaintiff relies, first, on the plain language of the disputed claims and argues that the phrase, "relative to each other," requires only that either the platform or the dispenser move, since either event would create relative movement.  As defendant argues, however, this interpretation negates the conjunctive term "and," as used in the phrase, "moving the platform and a liquid dispenser relative to each other."  Plaintiff's expert, Professor Alexander H. Slocum, explains the term "and" from the perspective of an individual with ordinary skill in the art – for example, an engineer with basic training in physics – as creating reciprocal frames of reference.  The platform is the frame of reference for whether the dispenser moves, and the dispenser is the frame of reference for whether the platform moves.  (See Slocum Aff. ¶ 9).  Even if, in fact, the platform is static and only the dispenser moves, a tiny observer standing on the platform who sees the moving dispenser would not know whether to attribute the motion she observes to the platform or the dispenser.  Thus, at least in theory, both the dispenser and the platform are moving relative to each other.  The perspective is similar to that of a passenger who sits on a stationary northbound train next to a stationary southbound train on adjacent tracks.  When one or both of the trains begin moving, the passenger will comprehend motion but will not know whether it is his train alone, the southbound train alone or both trains together that are moving.

The difficulty with this position is that it does not account for a third frame of reference created by the requirement that something or someone be "moving" the platform or dispenser.  In describing a method of moving the platform or dispenser, the claim language adopts the perspective of the person or thing responsible for causing this movement, not the theoretical perspective of an observer sitting on either the platform or dispenser.  While such a theoretical observer may be unable to discern whether movement comes from the dispenser or the platform, the person or thing responsible for moving the platform and dispenser will have this knowledge.

Defendant's expert, Professor Geoffrey Nunberg underscores this understanding from the view of a linguist interpreting the disputed claim language according to rules of grammar.  However, "one of ordinary skill in the art" generally refers to an individual with expertise in the field of the patented invention, not someone skilled in the field of language and drafting.  See Phillips, 415 F.3d at 1333 (explaining that "[f]or each patent, for example, who qualifies as one of ordinary skill in the art will differ, just as the state of the art at the time of the invention.").  Thus, while interesting, Professor Nunberg's testimony is not representative of a person of ordinary skill in the art, and I do not rely on his opinion in resolving the instant dispute.

Plaintiff next argues that its interpretation of the language in claim 1 is more consistent with the articulation of dependent claims in the '261 patent.  Plaintiff focuses on claim 3 that describes a "method of processing samples . . . wherein the platform is a moving platform capable of indexing slides adjacent to a stationary liquid dispensing location."  '261 Patent 12:29-32.  According to plaintiff, depiction of the platform as

"moving" necessarily implies that the platform may otherwise be immobile.  Defendant counters that the purpose of claim 3 is not to identify the platform as moving, but to provide that it be "capable of indexing slides adjacent to a stationary liquid dispensing location."  Defendant also relies upon claim 7 that references "said moving platform" and, thereby, implies that the "said" platform portrayed in claim 1 is mobile.  Plaintiff asserts that this language resulted from a clerical error that should have been, and will eventually be, amended.  "An error in the prosecution record must be viewed as are errors in documents in general; that is, would it have been apparent to the interested reader that an error was made, such that it would be unfair to enforce the error."  Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341, 1348 (Fed. Cir. 2001).  Because nothing suggests that an interested reader would have understood the inclusion of the term "said" to be in error, claim 7 should be read as originally drafted.

The patent specification further supports defendant's position, as the parties agree that none of the preferred embodiments describe a stationary platform.  Plaintiff correctly notes that the embodiments do not foreclose the possibility of a stationary platform, but they certainly do not support an interpretation of the claim language as describing a stationary platform.  While the Federal Circuit "ha[s] repeatedly warned against confining the claims to [very specific] embodiments" and "strictly limiting the scope of the claims to the embodiments disclosed in the specification," it has also discouraged "divorcing the claim language from the specification."  Phillips, 415 F.3d at 1323-24.  Appropriate interpretation will consider the full context of the patent.  See id.

Turning from the platform, plaintiff focuses on the first preferred embodiment's description of the liquid dispenser. The embodiment describes a stationary hammer that helps push liquid from the dispenser onto a slide. See '261 Patent 5:25-51. In order to define the dispenser as including a stationary element, plaintiff characterizes the hammer as part of the liquid dispenser. However, the patent specification defines the hammer as part of the dispensing station, not the dispenser, and plaintiff offers no rationale for a different characterization. See id. 5:25-26 (providing that "the dispensing station comprises a soft hammer . . .").

The file history of the '261 patent also favors defendant. It reveals amendments to the language in claim 1 that include replacing the term "moving platform" with "moving the platform and a liquid dispenser relative to each other." (Pl.'s Mem. in Support of Summ. J. and Claim Construction 10-11). Plaintiff believes that this change underscores the importance of relative motion and the ability to accomplish such motion between the platform and the liquid dispenser without having a moving platform. (Id.). This understanding is inconsistent, however, with the repeated description of "moveable slides" and the use of a carousel in describing the platform, as cited by defendant. (See Def.'s Mem. in Opp. to Pl.'s Combined Mot. 19-24). Plaintiff argues that independent slide heating, and not movability, constituted the Examiner's focus on the patent, so that use of these terms occurred only in passing, not deliberately. Even assuming arguendo that plaintiff is correct, "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation." Microsoft Corp. v. Multi-Tech Systems, Inc., 357 F.3d 1340, 1350 (Fed.

Cir. 2004). Plaintiff also posits that the term moveable "was appropriate, given that the movement had alreadly [sic] been defined as relative to the liquid dispenser." (Pl.'s Mem. in Support of Summ. J. and Claim Construction Footnote 4). This reasoning cannot provide additional support for plaintiff's position, because it necessarily presumes that plaintiff's argument for relative motion would prevail and thus is circular.

In light of the applicable legal standard, the parties' written submissions, and the argument of counsel, I construe the disputed claim language as follows:

| Term | Court's construction |
|---|---|
| Moving the platform and a liquid dispenser relative to each other | Moving both the moveable platform and a moveable liquid dispenser relative to each other |

Plaintiff's Motion for Summary Judgment (#42 on the docket) is denied.


|     06/20/06     | /s/ Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |