IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYTOLOGIX CORPORATION,<br><br>            Plaintiff,<br><br>    v.<br><br>VENTANA MEDICAL SYSTEMS, INC.,<br><br>            Defendant. | Civil Action No. 04-11783 (RWZ) |

**CYTOLOGIX CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR RECONSIDERATION OF THE MEMORANDUM OF DECISION
DATED JUNE 20, 2006**

**Introduction**

On June 20, 2006, the Court issued a memorandum of decision (docket no. 64) ("the Order"). The Order construed the phrase "moving the platform and a liquid dispenser relative to each other" as used in claims 1 and 2 of United States Patent No. 6,541,261 ("the '261 patent") and on that basis denied CytoLogix' Combined Motion for Claim Construction and Summary Judgment (docket no. 42). The Order rested on a determination that the claimed movement must be considered from the user's frame of reference. (Order, pg. 4) ("the claim language adopts the perspective of the person or thing responsible for causing the movement.")[1]. CytoLogix respectfully submits that this determination is contrary to established precedent. The asserted claims contain no express language adopting the user's perspective. The United States Court of Appeals for the Federal Circuit has previously held that absent such express language,

---

[1] Neither party advanced the theory that movement should be measured from the user's frame of reference. Accordingly, this issue has not previously been briefed.

patent claims should not be so limited.  *See Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352 (Fed. Cir. 2004); *Hilgraeve Corp. v. McAfee Associates, Inc.*, 224 F.3d 1349 (Fed. Cir. 2000).  In *Gemstar-TV*, the Federal Circuit held that a method claim reciting movement of a cursor between the cells of a grid did not require that the cursor move from the perspective of an external frame of reference (such as a user).  Indeed the Court construed the claim to cover a cursor that remains stationary while a grid moves it.  383 F.3d at 1370.  Similarly, in *Hilgraeve*, the Federal Circuit rejected an argument that method claims should ordinarily be construed from the perspective of a user.  224 F.3d at 1355.  On the strength of these cases, CytoLogix hereby requests reconsideration.

**Legal Standard for Reconsideration**

Reconsideration is warranted only if the movant demonstrates "(1) an intervening change in the law; (2) discovery of new evidence not previously available; or (3) a clear error of law in the first order."  *Vermont Pure Holdings, Ltd. v. Nestle Waters North America,* 1006 WL 839486, *3 (D.Mass. March 28, 2006) citing *Davis v. Lehane,* 89 F.Supp.2d 142, 147 (D.Mass. 2000); *see also Zukowski v. St. Lukes Home Care Program,* 326 F.2d 278 (1st Cir. 2003); *Federal Deposit Insurance Corp. v. World University*, 978 F.2d 10 (1st Cir. 1992).  In the instant case, CytoLogix contends that the Order rests on a clear error of law.

**Federal Circuit Cases Concerning a User's Frame of Reference**

*Gemstar-TV Guide Int'l, Inc. v. ITC*

In *Gemstar-TV*, the Federal Circuit held that a method claim, which described moving one object between cells of another, should not be construed from the perspective of an external frame of reference, such as a user.

2

The patent in *Gemstar-TV* concerned a television schedule displayed in a grid on a television screen. The television schedule grid or "grid guide" was composed of individual cells each representing a television program. An asserted method claim described, *inter alia*, moving a cursor between the cells of the grid. The claim provided:

> 31. An interactive process for operating a television schedule system, which comprises:
>
> displaying a television schedule on a television display as a grid of two-dimensionally arranged, adjacent irregular cells which vary in length corresponding to time duration of programs, with a title of a program being displayed in each of said irregular cells, said grid having a plurality of channels listed in a first dimension and time listed in a second dimension,
>
> providing a visual identification of a selected one of said irregular cells,
>
> ***moving said visual identification in the first dimension and in the second dimension between first and second ones of said irregular cells*** to select a desired one of said irregular cells corresponding to a desired program,
>
> tuning a programmable tuner to a select channel based on position of said visual identification for the desired program, and
>
> displaying an overlay containing information relating to a television program being shown on said television set when a channel being shown on the television set is changed.

*Gemstar-TV*, 383 F.3d at 1357. (Emphasis added). The trial court, the International Trade Commission ("the Commission"), determined that the claimed "visual identification" was a cursor. One of the contested issues in the case was the meaning of "moving said [cursor] … between … said … cells [of the television schedule grid]" as used in claim 31. The Commission considered two ways that a cursor could move relative to cells of a grid. Either the cursor could move while the cells of the grid remained stationary or the cursor could remain stationary while the cells moved.

The Commission rejected the second possibility and found that the claim "precluded the grid guide from moving relative to the television screen while the [cursor] remains stationary to reflect the relative movements of the [cursor] through the cells of the grid guide." *Gemstar-TV*, 383 F.3d at 1369.  The Commission apparently interpreted the claim from the perspective of someone watching the television.  As a result, the Commission construed "moving said [cursor] … between … cells" as requiring that the cursor move relative to the cells **and** that the cursor move relative to the television screen.  *Id.* at 1367.  In other words, it determined that the claim required the cursor to move relative to a fixed external frame of reference, such that a person watching the television must see the cursor move.

However, the Federal Circuit reversed and in so doing specifically rejected the notion that movement should be determined relative to an external frame of reference.  The Federal Circuit held:

> The claim language does not specify a frame of reference for moving the [cursor] such as to require that the [cursor] move or not move relative to the television screen.  The claim language only requires that the [cursor] move between the cells themselves.
>                                         ***
> In light of the foregoing, we conclude that … 'Moving said [cursor] … between … cells' … **requires only that the [cursor] be capable of moving relative to the cells in the grid guide** … There is no requirement that the [cursor] must move relative to the television screen.

*Id.* at 1369-70 (emphasis added).  Thus, since the claim did not specify an external frame of reference – in this case the television screen – the Court declined to impose such a limitation.  This case is analogous to *Gemstar-TV* and, indeed, *Gemstar-TV* should control.  The claims in Gemstar-TV, like the claims in this case do not state that the

claimed movement should be considered from an external frame of reference, such as a user. Absent such a statement, no such frame of reference should be implied.

*Hilgraeve*

Earlier, in 2000, the Federal Circuit decided *Hilgraeve Corp. v. McAfee Associates, Inc.*, 224 F.3d 1349 (Fed. Cir. 2000). In *Hilgraeve*, the Federal Circuit similarly considered the question of whether action claimed in a method claim should be construed "from the ordinary user's perspective." 224 F.3d at 1354. It concluded no, reasoning "The patentee claimed a technical method, not a method for projecting a perception." *Id.* at 1355. Thus the Federal Circuit concluded that the ordinary user's perspective must be stated if it is to be incorporated as a claim limitation. If not stated, it should not be implied.

The patent in the *Hilgraeve* case concerned methods of detecting computer viruses. Claim 1 of that patent is demonstrative:

> 1. In a system for transferring digital data for storage in a computer storage medium, *a method of screening the data* as it is being transferred and automatically inhibiting the storage of screened data containing at least one predefined sequence, comprising the steps of:
>
> causing a quantity of digital data resident on a storage medium to be transferred to a computer system having a destination storage medium; receiving and *screening the transferred digital data prior to storage* on the destination storage medium to determine if at least one of a plurality of predefined sequences are present in the digital data received; and in response to said screening step:
>
> (a) automatically causing the screened digital data to be stored on said destination storage medium if none of the plurality of predefined sequences are present and (b) automatically inhibiting the screened digital data from being stored on said destination storage medium if at least one predefined sequence is present

*Id.* at 1351 (Emphasis added). The parties in that case disputed when "screening" occurs in the method employed by the accused software. Indeed the District Court noted, "the critical issue in

the infringement analysis is whether [the accused software] screens before, or after, the time at which incoming data is present on the destination storage medium" *Id.* The plaintiff alleged that the accused software screened prior to storage. In support of this theory, the plaintiff pointed to promotional materials that showed, "a user of [the accused software] would ***perceive*** that the program operates as [claimed in the asserted patent]." *Id.* at 1352 (Emphasis added). However, the District Court dismissed this evidence and noted, "infringement is not a question of user perception of operation, but of actual operation." *Id.*

On appeal, the Federal Circuit largely addressed the issue of infringement, and specifically whether conflicting expert evidence had created a triable fact issue. However, the Federal Circuit also considered a highly relevant claim construction issue, namely whether the asserted method claim should be considered from the perspective of a user:

> [The plaintiff] also argued that before [the District Court] that the phrase 'prior to storage' must be construed from the ordinary user's perspective, i.e. that whether or not [the accused software] screens before or after storage, it will infringe if the user perceives that screening occurs before storage.

*Id.* at 1354-55. The Federal Circuit rejected this argument and drew a distinction between a technical method of doing something and a method as perceived by a user.[2] It held:

> The claims of the [asserted] patent, however do not claim a method of screening data 'so that the user perceives that screening occurs before storage,' but instead claims a method of actually screening before storage. The patentee claimed a technical method, but not a method for projecting a perception.

---

[2] An inventor can, of course expressly claim a method that incorporates a user's perspective. See for example, U.S. Pat. No. 6,781,604, claim 9, "A method of terminal design comprising the steps of… presented by the screen from a perspective of a user"; U.S. Pat. No. 7,043,237, claim 26, "The method of claim 25 further comprising… improve communications in the communication network from the perspective of the user"; U.S. Pat. No. 5,659,691, claim 11, "A method of allowing a plurality of users to interact with a three-dimensional virtual space…relevant space being defined by a portion of the virtual space viewed from the perspective of that user's virtual being…" These are attached to the Declaration of Michael E. Zeliger as Exhibits A-C.

*Id.* at 1355. In the instant case, the claimed method likewise does not incorporate the perspective of a user. Consistent with *Hilgraeve*, the Court should not have read such a limitation into the asserted claims of the '261 patent.

In summary, both *Hilgraeve* and *Gemstar-TV* stand for the proposition that when a method claim is silent about the user's perspective or a particular external frame of reference, Courts should not assume and imply such limitations. Applying this logic, even if the asserted claims in the instant case were silent about frame of reference, the user's frame of reference should not be implied. However, the asserted claims are not silent, which makes CytoLogix' position even more compelling.

The asserted claims in this case expressly provide frames of reference. In claiming, "moving the platform and a liquid dispenser relative to each other" the claim adopts reciprocal frames of reference. The platform is the frame of reference for liquid dispenser and the liquid dispenser is the frame of reference for the platform. The Order explained this understanding when it described Professor Slocum's opinion[3]. (Order, pg. 3) However, it dismissed Professor Slocum's conclusions for failure to "account for a third frame of reference created by the requirement that something or someone be 'moving' the platform or dispenser." Thus, the Order (1) deemphasized the express frames of reference provided in the claim, (2) inserted one that is not stated or implied, and therefore (3) reached the wrong conclusion about the plain meaning of the contested phrase. CytoLogix respectfully submits that nothing in the intrinsic or extrinsic

---

[3] Pursuant to the Order, this is the only competent testimony about how one of ordinary skill in the art would have understood the contested phrase. Regarding defendant's expert testimony, the Court concluded, "Professor Nunberg's testimony is not representative of a person of ordinary skill in the art, and I do not rely on his opinion in resolving the instant dispute." Accordingly, Professor Slocum's testimony, while admittedly extrinsic, is highly probative and unrebutted.

record supports such a limitation, and indeed Federal Circuit precedent precludes it. Moreover, because of the importance of plain meaning in claim construction, this was a pervasive error.

**Impact on the Remainder of the Order**

If the Court amends its plain meaning interpretation, consistent with *Hilgraeve* and *Gemstar TV*, CytoLogix will be entitled to summary judgment of infringement, because nothing in the Order warrants departing from the plain meaning of the contested phrase.

### *The Dependent Claims*

While CytoLogix disagrees with the Court's conclusions about the dependent claims, it will not reargue that issue here. Instead, CytoLogix notes that these findings cannot dominate claim construction and overcome plain meaning. *See North Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993) ("While it is true that dependent claims can aid in interpreting the scope of claims from which they depend, they are only an aid to interpretation and are not conclusive. The dependent claim tail cannot wag the independent claim dog.") Any "inconsistency" resulting from the language of dependent claim 7 does not create the kind of clash between the scope of independent and dependent claims that concerns the Federal Circuit. *Compare with CytoLogix*, 424 F.3d at 1173; *Wright Medical Technology, Inc. v. Osteonics Corp*, 122 F.3d 1440, 1445 (Fed. Cir. 1997). Accordingly, the Order's findings with respect to the dependent claims would not justify a construction that conflicts with the plain meaning of the contested phrase.

### *The Specification and File History*

Likewise, if the Court amends its conclusions about plain meaning, its treatment of the specification and file history will present no impediment to granting summary judgment of

infringement. Again, though CytoLogix disagrees with these findings, it will not reargue them here. Instead, CytoLogix notes again that the Court's findings would not overcome the plain meaning of the contested phrase because as explained in *Johnson Worldwide*, there is a "heavy presumption in favor of the ordinary meaning of claim language." 175 F.3d at 989. *See also Phillips*, 415 F.3d at 1314. (where "the ordinary meaning of claim language as understood by a person of skill in the art [is] readily apparent…claim construction…involves little more than the application of the widely accepted meaning of commonly understood words").

With respect to the specification, details of embodiments described in the patent's specification, but not present in the claim language, may not be read into the claim. *TurboCare v. General Elec. Co.*, 264 F.3d 1111, 1123 (Fed. Cir. 2001); *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985). *See also Phillips*, 415 F.3d at 1323-24. Thus, while the Court apparently favors Ventana's interpretation of the specification (Order, pg. 5), that preference does not justify reading unstated limitations into the claims.

With respect to the file history, the burden for overcoming a claim's plain meaning is even higher. Pursuant to the prosecution disclaimer doctrine, one sets aside a term's plain meaning only by proving that statements in the file history demonstrate a clear and unambiguous disavowal of claim scope. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-1324 (Fed. Cir. 2003). Indeed disclaimer requires "words or expressions of manifest exclusion or restriction." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002). Nothing in the Order or anywhere else in this case, suggests that the file history demonstrates disclaimer. Absent such proof, any inconsistencies in the file history plain meaning of the disputed phrase are inconsequential and do not overcome plain meaning.

Thus, if the Court reconsiders and changes its view of the plain meaning, the remainder of the Order will not conflict with such a change, and indeed summary judgment of infringement will be warranted.

**Conclusion**

For the foregoing reasons, CytoLogix respectfully requests reconsideration and further requests that the Court adopts its proposed claim construction and grant its motion for summary judgment.

**KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP**

Dated: July 5, 2006

*/s/ Michael E. Zeliger*
Michael E. Zeliger (BBO # 633654)
David A. Simons (BBO # 638740)
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Tel: (617) 261-3100

*Attorneys for Plaintiff CytoLogix Corporation*