IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYTOLOGIX CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>VENTANA MEDICAL SYSTEMS, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 04-11783 (RWZ) |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR RECONSIDERATION</u>**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................................ 1

II.    THE STANDARDS FOR RECONSIDERATION .................................................................. 1

III.    RECONSIDERATION SHOULD BE DENIED ...................................................................... 3

    A.    The Cases Cited by CytoLogix Do Not Warrant Reconsideration ............................... 3

    B.    The Court Adopted the Correct Frame of Reference for Construing the Claims ......... 5

IV.    THE IMPACT OF RECONSIDERATION............................................................................... 8

V.    CONCLUSION ........................................................................................................................ 9

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Summ. J. Opp'n | Defendant Ventana Medical Systems, Inc.'s Memorandum in Opposition to Plaintiff's Combined Motion for Claim Construction and Summary Judgment of Infringement, filed April 14, 2006 (Docket No. 59) |
| Chin Ex. | The corresponding exhibit to the Declaration of Roger J. Chin in Support of Defendant's Opposition to Plaintiff's Combined Motion for Claim Construction and Summary Judgment of Infringement, filed April 4, 2006 (Docket No. 57) |
| Reply Summ. J. Br. | CytoLogix Corporation's Reply Memorandum in Support of Its Combined Motion for Claim Construction and Summary Judgment of Infringement, filed May 2, 2006 (Docket No. 60) |
| Hearing Tr. | Transcript of Summary Judgment Hearing Held on May 18, 2006, filed May 23, 2006 (Docket No. 63) |
| Order | Memorandum of Decision, filed June 20, 2006 (Docket No. 64) |
| Recons. Br. | CytoLogix Corporation's Memorandum in Support of Its Motion for Reconsideration of the Memorandum of Decision Dated June 20, 2006, filed July 5, 2006 (Docket No. 66) |

Note: emphasis is added throughout

Defendant Ventana Medical Systems, Inc. respectfully submits this memorandum in opposition to Plaintiff CytoLogix Corporation's motion for reconsideration, filed July 5, 2006.

## I. INTRODUCTION

CytoLogix admits that it is not rearguing the Court's conclusions drawn from the intrinsic evidence. (Recons. Br. at 8-9.) That intrinsic evidence was dispositive of CytoLogix's summary judgment motion, as this Court held, and it is dispositive of this motion as well. In particular, the Court concluded that dependent claim 7 of the '261 patent identifies the slide platform of claim 1 as "said moving platform." The Court also concluded that the "patent specification further supports defendant's position" that the slide platform of claim 1 must move. And the Court concluded that the file history contains "repeated description of 'moveable slides' and the use of a carousel in describing the platform." (Order at 5-6.)

Instead, CytoLogix belatedly points to two cases (*Gemstar* and *Hilgraeve*) that it chose not to discuss in the course of its extensive briefing and argument on the summary judgment motion. These two cases address the interpretation of claims in wholly unrelated patents that concern fields of technology (electronic television guides and antivirus software) completely irrelevant to the slide staining methodology claimed in the '261 patent.

CytoLogix's untimely arguments provide no justification for this Court to reconsider its well-reasoned opinion. It is black-letter law that the claims of a patent "do not have meaning removed from the context from which they arose." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). The claim language, the patent specification, and the file history of the '261 patent provide the proper context for construing the claims of the '261 patent. Television guide and antivirus software patents do not.

## II. THE STANDARDS FOR RECONSIDERATION

CytoLogix does not identify any change in controlling law or any discovery of new evidence that warrants reconsideration. (Recons. Br. at 2.) Instead, CytoLogix simply contends that the Court

-1-

committed "clear error." (*Id.*)  As discussed below, CytoLogix has not established any error in the Court's analysis, much less clear error.

Reconsideration may be granted only in "exceptional cases." *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1336 (Fed. Cir. 2004); *Employers Ins. of Wausau v. First State Ins. Group*, 324 F. Supp. 2d 333, 338 (D. Mass. 2004).  In the claim construction context, the Federal Circuit has held that "clear error" is "judged under a **stringent standard**" where the Court must be "**convinced to a certainty**" that the prior decision was incorrect.  *Toro*, 383 F.3d at 1336-37. CytoLogix may not use reconsideration as an excuse to reargue its case:

> The motion for reconsideration is not an opportunity for a party to improve upon his arguments or try out new arguments; nor is it properly a forum for a party to vent his dissatisfaction with the Court's reasoning.

*Davis v. Lehane*, 89 F. Supp. 2d 142, 149 (D. Mass. 2000) (citation omitted); *see also Ellis v. United States*, 313 F.3d 636, 647 (1st Cir. 2002) ("a party should be allowed his day in court, but going beyond that point deprives others of their days in court, squanders judicial resources, and breeds undue delay").  This is especially true in a situation where, as here, CytoLogix had a full opportunity to discuss *Gemstar* and *Hilgraeve* during the briefing and argument on its summary judgment motion, but elected not to do so.[1]

---

[1] It is noteworthy that although CytoLogix cited *Gemstar* on page 6 of its opening summary judgment brief, it did not rely upon *Gemstar* (or *Hilgraeve*) to support its "frame of reference" argument that it advances, once again, in its motion for reconsideration.  CytoLogix suggests that its failure to do so should be excused because supposedly, during briefing and argument on the summary judgment motion, "[n]either party advanced the theory that movement should be measured from the user's frame of reference."  (*See* Recons. Br. at 1 n.1.)  This excuse is demonstrably untrue.

In its summary judgment reply brief, CytoLogix addressed the same "frame of reference" issue that it raises on its motion for reconsideration. (Reply Summ. J. Br. at 7.)  Specifically, CytoLogix advocated the frame of reference of a "hypothetical tiny observer" (*id.*) and argued that Ventana was wrong in contending that the "reference frame would be ***the user***" (*id.* at 3).  This issue was also addressed at length during oral argument.  (*See* Hearing Tr. at 49-52 & 57-59.)  Yet, CytoLogix chose not to rely upon *Gemstar* or *Hilgraeve*.  CytoLogix had ample opportunity to present these cases to the Court in the course of summary judgment briefing and oral argument.  That CytoLogix failed to do so is no grounds for reconsideration.  *See Davis*, 89 F. Supp. 2d at 149 ("motion for reconsideration is not an opportunity for a party to improve upon his arguments or try out new arguments"); *see also Tell v. Trustees of Dartmouth Coll.*, 145 F.3d 417, 419-20 (1st Cir. 1998).

### III. RECONSIDERATION SHOULD BE DENIED

#### A. The Cases Cited by CytoLogix Do Not Warrant Reconsideration

CytoLogix bases its motion on claim constructions from *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352 (Fed. Cir. 2004) and *Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349 (Fed. Cir. 2000). The patents at issue in those cases concerned electronic television guides and antivirus software, respectively.

The interpretation of unrelated patent claims pertaining to television guides and antivirus software has no relevance to the interpretation of the '261 patent. The *Gemstar* and *Hilgraeve* patents concern entirely different areas of technology and arise from patent specifications and file histories wholly unrelated to the '261 patent. As the Federal Circuit explained:

> A particular term used in one patent need not have the same meaning when used in an entirely separate patent, particularly one involving different technology. In fact, there are many situations in which the interpretations will necessarily diverge.... [T]he manner in which the term is used in the patent may dictate a definition that differs from the definition that would be given to the same term in a different patent with a different specification or prosecution history.

*Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1318 (Fed. Cir. 2005); *see also Aventis Pharms., Inc. v. Barr Labs., Inc.*, 411 F. Supp. 2d 490, 506 n.9 (D.N.J. 2006) ("The construction of claim language in one patent is ***unlikely to be helpful*** in the construction of claim language in an unrelated patent in a different case.").

In direct contravention of this controlling authority, CytoLogix proposes that the Court use the claim constructions of the unrelated television guide and antivirus software patents as the starting and end point for the broad construction it seeks. (Recons. Br. at 2-8.) CytoLogix further proposes that the intrinsic evidence of the '261 patent should be relegated to the status of an insignificant "impediment" to its proposed construction. (*Id.* at 8-9.) This approach is entirely backwards. A court should "focus[] at the outset on how the patentee used the claim term in the claims, specification, and prosecution history, rather than starting with a broad definition and whittling it down." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc).

-3-

Because CytoLogix admittedly is not rearguing the Court's conclusions about the intrinsic evidence (Recons. Br. at 8-9), it cannot prove "to a certainty" that the Court's claim construction is in error. *See Toro*, 383 F.3d at 1336-37. This is so for at least four reasons.

First, as the Court observed during the hearing, the proper grammatical reading of the claim language requires mutual action by both objects.[2] (*See* Hearing Tr. at 14:3-4; Summ. J. Opp'n at 6-8.) CytoLogix has never disputed this point.

Second, this Court concluded that dependent claim 7 of the '261 patent identifies the platform of claim 1 as "said moving platform." (Order at 5.) The public is entitled to rely on this clear statement in the patent itself.[3] The Federal Circuit has described this type of intrinsic evidence as "**most compelling**."[4] *Masimo Corp. v. Mallinckrodt Inc.*, 18 Fed. Appx. 852, 856 (Fed. Cir. 2001). (*See also* Summ. J. Opp'n at 9-10 & nn.4-5.)

Third, this Court also concluded that the "patent specification further supports defendant's position" that the slide platform must move. (Order at 5.) Because the patent specification characterizes "the invention" as requiring a moving platform in the form of a rotary carousel, and distinguishes the prior art on that basis (*see* Summ. J. Opp'n at 10-15), the claims must be interpreted as being so limited. *See Honeywell Int'l, Inc. v. ITT Indus., Inc.*, __ F.3d __, 2006 WL 1703376,

---

[2] Although the Court did not rely on Prof. Nunberg for claim construction (Order at 4), the correct grammatical reading of the claim language was properly before the Court based on the AMERICAN HERITAGE DICTIONARY and the treatise ENGLISH GRAMMAR, vol. II. Dictionaries and treatises of this type "are worthy of special note" and may be consulted by the Court "at any time." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996).

[3] On reconsideration, CytoLogix does not attempt to resurrect its unsubstantiated argument that claim 7 should be disregarded as an error. The two-year window for CytoLogix to correct this alleged error has expired pursuant to 35 U.S.C. § 251. (*See* Hearing Tr. at 37-39.) Moreover, granting CytoLogix a mulligan at this juncture "would undercut the public's reliance on a statement that was in the public record and upon which reasonable competitors formed their business strategies." *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000).

[4] *North Am. Vaccine, Inc. v. Am. Cyanamid Co.*, cited by CytoLogix, is not to the contrary. In that case, there was a factual dispute as to whether the "use of *H. flu* [virus of the dependent claim] always results in difunctionality," and therefore, the court was not willing to construe the broader independent claims to include the same. 7 F.3d 1571, 1577 (Fed. Cir. 1993).

at *5-6 (Fed. Cir. June 22, 2006).  Such intrinsic evidence has been held to be the "***best source***" and the "primary basis" for construing the claims.  *Phillips*, 415 F.3d at 1315.

Fourth, this Court likewise concluded that the "file history of the '261 patent also favors defendant," with its "repeated description of 'moveable slides' and the use of a carousel in describing the platform."  (Order at 6.)  The file history "is ***often of critical significance***" in claim construction.  *Vitronics*, 90 F.3d at 1582.

This intrinsic evidence – which qualifies as "most compelling," the "best source," and "often of critical significance" – is admittedly unchallenged by CytoLogix on this motion for reconsideration.  (*See* Recons. Br. at 8 ("will not reargue that issue here") & 9 (same).)  Balanced against it is the "evidence" of claim constructions that CytoLogix borrowed from two completely unrelated patents – "evidence" that the courts have characterized as "***unlikely to be helpful***."  *Aventis*, 411 F. Supp. 2d at 506 n.9.  In short, CytoLogix's borrowed "evidence" cannot provide the "exceptional circumstances" required for the Court to reconsider its decision.

**B.    The Court Adopted the Correct Frame of Reference for Construing the Claims**

This Court held that "the claim language adopts the perspective of the person or thing responsible for causing this movement, not the theoretical perspective of an observer sitting on either the platform or dispenser."  (Order at 4.)  The Court was correct.  Each of the method steps of claim 1 is performed, or caused to be performed, by the person using the slide staining machine.

The intrinsic evidence explains that movement of the platform is assessed from the perspective of the user.  For example, the abstract of the '261 patent says that "[t]emperature control electronics on the [slide] carousel are controlled by a ***user interface*** off of the carousel."  (Chin Ex. 1 (Abstract).)  Similarly, the specification says that "[a] ***user interface*** [is] mounted off of the moving [slide] platform" (*id.* at 2:47-48), and explains the difficulty of "[p]lacing all of these wires on a service loop between a stationary computer [where the ***user interface*** is located] and a moving slide stainer" (*id.* at 2:26-28).

The file history is to the same effect. There the applicants stated that "[i]n accordance with the present invention, the number of wires required between the stationary computer [where the *user interface* is located] and the moving heating elements is substantially reduced." (Chin Ex. 10 at 4.) The applicants also distinguished the prior art on the grounds that "there is no suggestion in any of the references of a temperature controller mounted on the moving platform and responding to data received from a stationary computer" where the *user interface* is located (*id.*), and that the prior art "Muller et al. and Potter et al. [references] fail to suggest the independent temperature regulation by controller circuitry on the moving platform in response to data from a *stationary user interface* computer and thus fail to suggest the claimed invention" (*id.* at 5).[5]

The two cases cited by CytoLogix offer no reason to adopt changing frames of reference. In *Gemstar*, the patent concerned on-screen electronic television guides and called for a "visual identification," such as a cursor, that was "moving ... between ... cells." *Gemstar*, 383 F.3d at 1369. The Federal Circuit held that "moving between cells" could be accomplished either by (1) holding the cells stationary and shifting the position of the cursor to highlight a new cell, or (2) holding the cursor stationary and shifting the position of the cells so that a new cell would be highlighted. *Id.*

---

[5] CytoLogix is simply wrong in asserting that the "moving the platform and a liquid dispenser" element of claim 1 "adopts reciprocal frames of reference." (*See* Recons. Br. at 7.) According to basic principles of grammar, the "relative to each other" clause adds an *additional* requirement beyond the necessity that both the platform and a liquid dispenser must move. This additional requirement is that the positions of the platform and the dispenser, relative to one another, must change during the course of moving both. Most certainly, the "relative to each other" clause does not displace the requirement that both the slide platform and the liquid dispenser must move. (*See* Summ. J. Opp'n at 6-8; Hearing Tr. at 33-36.)

The Slocum declaration provides no justification to depart from the intrinsic evidence and basic rules of grammar. "Once a dispute over claim construction arises, 'experts' should also not be heard to inject a new meaning into terms that is inconsistent with what the inventor set forth in his or her patent and communicated, first to the patent examiner and ultimately to the public. Patents should be interpreted on the basis of their intrinsic record, not on the testimony of such after-the-fact 'experts' that played no part in the creation and prosecution of the patent." *Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997). Unlike Dr. Slocum, Prof. Nunberg based his analysis on trustworthy sources such as dictionaries and treatises (*see Vitronics*, 90 F.3d at 1584 n.6) and did not contradict the intrinsic evidence.

However, the Court correctly found that whether the cursor shifted position relative to the stationary television screen was immaterial because, as explained above, the cursor could "move between cells" without having to shift position relative to the stationary television screen. *Id.* at 1369-70.

*Gemstar* bears little resemblance to the present case. The language of the television guide patent claims differ in a key respect from the language of the '261 patent claims. Because the cursor in *Gemstar* was only required to be "moving between cells," it made sense to adopt the cells as the frame of reference. And because movement of the cursor between cells could be assessed and accomplished irrespective of the position of the stationary television screen relative to the cursor, it was proper to disregard the fixed frame of reference of the television screen. The '261 patent, on the other hand, clearly adopts the perspective of the user for the steps of the claimed method, as discussed above and as this Court found.

Furthermore, in *Gemstar*, the court indicated that there was only "isolated language in the written description" showing actual movement of the cursor relative to the television screen. *Id.* at 1369. By contrast, the specification and file history of the '261 patent show consistent and pervasive efforts – on literally hundreds of occasions – by the applicants to describe their "present invention" as one that requires actual movement of the slide platform. (*See* Summ. J. Opp'n at 10-24.) This stark difference makes CytoLogix's comparison of the '261 patent to the television guide patent meaningless because "[c]laims must always be read in light of the specification." *Phillips*, 415 F.3d at 1315 (citation omitted). Accordingly, the courts have rejected attempts, such as the one by CytoLogix, to import a claim construction from one patent and apply it to a wholly unrelated patent in a different area of technology. *Medrad*, 401 F.3d at 1318; *Aventis*, 411 F. Supp. 2d at 506 n.9.

CytoLogix's analysis of *Hilgraeve* fares no better. The antivirus software patent at issue there required the step of "screening data" to be performed prior to the step of "storage." The patentee argued that infringement could be shown "regardless of how the program actually operates"

-7-

so long as the user *perceived* the program to operate in that order (*i.e.*, screening before storage). *Hilgraeve*, 224 F.3d at 1354-55. The Federal Circuit rejected the argument, holding that the program must *actually* screen data prior to storing data. *Id.* at 1355.

*Hilgraeve* provides no support for CytoLogix's frame of reference argument. In fact, *Hilgraeve* undercuts CytoLogix's position. CytoLogix's frame of reference argument is based on the notion that, in CytoLogix's words, "the slide platform ***appears*** to move" to a "hypothetical tiny observer." (Reply Summ. J. Br. at 7.) In this regard, CytoLogix's argument exactly follows the one rejected in *Hilgraeve*. The Federal Circuit held that to infringe, the steps of the claim must *actually* be performed. The mistaken perception that they are performed is not enough. Likewise, to infringe the claims of the '261 patent, both the slide platform and the liquid dispenser must *actually* move. It is not enough that CytoLogix can imagine a "hypothetical tiny observer" who incorrectly perceives that "the slide platform appears to move." (*Id.* at 7.) And as CytoLogix conceded at the hearing, in the accused Ventana device, the slide platform *actually* does not move. (Order at 2; Hearing Tr. at 22.)

## IV.   THE IMPACT OF RECONSIDERATION

CytoLogix incorrectly states that summary judgment would be warranted if the Court grants its motion for reconsideration. (Recons. Br. at 10.) The Court denied CytoLogix's motion because the accused device does not perform a required element of the '261 patent claims. The Court did not, and did not need to, construe the other terms disputed by the parties. (Order at 2.) If the Court were to reconsider its interpretation of "moving the platform and a liquid dispenser," the additional claim construction issues must be addressed.[6]

---

[6] Ventana raised two alternative bases to deny CytoLogix's motion. First, the claimed "platform" is a rotary carousel. (Summ. J. Opp'n at 25.) The accused Ventana device does not use a rotary carousel. (*Id.* at 30.) Second, the slide platform must move from one position in which liquid is dispensed to another position in which liquid is dispensed from the same dispenser. (*Id.* at 24.) The accused device does not perform that requirement of the claims either. (*Id.* at 29.)

## V. CONCLUSION

For the foregoing reasons, Ventana respectfully requests the Court to deny CytoLogix's motion for reconsideration.

Dated: July 19, 2006                                VENTANA MEDICAL SYSTEMS, INC.

                                                    By its attorneys,


                                                        /s/ Roger J. Chin

                                                    Peter E. Gelhaar (BBO #188310)
                                                    Michael S. D'Orsi (BBO #566960)
                                                    DONNELLY, CONROY & GELHAAR, LLP
                                                    One Beacon Street, 33rd Floor
                                                    Boston, Massachusetts 02108
                                                    (617) 720-2880

                                                    Ron E. Shulman (*pro hac vice*)
                                                    Roger J. Chin (*pro hac vice*)
                                                    WILSON SONSINI GOODRICH & ROSATI
                                                    Professional Corporation
                                                    650 Page Mill Road
                                                    Palo Alto, California 94304
                                                    (650) 493-9300

                                                    Jeffrey N. Danis (BBO #113880)
                                                    VENTANA MEDICAL SYSTEMS, INC.
                                                    1910 Innovation Park Drive
                                                    Tucson, Arizona 85737
                                                    (520) 229-3965


**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 19, 2006.

                                                        /s/ Roger J. Chin
                                                         Roger J. Chin