IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CYTOLOGIX CORPORATION,

    Plaintiff,

v.

VENTANA MEDICAL SYSTEMS, INC.,

    Defendant.

Civil Action No. 04-11783 (RWZ)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPLEMENT ITS ANSWER TO THE FIRST AMENDED COMPLAINT**

Plaintiff CytoLogix Corporation ("CytoLogix") hereby opposes Defendant Ventana Medical Systems, Inc.'s ("Ventana's") Conditional Motion to Supplement Its Answer to the First Amended Complaint.

By its motion, Ventana seeks to add a new affirmative defense: unenforceability due to inequitable conduct before the patent office. The "inequitable conduct" Ventana alleges, however, did not occur during prosecution of the patents-in-suit. Rather, Ventana alleges inequitable conduct during reexamination of a *different* patent—a reexamination which took place *after* both the patents-in-suit had already issued.

Ventana's allegations are meritless. During the reexamination, CytoLogix did not withhold any material information from the patent examiner, and none of CytoLogix's declarations were false or inconsistent with prior testimony.[1] But this Court need not consider

---

[1] CytoLogix will not respond to the inequitable conduct allegations point-by-point in this Opposition. For the reasons discussed *infra*, the Court need not consider the merits to deny the motion to supplement. The allegations, are, however, entirely frivolous. For example, Ventana accuses CytoLogix's inventors and prosecuting attorney of failing to disclose certain litigation testimony which, it contends (wrongly), contradicted CytoLogix's positions before the patent

the merits. Even if every spurious allegation in Ventana's new defense were true, the conduct would have no bearing on this litigation, because the purported "inequitable conduct" has nothing to do with the issuance of the *patents-in-suit*. Ventana's new allegations, as a matter of law, do not state a claim upon which any relief may be granted *in this lawsuit*. Accordingly, the Court should deny Ventana's motion as futile.

## I. Legal Standard for Supplementation Under Rule 15(d)

Ventana bases its motion on Fed. R. Civ. P. 15(d), which states: "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Whether to permit a supplemental pleading is within the trial court's discretion. *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998); *In re Wade*, 969 F.2d 241, 250 (7th Cir. 1992).

"Generally, the standard used by courts in deciding to grant or deny leave to supplement is the same standard used in deciding whether to grant or deny leave to amend" under Fed. R. Civ. P. 15(a). 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.30, at 15-109 & n.10.1 (3d ed. 2004). *See also Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996); *Mueller Co. v. United States Pipe & Foundry Co.*, 351 F. Supp.2d 1, 2 (D.N.H. 2005). The factors to be considered, therefore, are: (1) whether the amendment has been unduly delayed; (2) whether the amendment is brought for some improper purpose; (3) whether the amendment would unfairly

---

office. One example of the "prior testimony" Ventana emphasizes is a passage from an expert deposition (Vent. Ex. F; in chart at p. 4 of Ventana's Mem.). What Ventana doesn't tell the Court (or fails to recognize) is that this expert report was designated confidential *by Ventana*. Thus, CytoLogix's inventors and prosecuting attorney were *barred* from seeing it during the pendency of the reexamination by this Court's protective order. In fact, Ventana actually filed the deposition excerpt *under seal* with this motion. An individual cannot "deliberately withhold" something which he has never even seen. Ventana's new pleading is replete with these sorts of reckless allegations against Dr. Bogen and Attorney Smith.

prejudice the non-moving party; and (4) whether the amendment is futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (Rule 15(a) standard).

It is well-established that if a supplemental pleading would be "futile," that alone is sufficient grounds to deny a Rule 15(d) motion to supplement.  *See, e.g.*, *Mueller*, 351 F. Supp.2d at 2; *Glatt*, 87 F.3d at 194; *Hassoun v. Cimmino*, 126 F. Supp.2d 353, 360-61, 372-73 (D.N.J. 2000).  "Futility" means that the proposed pleading fails to state a claim upon which relief could be granted.  *Id.*, at 360 (citing *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

## II.     Ventana's Inequitable Conduct Pleading Is Futile

Ventana's proposed new affirmative defense alleges inequitable conduct during the reexamination of U.S. Patent No. 6,183,693.  The '693 patent is not at issue in this case; rather, it is an ancestor of the patent-in-suits.

In its Memorandum, Ventana argues that "[m]isconduct as to one patent in a family may taint its descendants," citing *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006), and *Fox Indus., Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d 801, 803-04 (Fed. Cir. 1990). Ventana's statement is technically correct:  inequitable conduct *may* render later, downstream patents unenforceable, in certain limited circumstances.  As a matter of law, though, it *cannot* render the patents-in-suit unenforceable here, where the patents-in-suit issued *before* the alleged inequitable conduct occurred.

In both cases cited by Ventana, the inequitable conduct occurred during the prosecution of an ancestor patent, *before* prosecution of the descendent patents.  The court found that the early misconduct applied to the later prosecution of the descendants, rendering the later claims unenforceable as well.  In both cases, the Court held *only* that "a breach of the duty of candor

*early in the prosecution* may render unenforceable all claims which *eventually issue* from the same or a related application." *Fox*, 922 F.2d at 804 (emphasis added); *Agfa*, 451 F.3d at 1379. In *Agfa*, the Court emphasized that "Later applications are, of course, not always tainted by the inequitable conduct of earlier applications." *Id.*

Other cases *not* cited in Ventana's brief make clear that where, as here, the patents-in-suit had already issued before the purported "inequitable conduct," they are not infected. For example, in *Pharmacia Corp. v. Par Pharmaceutical, Inc.*, 417 F.3d 1369 (Fed. Cir. 2005), the plaintiff asserted two patents, the '368 and the '504. *Id.* at 1370. The '368 patent, it turned out, was procured by inequitable conduct (a false declaration), and declared unenforceable by the Court. *Id.* at 1373. The defendant argued that the other patent, the '504, should be held unenforceable as well, since it was related to the '368, and the two patents were linked by a terminal disclaimer. The Federal Circuit disagreed.

According to the Court, related patents—even those with claims similar enough to require a terminal disclaimer[2]—are still *separate* patents. *Id.* at 1374. For both patents to be held unenforceable, there must be "culpable conduct" that extends to both patents. *Id.* at 1375 ("this court's inequitable conduct cases do not extend inequitable conduct in one patent to another patent that was not acquired through culpable conduct"). In *Pharmacia*, the false declaration in the '368 patent did not taint the '504 patent, because it was submitted *after* the '504 patent had already issued:

---

[2] A "terminal disclaimer" is mechanism by which a patent applicant limits the length of its patent term to the length of one of its earlier patents. (I.e., "disclaims" the terminal portion of its new patent.) 37 C.F.R. § 1.321(b). Terminal disclaimers are used when an Examiner contends that the claims of the new patent are too similar to the claims of the earlier patent, and constitute "double patenting" (i.e., an improper extension of the original patent). The terminal disclaimer obviates such rejections. 37 C.F.R. § 1.321(c).

- 4 -

> The district court correctly concluded that the terminal disclaimer alone did not bind the '368 patent and the '504 patent together for purposes of unenforceability due to inequitable conduct. Because the record shows no inequitable conduct during prosecution of the '504 patent itself, the district court did not abuse its discretion in finding the '504 patent to be valid and enforceable.  In fact, the '504 patent had already issued before the inequitable conduct occurred.  The '504 patent issued on March 22, 1994;  Stjernschantz executed his declaration on April 20, 1994.   Thus, this court affirms the district court's decision.

*Id.  See also SSIH Equipment S.A. v. U.S. Intern. Trade Com'n*, 718 F.2d 365, 378-79 (Fed. Cir. 1983) (holding, "as a matter of law," that a patent-in-suit was not rendered unenforceable by inequitable conduct committed in procuring other allegedly "interrelated" patents, where the "acts which are alleged to have taken place all occurred after the [patent-in-suit] issued"); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998) (divisional patent separated from "tainted" claims not unenforceable).

      The present case is controlled by *Pharmacia*.  Here, Ventana does not allege inequitable conduct during prosecution of the patents-in-suit.  Instead, it alleges inequitable conduct during reexamination of a related patent, the '693, which occurred *after* the patents-in-suit had already issued.  Ventana then contends that these later acts should infect the earlier issued claims, because the patents are related, share a common specification, and have claims which were similar enough to require a terminal disclaimer.  (Ventana Mem. at 7.)  As made clear in *Pharmacia*, however, such connections and "similarities" are immaterial—to render other patents unenforceable, the culpable conduct must apply to each legally separate patent.  *Pharmacia*, 417 F.3d at 1375.  Where, as here, the allegedly improper conduct occurred *after* the patents-in-suit were issued, it simply cannot have affected the claims at issue now, both "as a matter of law" and common sense.  *See SSIH*, 718 F.2d at 378-79.  Inequitable conduct may reach forward, to void claims that benefited from the improper conduct, but it does not reach backward.

Ventana's new defense, therefore, does not state facts upon which relief can be granted in this lawsuit, and is therefore futile. *Hassoun*, 126 F. Supp.2d at 360.

### III. The Other *Foman* Factors Also Favor Denial of Ventana's Motion

Since Ventana's supplemental pleading is futile, it may be rejected on that basis alone. *See, e.g.*, *Mueller*, 351 F. Supp.2d at 2; *Glatt*, 87 F.3d at 194. Nevertheless, the other *Foman* factors—undue delay, improper purpose, and prejudice—also favor denial of Ventana's motion.

First, Ventana delayed unduly in raising this new defense. In fact, Ventana delayed *more than a year* after learning the relevant facts. According to Ventana's supplemental pleading, the alleged "fraud" occurred in reexamination submissions in February 2006. Ventana was aware of these submissions as they happened, since its counsel, Brown Rudnick, was served copies of all reexamination correspondence. (See Ventana's Ex. B, at 18.) In fact, Ventana filed a copy of the February 2006 reexamination response with this Court in April 2006, in opposition to CytoLogix's summary judgment motion. (See Doc. No. 57 at Ex. 7, and Doc. No. 59, at 16-18.) Yet Ventana did not move to supplement its pleadings until April 25, 2007, more than a year after the alleged "fraud," and roughly half a year after the reexamination certificates issued. This is undue delay.

Second, Ventana files this motion now for an improper purpose: back-door discovery in the other ongoing patent infringement case between the parties, Civil Action No. 01-10178 ("the '01 Case"). That Ventana filed this Motion to Supplement on April 25 is no accident, and demonstrates its true motive.

In the '01 Case, Ventana filed a similar motion for leave to amend its pleadings to assert inequitable conduct. That case does, in fact, involve the '693 patent, the subject of the reexamination which Ventana now contends was "fraudulent." But Ventana's motion in the '01

case came much too late (just three months before the damages phase of trial, and several years after trial of the liability phase), so the Court, at an April 24, 2007 status conference, tabled Ventana's Motion to Amend until after trial.

Then, the very next day, Ventana filed its Motion to Supplement in *this* case, to add a defense of "inequitable conduct" against the '693 patent, even though the '693 patent is not in suit here. Ventana's motives are apparent: it seeks to take discovery on its inequitable conduct defense for the '01 Case through the back door—this case—and then attempt to use that discovery at the July 2007 damages and antitrust trial in the '01 Case. This circumvention should not be allowed. The '693 patent is not in this case, and the Court should not allow pleadings and discovery on it here.

Finally, Ventana's motion would prejudice CytoLogix and, just as importantly, its prosecution counsel. While Ventana is correct that discovery has not yet closed in the instant case, that is not the only form of prejudice. Ventana's new pleading alleges fraud on the patent office, not just by CytoLogix's inventor, Dr. Bogen, but also by its prosecution attorney, James Smith, of Hamilton, Brook, Smith & Reynolds, P.C. As the Court well knows, for the person accused of inequitable conduct, it is often the public assertion of the claim, as much as the proof of it, that causes damage and harm to reputation. See *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180, 196 (8th Cir. 1976) ("unjustified damage to professional and social reputations" can result when accused infringers "hostilely comb[] the inventor's files" in an effort to uncover some "inequitable conduct"). *See also Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1328 (Fed. Cir. 2000) (noting that a false allegation of inequitable conduct "cast a cloud over the integrity of the inventor and his original counsel"). Where, as

here, the claim of inequitable conduct is futile, and brought for the purpose of back-door discovery, neither CytoLogix nor Mr. Smith should have to defend themselves against it.

## IV.     Conclusion

The validity of the '693 patent has been upheld four times: twice in the patent office (the original prosecution and the reexamination), once in this Court (2003 trial), and once by the Federal Circuit. The '693 claims should not be litigated a fifth time, especially in this case, where the '693 patent is not even at issue.

For the above reasons, the Court should deny Ventana's Motion to Supplement.


Dated: April 9, 2007                                       /s/ Michael E. Zeliger

                                                Michael E. Zeliger (BBO # 633654)
                                                David A. Simons (BBO # 638740)
                                                Jackson Ho (BBO# 663413)
KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Tel: (617) 261-3100
*Attorneys for Plaintiff*
  *CytoLogix Corporation*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPLEMENT ITS ANSWER TO THE FIRST AMENDED COMPLAINT was served on this 9th day of April, 2007 to counsel of record by the Court's ECF system.

                                                                            /s/*Michael E. Zeliger*