# Exhibit E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


CYTOLOGIX CORPORATION,          )
                                )
            Plaintiff,          )
        vs.                     ) CIVIL ACTION NO.
                                ) 04-11783 (RWZ)
VENTANA MEDICAL SYSTEMS, INC.   )
                                )
            Defendant.          )
                                )


VIDEOTAPED DEPOSITION OF

GEOFFREY D. NUNBERG, Ph.D.

_____

April 20, 2006


REPORTED BY:  CAROLYN M. MANN, CSR 10066

```
 1                    INDEX OF EXAMINATIONS

 2  EXAMINATION BY MR. ZELIGER ...................... 6

 3  EXAMINATION BY MR. CHIN .........................79

 4          EXHIBITS MARKED FOR IDENTIFICATION
             (Page number denotes page identified)
 5
     1   Declaration of Geoffrey Nunberg in Support of
 6       Defendant's Opposition to Plaintiff's Combined
         Motion for Claim Construction and Summary
 7       Judgment of Infringement ....................22

 8   2   U.S. Patent Number 6,537,818 B2 .............34

 9   3   U.S. Patent Application Number US 2003/0203493
         A1 .........................................37
10
     4   Excerpt from file history of '261 patent (8
11       pages) .....................................56

12   5   U.S. Patent Number 6,541,261 B1 .............19

13   8   One page reading "moving the probe and the
         probe dispense station relative to one
14       another" ...................................30

15   9   One page reading "said nozzle support and said
         slide support moving relative to one another
16       other" .....................................32

17  10   One-page chart with headings "'261 Claim 1,"
         "'818 Claim 30," and "'493 Draft Claim 45" ...40
18
                          --oOo--
19

20

21

22

23

24

25
```

                                                    2

```
1               IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF MASSACHUSETTS

3  CYTOLOGIX CORPORATION,        )
                                 )
4            Plaintiff,          )
       vs.                       ) CIVIL ACTION NO.
5                                ) 04-11783 (RWZ)
   VENTANA MEDICAL SYSTEMS, INC. )
6                                )
                 Defendant.      )
7                                )

8          BE IT REMEMBERED that pursuant to Notice,

9  and on Thursday, April 20, 2006, commencing at 12:05

10 p.m. thereof, at Four Embarcadero Center, 10th

11 Floor, San Francisco, California, before me, CAROLYN

12 M. MANN, a Certified Shorthand Reporter, personally

13 appeared

14          GEOFFREY D. NUNBERG, Ph.D.,

15 called as a witness by the Plaintiff, who, having

16 been first duly sworn, was examined and testified as

17 follows:

18                  --oOo--

19          KIRKPATRICK & LOCKHART NICHOLSON GRAHAM,

20 State Street Financial Center, One Lincoln Street,

21 Boston, Massachusetts 02111-2950, represented by

22 MICHAEL E. ZELIGER and LARISSA S. BIFANO, Attorneys

23 at Law, appeared as counsel on behalf of the

24 Plaintiff (by video conference).

25          WILSON SONSINI GOODRICH & ROSATI, One
```

3

1    Market Street, Spear Tower, Suite 3300, San

2    Francisco, California 94105-1126, represented by

3    ROGER J. CHIN, M.D., Attorney at Law, appeared as

4    counsel on behalf of the Defendant.

5         ALSO PRESENT:  Stephanie Bonfield; John

6    Trengali (by video conference); Jake Krohn,

7    videographer.

8                        --oOo--

9              P R O C E E D I N G S

10        (Exhibits 1 through 5 were marked prior to

11             the start of the deposition.)

12        THE VIDEOGRAPHER:  Okay.  Here begins

13   videotape number one in the deposition of Professor

14   Geoffrey Nunberg in the matter of CytoLogix

15   Corporation vs. Ventana Medical Systems,

16   Incorporated in the United States District Court for

17   the District of Massachusetts, case number 04-11783

18   (RWZ).  Today's date is April 20th, 2006.  The time

19   on the video monitor is 12:06 p.m.  The video

20   operator today is Jake Krohn, a notary public

21   contracted by LegaLink Boston, Boston,

22   Massachusetts.  This video deposition is taking

23   place at Four Embarcadero, San Francisco,

24   California, and was noticed by Michael Zeliger of

25   Kirkpatrick & Lockhart.

                                              4

1          Counsel, please voice identify yourselves

2   and state whom you represent.

3          MR. ZELIGER:  This is Michael Zeliger of

4   Kirkpatrick & Lockhart Nicholson Graham on behalf of

5   the plaintiff, CytoLogix.  With me here in Boston

6   participating by video conference is Larissa Bifano.

7   And in San Francisco, also with Kirkpatrick &

8   Lockhart, is our paralegal, Stephanie Bonfield.  For

9   the moment we also have John Trengali, who is a

10  member of our IT department, who is also here in

11  Boston.

12         MR. CHIN:  Roger Chin of Wilson, Sonsini,

13  Goodrich and Rosati on behalf of defendant, Ventana

14  Medical Systems.

15         THE VIDEOGRAPHER:  Okay.  I guess, would

16  all others present please state your name for the

17  record.

18         THE WITNESS:  Geoffrey Nunberg.

19         THE VIDEOGRAPHER:  Sorry.  Stephanie?

20         MS. BONFIELD:  Stephanie Bonfield.

21         THE VIDEOGRAPHER:  All right.  Would the

22  reporter please swear in the witness.

23         (Whereupon, the Witness was sworn)

24         THE VIDEOGRAPHER:  Please begin.

25             EXAMINATION BY MR. ZELIGER

5

1    or responses to office actions.

2         A.    I worked with the attorney who prepared

3    the patents, and then subsequently worked with that

4    attorney when there was some question about -- there

5    were some issues of prior art that came up that we

6    responded to, and there was some question as to

7    bringing an infringement suit against somebody else

8    that we worked on for a while, and nothing ever

9    happened in that, in that.

10        Q.    Are you familiar with the phrase "one of

11   ordinary skill in the art"?

12        A.    I know the phrase, yes.

13        Q.    What does -- what's your understanding of

14   that phrase?

15        A.    I take it that it means what it says:  One

16   of ordinary skill in the art, a person who is of

17   ordinary skill in the art.

18        Q.    Who is one of ordinary skill in the art of

19   the '261 patent?

20        A.    I think it depends what part of the

21   language of the patent you're -- if we're talking

22   about ordinary skill in the art with regard to the

23   language of the patent, the language of the patent

24   rather than some other aspects of the patent, I take

25   it it depends on whether that language is particular

                                                        10

1   to the domain of mechanical engineering that would

2   be relevant to this particular invention, or merely

3   one who was a native speaker of, of, a competent

4   native speaker of the language that was spoken in

5   the community in which that patent was filed.

6       Q.   Prior to my asking you just now, have you

7   considered who one of ordinary skill is in the art

8   of the '261 patent?

9       A.   Can you clarify what you mean by have I

10  considered what -- I'm not sure I understand the

11  question.

12      Q.   Well, I asked you who one of ordinary

13  skill in the art of the '261 patent is, and you gave

14  me an answer that was somewhat equivocal.  So my

15  follow-up question is, have you thought about that

16  prior to me asking you today?

17      A.   Yes.

18      Q.   Do you consider yourself to be one of

19  ordinary skill in the art of the '261 patent?

20      A.   If by "the art of the '261 patent" you

21  mean the aspects of, let's say, mechanical

22  engineering that are relevant to the development of

23  this particular product, no.

24      Q.   Well, what do you consider to be the art

25  of the '261 patent?

                                            11

```
 1          A.   I'm not a mechanical engineer, so I simply
 2     would assume it has -- I'm not even aware of how the
 3     divisions of mechanical engineering are set up,
 4     whether medical device manufacturers --
 5          Q.   In forming your opinion . . .
 6          A.   You go ahead.
 7          Q.   In forming your opinions that appear in
 8     the declaration that you recently submitted, did you
 9     consider the level of ordinary skill in the art of
10     the '261 patent?
11          A.   Again, I have to know what you mean, did I
12     consider.  I don't understand the question.
13          Q.   Did you consider how one of ordinary skill
14     in the art of the '261 patent, how that person would
15     understand the terms in the claims?
16          A.   Yes.
17          Q.   How did you do that -- well, first of all,
18     if you've done that, then you must have some
19     understanding of who one of ordinary skill in the
20     art is, correct?
21               MR. CHIN:  Object to the form.
22               MR. ZELIGER:  Q.  You may answer.
23          A.   Yes.
24          Q.   And I'd like to know what your
25     understanding is of what, of who the person is who
```

12

1   has ordinary skill in the art in the '261 patent.

2        A.   I take it that this would be a person who

3   was a competent speaker of English, which is all of

4   the skill or knowledge that would be relevant to

5   determining the meanings of the basic English terms

6   and grammatical apparatus and pronouns and so forth

7   that were used in the, in the patent, as well as one

8   with sufficient specialized knowledge of the field

9   to understand such technical terms and terms of art

10  as are included in the patent.

11       Q.   Do you have the knowledge of the second

12  half of your answer; that is, the technical skills

13  necessary to understand terms of art that are used

14  in the '261 patent?

15       A.   No, I don't.

16       Q.   Do you understand, sir, that under U.S.

17  patent law, claims are to be interpreted according

18  to the understanding of one of skill in the relevant

19  art?

20       A.   Yes, I do.

21       Q.   If you lack those skills, how is it that

22  you are able to offer an opinion about the meaning

23  of the claim terms?

24       A.   As I said, one of ordinary skill in the

25  art includes, on the one hand, the specialized

1    knowledge necessary to understand terms of art and

2    technical terms as used in the patent; on the other

3    hand, knowledge of the rules of English and the

4    English constructions that are common to all arts

5    and, in fact, all literate English communities.  So

6    that to be one of ordinary skill in -- what one's

7    knowledge of, say, mechanical engineering is perhaps

8    relevant to the way in which one uses one or another

9    technical term of mechanical engineering.  It is not

10   relevant to the way one understands the pronoun

11   "it."

12       Q.  Given your background, which we

13   acknowledge is quite extensive and impressive, given

14   your background in linguistics, do you consider

15   yourself qualified to offer opinions on any patent

16   claims that are written in English, regardless of

17   the subject matter?

18           MR. CHIN:  Object to the form of the

19   question.

20           THE WITNESS:  That depends on what

21   particular aspect of the claim you're talking about.

22   As I say, if the claim involves -- if the question

23   about the claim involves the ordinary grammatical

24   apparatus of English and is in no wise specialized

25   with regard to a particular subfield of, of, of art,

                                            14

1    then yes.

2        MR. ZELIGER:  Q.  Without a background in

3    a particular specialized subfield, how do you know

4    whether you're confronting a term of art?

5        A.   There are some terms of art that are

6    manifestly terms of art and one either recognizes

7    instantly as terms of art, or as at least terms that

8    do not have their ordinary English uses.  There are

9    some terms of art that might be misleading to one

10   who was not adept in a particular field.  There are

11   other elements of language -- tenses, pronouns,

12   ordinary common verbs like "is" and "are" and, and

13   "be" and "move" and "touch" and so on -- whose use

14   is general for all forms and all registers of

15   English and which, because they denote very general

16   logical relations, can't, and are never -- can't be

17   and are never terms of art.

18       Q.   Do you have any experience with automated

19   slide staining equipment, either professional

20   experience or educational experience?

21       A.   No.

22       Q.   Do you have any such experience with

23   designing mechanical equipment?

24       A.   No.

25       Q.   Do you have any such experience with the

                                                    15

1    operation of laboratory instruments?

2        A.    No.

3        Q.    Do you have any such experience with

4    pathology?

5        A.    No.

6        Q.    Do you have any such experience with

7    cytology?

8        A.    No.

9        Q.    Do you have any experience working in a

10   laboratory?

11       A.    No.

12       Q.    Do you have any experience working with

13   reagents?

14       A.    No.

15       Q.    Do you have any experience with

16   slide-based cellular diagnostics?

17       A.    No.

18       Q.    In the process of forming your opinions

19   that appear in your declaration, did you consult

20   with anyone who has these experiences?

21       A.    No.

22       Q.    So in forming your opinion, you have not

23   consulted with anyone who is skilled in the

24   mechanical arts associated with the '261 patent?

25       A.    That's right.

1    Q.    And you lack those skills and experiences

2    yourself.

3    A.    That's right.

4    Q.    Are you familiar with the term "platform"?

5    A.    In a general way, yes.

6    Q.    What does "platform" mean to you?

7    MR. CHIN:  Object to the form.

8    THE WITNESS:  I wouldn't want to hazard a

9    definition offhand, but in the general sense of the

10   term, I'm familiar with it.

11   MR. ZELIGER:  Q.  Well, as I understand

12   your declaration, you've offered opinions about the

13   standard English understanding of certain terms.

14   A.    That's right.

15   Q.    Do you have an understanding of the

16   standard English understanding of the term

17   "platform"?

18   A.    I have an understanding of the standard

19   English understanding of the word "platform."  I

20   don't know that that understanding is relevant to

21   the use of "platform" in the patent.

22   Q.    Were your opinions where you've discussed

23   the standard written, or the standard English

24   understanding of certain terms done in the context

25   of the patent?

                                                    17

1       A.   Can you either repeat or elaborate that?

2       Q.   Well, let's do it a different way.

3            What is your understanding of the term

4    "platform"?

5            MR. CHIN:  Object to the form.

6            THE WITNESS:  Again, I'd want to -- I

7    don't want to offer a definition offhand, but I

8    understand the general meaning of the English word

9    "platform" as, which, which, which may in turn have

10   more specific or specialized uses relevant to

11   various arts or, or, or fields of science or fields

12   of trade with which I'm not specifically familiar.

13           MR. ZELIGER:  Q.  Are you able to answer

14   my question, which is, what is your understanding of

15   the term "platform"?

16           MR. CHIN:  Objection.  That's been asked

17   and answered.

18           THE WITNESS:  In this document or in

19   general?

20           MR. ZELIGER:  Q.  According to standard

21   English.

22       A.   Off the top of my head and without

23   consulting dictionaries, which is a procedure I

24   don't like to do, I would say it denotes a raised

25   surface on which objects are supported or arrayed.

                                                    18

```
 1      Q.   According to that definition, does a

 2   platform have to be round?

 3           MR. CHIN:  Object to the form.

 4           THE WITNESS:  No.

 5           MR. ZELIGER:  Q.  According to that

 6   definition, does a platform have to be a rotary

 7   carousel?

 8      A.   No.

 9      Q.   I'd like to direct your attention to the

10   phrase that appears in your declaration.  Actually,

11   let's, let's mark it as an exhibit so that we're not

12   speaking purely in theoretical terms.

13           Stephanie, would you please hand to the

14   court reporter the original Exhibit No. 5.  If it's

15   already been premarked, then you may simply hand it

16   to the witness.  If the court reporter has not yet

17   initialled it, please hand it to the court reporter.

18           THE REPORTER:  This is Carolyn, the court

19   reporter.  We did pre-mark all the exhibits prior to

20   the deposition.

21           MR. ZELIGER:  Very well.  Thank you.

22           So please just hand Professor Nunberg the

23   original Exhibit 5 and a copy to Mr. Chin.

24           MR. CHIN:  Did you want the declaration?

25   I think that's number 1.
```

                                                  19

1    relevant art.

2              MR. ZELIGER:  What I'd like to do now is

3    take a short break.  And Stephanie, I will e-mail to

4    you three exhibits.  They're each one page, they're

5    very short, and if you have a chance to just print

6    out --

7              MS. BONFIELD:  All right.

8              MR. ZELIGER:  -- two copies, an original

9    and a copy, we can reconvene in about 10 minutes.

10             And I can assure you both we won't go very

11   long today.  I'd be surprised if I have more than an

12   additional hour worth of questioning.

13             THE WITNESS:  Great.

14             MR. ZELIGER:  Thank you.

15             THE VIDEOGRAPHER:  Off the record at

16   12:43.

17             (Whereupon, a recess was taken and

18             Deposition Exhibits 8, 9, and 10 were

19             marked for identification.)

20             THE VIDEOGRAPHER:  We are back on the

21   record at 12:58, and this is the beginning of tape

22   number two.

23             MR. ZELIGER:  Please hand to Professor

24   Nunberg Exhibit 8, and a copy to Mr. Chin.

25        Q.   Professor Nunberg, you have in front of

                                                      30

1    you marked as Exhibit 8 a page with some text on it.

2    Would you please read the text aloud for the record.

3        A.    "Moving the probe and the probe dispense

4    station relative to one another."

5        Q.    Under standard English interpretation,

6    what does this phrase mean?

7            MR. CHIN:  Object to form.

8            THE WITNESS:  I'm going to assume here

9    that this is used in a larger syntactic frame

10   analogous to that of the phrase in question in the

11   claim in the patent?  That is to say --

12           MR. ZELIGER:  Q.  You assume correctly.

13       A.    -- that it follows "a method of"?

14       Q.    Indeed.

15       A.    Okay.  Then the phrase denotes an act of

16   moving two things, a probe and a probe dispense

17   station, such that their relative positions are at

18   some point changed.

19       Q.    Much like the language that's at issue in

20   your declaration, correct?

21       A.    Yes.

22       Q.    So in your view, the language on Exhibit 8

23   would require both the probe and the probe dispense

24   station to be in motion; is that correct?

25           MR. CHIN:  Object to form.

LegaLink San Francisco  (415) 357-4300

1          THE WITNESS:  Yes, at a minimum.

2          MR. ZELIGER:  Please hand Professor

3    Nunberg Exhibit No. 9 and hand a copy to Mr. Chin.

4        Q.    Professor Nunberg, you now have before you

5    what's been marked as Exhibit No. 9, another

6    document that has a phrase written on it.  Would you

7    please read the phrase aloud for purposes of the

8    record.

9        A.    "Said nozzle support and said slide

10   support moving relative to one another," of "one

11   another other."

12         MR. CHIN:  Is there a typo here, Mike?

13         MR. ZELIGER:  There is.

14       Q.    Please strike the last "other."  Actually,

15   take a pen and strike the last "other."  Thank you.

16       A.    Okay.

17       Q.    According to standard written English,

18   when interpreting this phrase is it your opinion

19   that both the slide support and the nozzle support

20   move?

21       A.    Yes.  Assuming, again, the larger context,

22   that this is a, a gerund -- I don't know what the

23   syntactic context is in which -- this is a phrase,

24   this is a, so to speak, a sentence fragment, but

25   yes, one would assume that in whatever way it's

                                        32

```
 1   construed, there has to be motion of both the nozzle

 2   support and slide support.

 3        Q.   Go back to Exhibit 8, please.

 4        A.   Eight being the probe and probe dispense

 5   station?

 6        Q.   Yes, that's correct.  Did Ventana or its

 7   counsel inform you that they have issued patent

 8   claims that contain this text?

 9        A.   No.

10        Q.   Did Ventana or its counsel inform you that

11   the patent that has this claim text in it discloses

12   as its only embodiment an instrument where the probe

13   dispense station is stationary?

14             MR. CHIN:  Object to the form.

15             THE WITNESS:  No.

16             MR. ZELIGER:  Q.  Please turn to

17   Exhibit 9.  Did Ventana --

18        A.   Nozzle support.

19        Q.   -- or its counsel disclose to you as

20   pending patent applications that contain claims with

21   this language?

22             (Reporter interruption)

23             MR. ZELIGER:  Q.  Did Ventana or its

24   counsel inform you that Ventana has a pending patent

25   application with a claim that contains this
```

                                                        33

1    language?

2        A.    No.

3        Q.    Did Ventana or its patent counsel inform

4    you that that application has as its only embodiment

5    an instrument with a stationary slide support?

6        A.    No.

7             MR. ZELIGER:  Please hand to Professor

8    Nunberg Exhibit No. 7, with a copy to Mr. Chin.

9    Excuse me, I'm sorry, not 7, but rather 2,

10   Exhibit No. 2.

11       Q.    You've been handed what's marked as

12   Nunberg Exhibit No. 2.  I'll ask you to identify

13   this document for the record, please.

14       A.    This is U.S. Patent Richards, et al.

15       Q.    What is the patent number, sir?

16       A.    6,537,818.

17       Q.    And on the left-hand column, you'll see

18   next to the number 73 it says "Assignee."  Who is

19   identified as the assignee?

20       A.    Ventana Medical Systems.

21       Q.    Please turn to claim 30, which appears in

22   column 16 of Exhibit No. 2.

23       A.    I'm sorry.  Claim 30 . . .

24       Q.    Is in column 16.

25       A.    Which is on -- oh, I see.  The columns are

                                                    34

1   numbered.  Yeah.

2       Q.   Take a moment to read claim 30.

3       A.   Okay.

4       Q.   Are you familiar with the term

5   "embodiment"?

6       A.   Yes.

7       Q.   As that's used in patent law?

8       A.   Yes.

9       Q.   Do you understand, sir --

10      A.   I'm not --

11      Q.   -- that claims are not to be construed to

12  exclude an embodiment disclosed in the patent?

13      A.   Can you repeat the, the question?

14      Q.   Do you understand, sir, that claims are to

15  be construed so as not to exclude the disclosed

16  embodiments?

17           MR. CHIN:  Object to the form of the

18  question.

19           MR. ZELIGER:  Q.  Do you understand what

20  I --

21      A.   Yes.

22      Q.   -- say, what I mean when I say that?

23      A.   Yes, yes.

24      Q.   I'm sorry.  I couldn't hear your response.

25      A.   Yes.

                                              35

1       Q.   The '818 patent, which has been marked as

2    Exhibit 2, discloses as its only embodiments an

3    instrument in which the probe dispense station is

4    stationary.  That's inconsistent with your

5    interpretation of the language in claim 30, is it

6    not?

7            MR. CHIN:  Object to the form of the

8    question.

9            THE WITNESS:  If, as you say, the

10   embodiment offered for this patent is one in which

11   the disengagement of the lower surface of the probe

12   from the portion of the upper surface of the probe

13   dispense station does not, in fact, involve moving

14   both the probe and the probe dispense station, then

15   yes, in answer to your question.

16           MR. ZELIGER:  Q.  Does that change your

17   view about how one of ordinary skill in the art

18   might understand this, the claim language in claim

19   30?

20           MR. CHIN:  Object to the form.

21           THE WITNESS:  No.

22           MR. ZELIGER:  Q.  So you just think that

23   it's wrong?

24           MR. CHIN:  Object to the form.  Assumes

25   facts.

```
 1            THE WITNESS:  Again, I don't -- I haven't

 2    looked at this patent and have, certainly have no

 3    knowledge of the embodiment, short of what you

 4    represented it as being, but if it is as you say,

 5    and as I suggested in my answer to the previous

 6    question, then it is misdescribed by claim 30.

 7            MR. ZELIGER:  Please hand Professor

 8    Nunberg Exhibit 3, with a copy to Mr. Chin.

 9        Q.   Would you please identify for the record

10    what Exhibit 3 is.

11        A.   Exhibit 3 is a patent application,

12    publication, the number US 2003/0203493 A1, the pub

13    date October 30th, 2003, and the assignee Ventana

14    Medical Systems.

15        Q.   What is the title of this patent

16    application that's shown next to the number 54?

17        A.   "Automatic" -- sorry.  "Automated

18    Molecular Pathology Apparatus Having Fixed Slide

19    Platforms."

20        Q.   Please turn to draft claim 45, which

21    appears on the last page of the exhibit.  And in

22    particular -- you're welcome to read the entire

23    claim or anything else that you deem necessary, but

24    I would like to draw your attention to subpart (c)

25    in claim 45 and ask you to read that aloud for the
```

1    record, please.

2         A.    "A nozzle support having nozzles for

3    applying liquids, said nozzle support and said slide

4    support moving relative to one another such that the

5    nozzles may apply liquids to the slides."

6         Q.    Now, do you recall the title of this

7    patent application is "Automated Molecular Pathology

8    Apparatus Having Fixed Slide Platforms"?

9         A.    Yes.

10        Q.    I will represent to you, and there should

11   be little doubt, based on the title, that the

12   embodiments disclosed in this patent application

13   only disclose a slide support mechanism that is

14   stationary.

15             MR. CHIN:  Object to form.

16             THE WITNESS:  The question is?

17             MR. ZELIGER:  Q.  The question is, does

18   the claim, according to your interpretation, cover

19   that embodiment?

20             MR. CHIN:  Object to form.

21             THE WITNESS:  I'm not in a position to say

22   what the relation in this invention is of the fixed

23   slide platforms and the nozzle supports and slide

24   supports mentioned in claim (c).  So I can't really

25   speak to the relationship of this to the embodiment.

1          No sound.

2          MR. ZELIGER:  Sorry about that.  I hit the

3    wrong button.

4          Q.   I'm not asking you to do that.  I'm asking

5    you to accept my representation that in this, in the

6    embodiments disclosed in this patent application,

7    the slide supports are stationary.  And based on

8    that representation, I'm asking you whether the

9    claims, as you understand them, would cover such an

10   embodiment.

11         MR. CHIN:  Object to form.

12         THE WITNESS:  Claim (c) applies to a

13   nozzle support and said slide support, which is a

14   slide support mentioned in (a) of claim 45.  And on

15   the assumption that what you've represented about

16   the embodiment is that those two things, the nozzle

17   support and the slide support, are both stationary,

18   did you say, or . . .

19         MR. ZELIGER:  Q.  No, the slide support is

20   stationary.  The slide support alone is stationary.

21         A.   Then if that's the case, that embodiment

22   would be misdescribed by 44, 45(c).

23         Q.   Are you aware, sir, that this patent

24   application covers, intended to cover the device

25   that's been accused of infringement in this case?

```
 1            MR. CHIN:  Object to the form.

 2            THE WITNESS:  No.

 3            MR. ZELIGER:  Q.  Does the fact that

 4   Ventana's own patent application describing a

 5   stationary thing as being moving relative to

 6   something else that is moving change your opinion in

 7   any way?

 8       A.   No.

 9            MR. CHIN:  Object to form.

10            MR. ZELIGER:  Q.  So you think it's wrong?

11            MR. CHIN:  Object to form.

12            THE WITNESS:  I'll repeat what I said

13   before.  I think it misdescribes the embodiment that

14   you've described, if the embodiment is as you

15   described it.

16            MR. ZELIGER:  Stephanie, would you please

17   hand to Professor Nunberg Exhibit 10, with a copy to

18   Mr. Chin.

19       Q.   Professor Nunberg, what -- we've handed

20   you a copy of Exhibit 10.  And I'll represent to

21   you, but you may confirm, if you like, that this

22   table shows the claim language of the three

23   different phrases that we've been considering;

24   namely, a portion of claim 1 of the '261 patent, a

25   portion of claim 30 of the '818 patent, and a
```

                                                    40

1    portion of draft claim 45 of the '493 patent

2    application.  Do you see that?

3         A.   Yes.  Let me just add that, on this one as

4    well, I'm going to strike the second "other" from

5    the '493 claim.

6         Q.   I appreciate that.  I'm doing the same on

7    my copy.  Thank you.

8              We've been through this, but I just want

9    to make sure I understand your testimony.  It's your

10   opinion that in each of these three boxes, the two

11   structures that are described as being relative to

12   each other must each move.

13             MR. CHIN:  Could I have the question back?

14             MR. ZELIGER:  Let me try a better one.

15        Q.   In Exhibit 10, three, portions of three

16   claims or three claimed, or three draft claims are

17   included.  My question to you, sir, is is it your

18   opinion that in each of these, the two structures

19   identified must move?

20        A.   Yes.

21        Q.   Does the fact that there are now three

22   different claims, or patent claims, patents or

23   patent applications suggest to you that according to

24   one of ordinary skill in the art, this language

25   could describe a situation where one of the two

                                                      41

1    objects is stationary?

2         A.    No.

3         Q.    If I showed you 10 more patents that had

4    this same construct, would that change your view?

5              MR. CHIN:  Object to form.

6              THE WITNESS:  Probably not.

7              MR. ZELIGER:  Q.  If I showed you 100 more

8    patents that were worded in this way and disclosed

9    embodiments where only one of the two objects moves,

10   would that change your view?

11             MR. CHIN:  Object to form.  Calls for

12   speculation and assumes facts.

13             THE WITNESS:  Probably not.

14             MR. ZELIGER:  Q.  Is there any number of

15   patents that would disclose such a construct that

16   would change your opinion?

17             MR. CHIN:  Same objections.

18   Argumentative.

19             THE WITNESS:  Probably if it were

20   uniformly or near uniformly the case that this

21   construction was used in mechanical engineering

22   patents only to denote cases of this type,

23   embodiments of this type.

24             MR. ZELIGER:  Q.  Have you consulted any

25   mechanical engineering patents to determine whether

                                                    42

1          A.    If one takes the axis of the earth as, as,

2    as fixed, as a fixed point, yes.

3          Q.    Well, regardless of whether one takes that

4    as a fixed point, it's true that the building is

5    revolving around it; isn't that true?

6          A.    This is exceeding my high school physics,

7    but if you plot, if you plot the point of the

8    building, motion the plot of the point of the

9    building in space as the axis is moving, I don't

10   know what you get.  You'd probably get a -- I'm not

11   sure what the name of that curve is, but I don't

12   know if I'd describe it as rotation, since the

13   building never returns to its original position.

14   But this is speculative high school physics, a

15   discipline which I hadn't mastered even a year, a

16   month after dropping the course or whatever.

17         Q.    But you'll agree with me that the building

18   is moving relative to the axis of the earth,

19   correct?

20         A.    Yes.

21         Q.    And the building is moving relative to the

22   sun.

23         A.    Yes.

24         Q.    But when we say, "The elevator is moving"

25   and we don't provide any other language, our

1    it, it may not be relevant to talking about objects

2    at a subatomic level or to the objects with which

3    cosmologists concern themselves, but anything,

4    pretty much anything between those two, two levels

5    is going to be governed by, by the same principles.

6         Q.   If we go back to the language that's at

7    issue in the, claim 1 of the '261 patent.  And you

8    can look at the patent, or if you prefer, why don't

9    you take a look at Exhibit 10, which is the chart

10   that has the different terms.  And claim 1 of

11   the '261 is excerpted in the first box.  Do you see

12   that?

13        A.   Yes.

14        Q.   If we strike -- I'm not asking you to do

15   this, I don't want you to mark on the exhibit, but

16   assume for a moment that we strike the last line of

17   text in that box relative to each other.

18        A.   Yes.

19        Q.   How does that change your view of what

20   this claim means?

21             MR. CHIN:  Object to form.

22             THE WITNESS:  It would continue to entail

23   that the method was one that involved moving the

24   platform and one that involved moving the liquid

25   dispenser, but would no longer entail that either at

                                                    54

1   some point during the motion or at the end point of

2   the motion those two were in different relative

3   positions from one another.

4          MR. ZELIGER:  Q.  It would not require

5   that they be in different positions at some point;

6   is that correct?

7          A.   Right.  So if they were moved -- I'm

8   doing -- if they were moved together, such that

9   their relative positions did not change at any point

10  during the motion or at the end point of the motion,

11  then it would be true that one had moved the

12  platform and the liquid dispenser but presumably

13  false that one had moved the platform and the liquid

14  dispenser relative to each other.

15         Q.   But it would not preclude a situation

16  where each is moving and they wind up in different

17  positions.

18         A.   No.  It, it, it would leave it neutral as

19  to whether their ultimate relative positions changed

20  either at some point during the motion or at the

21  end, at the end of the motion.

22         Q.   As part of your analysis in this case, did

23  you consult a physics book for examples of how

24  relative motion is described?

25         A.   No.

1          MR. ZELIGER:  Q.  So the precedent is "a

2     platform," not "a moving platform," correct?

3          A.    The antecedent, you mean.

4          Q.    Antecedent, excuse me.

5          A.    The original antecedent, yes, is "a

6     platform," which is -- occurs again as the object of

7     the verb "move" in the inserted part of claim 6, and

8     then is further referred to as "the platform" in the

9     last clause of claim 6, and then as specified in

10     claim 8 as "a moving platform capable of indexing

11     slides," et cetera.

12          Q.    If the -- why add "platform is a" --

13          (Reporter interruption)

14          MR. ZELIGER:  Q.  Why add the language

15     "platform is a" to claim 8?  What does that add?

16          MR. CHIN:  Object to the form of the

17     question.

18          THE WITNESS:  As I say, all it does is

19     change what was a presupposition -- that the

20     platform is capable of moving -- to an assertion

21     that the platform is, among other things, a platform

22     capable of moving.  There's a difference of focus or

23     emphasis, as linguists might describe it.

24          MR. ZELIGER:  Q.  Is it superfluous, in

25     your view?

                                          64

1           MR. CHIN:  Object to form.

2           THE WITNESS:  It does not alter the truth

3   conditions of the claim, in linguistic terms.  That

4   is to say, it's not conceivable that there should be

5   a state of affairs in which claim A is true under

6   one wording and false under the other.

7           MR. ZELIGER:  Q.  So it has no impact on

8   the claim scope?

9       A.   That's right.

10      Q.   Is it a more plausible explanation that

11  the applicant struck the word "moving" from claim 6

12  to indicate that the platform need not move in

13  claim 6, and then in claim 8 explained under certain

14  circumstances the platform is a moving platform?

15          MR. CHIN:  Can I have that question back,

16  please.

17          (Record read by the reporter)

18          MR. CHIN:  Object to the form of the

19  question.  It's vague, compound, and confusing.

20          THE WITNESS:  Yeah, I simply can't speak

21  to what the applicant's intentions might have been

22  or what the applicant's apprehensions as to the

23  meaning of these various phrases may have been.  I

24  can only speak to the way the phrases would be

25  interpreted by a linguistically competent neutral

                                                65

1      A.   Let me just stipulate -- I don't recall

2   how I used it, but let me just say that we may speak

3   of relative motion as motion of at least two objects

4   such that at some point during the course of the

5   motion or at the termination of the motion, the

6   relative position of the two objects is different

7   from what it was at the beginning of the motion.  Is

8   that fair?

9      Q.   Is it your opinion that for there to be

10  relative motion between two objects, both objects

11  must move?

12          MR. CHIN:  Object to form.

13          THE WITNESS:  I don't know.  Let me think.

14          MR. ZELIGER:  Q.  Well, let me give you an

15  example.  I'm sorry.  Did you have additional, an

16  additional answer?

17      A.   No.  Go ahead with the example you have in

18  mind.

19      Q.   I gather you lecture from time to time

20  from a lectern?

21      A.   Yes.

22      Q.   I want you to envision that you're

23  standing in front of a classroom at a lectern.

24      A.   Yes?

25      Q.   And behind you, the wall moves from left

                                              73

1   to right while your lectern removes bolted to the

2   floor.

3          A.   A more reasonable assumption in this part

4   of the world than yours, yes.

5          Q.   So while the wall is moving, is the wall

6   moving relative to you?

7          A.   So there's an earthquake, the wall moves,

8   the lectern is bolted to the floor and for some

9   reason isn't moving.  I'm standing at the lectern.

10  Yes, the wall is moving relative to me.

11         Q.   I'm going to take the earthquake, the

12  complexity of the earthquake out of it.  I want you

13  to assume that the wall is like a retractable wall.

14         A.   Okay.

15         Q.   So imagine now that the wall is moving;

16  the lectern remains bolted to the floor.  Is the

17  wall moving relative to you?

18         A.   So it's -- the wall is moving to the side

19  or . . .

20         Q.   Yes, from left to right.

21         A.   I guess I would say it was, yes.

22         Q.   Are you moving relative to the wall at

23  that point?

24         A.   No.

25         Q.   Now I'm going to change the hypothetical a

                                                    74

1    little bit and say that the wall remains stationary

2    but now your lectern is mounted on wheels.  And

3    during your lecture, the lectern moves from left to

4    right.  During that motion, are you moving relative

5    to the wall?

6         A.   And I'm tracking the lectern and the

7    lectern is dragging me along with it or something?

8         Q.   You're standing on a platform in front of

9    the lectern.  The platform and lectern are moving

10   together from left to right.

11        A.   Yes, then I'm moving relative to the wall.

12        Q.   Is the wall moving relative to you?

13        A.   No.

14        Q.   Isn't it true that all motion is relative?

15             MR. CHIN:  Object to form.  Vague.

16             THE WITNESS:  I simply don't know what you

17   mean by that.  I can imagine 18 things you might

18   mean, so you'll have to be more specific.

19             MR. ZELIGER:  Q.  Isn't it true that in

20   both cases that I've described to you -- namely,

21   where in one instance the lectern moves, in the

22   other instance the wall moves -- in both cases, you

23   are moving relative to the wall and the wall is

24   moving relative to you?

25             MR. CHIN:  Could I have that question

                                               75

1    back, please.

2         MR. ZELIGER:  Q.  I'll repeat it.  Isn't

3    it true in both cases you are moving relative to the

4    wall and the wall is moving relative to you?

5         MR. CHIN:  Object.  That's been asked and

6    answered, and that's also compound.

7         THE WITNESS:  No.

8         MR. ZELIGER:  Q.  If standard lectures on

9    basic physics said the opposite, would that change

10   your view or your opinions in this case?

11        A.   Not with regard to the ordinary English

12   meaning of those sentences that we've been

13   discussing, no.

14        Q.   How about with regard to how relative

15   motion would be understood by a mechanical engineer?

16        A.   Again, no.  It would have no effect.

17        Q.   And you say that without knowing how a

18   mechanical engineer understands those terms; isn't

19   that correct?

20        MR. CHIN:  Object to form.

21        THE WITNESS:  I assume that when a

22   mechanical engineer writes a patent, some of the

23   language that he or she uses involves terms of art

24   that are specific to mechanical engineering, but

25   that when the mechanical engineer uses an "S" to

                                                    76

1    form the third person present form of a verb or uses

2    the word "the" to denote something to which earlier

3    reference is being made, or uses the pronoun,

4    pronominal "each other" to indicate a reciprocal

5    relation, that he or she is speaking or writing not

6    in his or her capacity as a mechanical engineer but

7    in his or her capacity as a graduate of kindergarten

8    in the English-speaking world.

9        MR. ZELIGER:  Q.  And in your view,

10   anybody who's graduated from kindergarten would

11   understand that in the phrase "moving the platform

12   in a liquid dispenser relative to each other"

13   requires both the platform and the liquid dispenser

14   to move?

15       A.   Inasmuch as "relative to," unlike "and"

16   and "each other" is not something most people have

17   mastered by the time they're out of kindergarten,

18   let me take it up to seventh or eighth grade and

19   then say yes.

20       Q.   Professor Nunberg, did you discuss your

21   testimony today with Mr. Chin during the previous

22   break?

23       A.   Yes.

24       Q.   What did you discuss?

25       A.   I asked him if he was aware of the Ventana

```
 1   you again, Professor Nunberg.  We appreciate your

 2   patience.

 3             THE WITNESS:  Thank you very much.

 4             THE VIDEOGRAPHER:  Okay.  Here marks the

 5   end of videotape number three in the deposition of

 6   Professor Geoffrey Nunberg.  The original videotapes

 7   will be retained by LegaLink Boston, 210 South

 8   Street, 11th floor, Boston, Massachusetts.  Going

 9   off the record, the time is 2:42.

10             (Whereupon, the deposition was

11             adjourned at 2:42 p.m.)

12                        --oOo--

13             I declare under penalty of perjury that

14   the foregoing is true and correct.  Subscribed at

15   _____, California, this _____ day of

16   _____, 2006.

17

18

19                              _____

20                              GEOFFREY D. NUNBERG

21

22

23

24

25
```

```
 1              CERTIFICATE OF REPORTER

 2              I, CAROLYN M. MANN, a Certified Shorthand

 3    Reporter, hereby certify that the witness in the

 4    foregoing deposition was by me duly sworn to tell

 5    the truth, the whole truth, and nothing but the

 6    truth in the within-entitled cause;

 7              That said deposition was taken down in

 8    shorthand by me, a disinterested person, at the time

 9    and place herein stated, and that the testimony of

10    the said witness was thereafter reduced to

11    typewriting, by computer, under my direction and

12    supervision;

13              That before completion of the deposition,

14    review of the transcript [X ]was  [ ]was not

15    requested.  If requested, any changes made by the

16    deponent (and provided to the reporter) during the

17    period allowed are appended hereto.

18              I further certify that I am not of counsel

19    or attorney for either or any of the parties to the

20    said deposition, nor in any way interested in the

21    event of this cause, and that I am not related to

22    any of the parties thereto.

23              DATED:_____, 2006

24              _____

25              CAROLYN M. MANN, CSR 10066
```

```
 1                              April 25, 2006

 2   Geoffrey D. Nunberg, Ph.D.
     370 Fair Oaks St.
 3   San Francisco, CA  94110

 4   Re:  CytoLogix vs. Ventana Medical Systems

 5   Dear Dr. Nunberg:

 6            Please be advised that the original
     transcript of your deposition taken April 20, 2006,
 7   in the above-entitled matter is available for
     reading and signing.  The original transcript will
 8   be held at the offices of:

 9            LegaLink San Francisco
              575 Market Street, 11th Floor
10            San Francisco, California 94105
              (415) 357-4300
11
     for thirty (30) days, in accordance with Federal
12   Rules of Civil Procedure Section 30(e).  If you do
     not sign your deposition within 30 days, it may be
13   used as fully as though signed.

14            If you are represented by counsel in this
     matter, you may wish to ask your attorney how to
15   proceed.  If you are not represented by counsel and
     wish to review your transcript, please contact our
16   office for a mutually convenient appointment to
     review your deposition.
17
              Thank you for your cooperation.
18

19                    Sincerely,

20

21                    Carolyn M. Mann, CSR 10066

22   cc:      Original transcript
              Michael E. Zeliger, Attorney at Law
23            Roger J. Chin, M.D., Attorney at Law

24

25
```