# Exhibit F



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYTOLOGIX CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>VENTANA MEDICAL SYSTEMS, INC.,<br><br>Defendant. | CIVIL ACTION<br>NO. 00-12231-RWZ<br>NO. 01-10178-RWZ |

FILED IN CLERK'S OFFICE
2003 DEC 10 P 3:02
U.S. DISTRICT COURT
DISTRICT OF MASS.

## Ventana's Proposed Jury Instructions and Verdict Form

Ventana's proposed verdict forms are attached as Exhibit A.

Ventana's proposed jury instructions are attached as Exhibit B.

CytoLogix has not submitted any evidence or argument concerning infringement under the doctrine of equivalents, and Ventana has filed a motion to preclude CytoLogix from arguing infringement under the doctrine of equivalents as a result of prosecution history estoppel. In the event the Court chooses to submit the case to the jury with any instructions about the doctrine of equivalents, Ventana will propose the jury instructions attached as Exhibit C.



RECEIVED DEC 10 2003 Willcox, Pirozzolo & McCarthy

December 10, 2003

Respectfully submitted,

*/s/ Gregory T. Arnold*

Gregory T. Arnold
BROWN RUDNICK BERLACK
ISRAELS, LLP
One Financial Center
Boston, MA 02111
Phone: (617) 856-8200
Fax: (617) 856-8201

Philip S. Beck
Sean W. Gallagher
Brian C. Swanson
BARTLIT BECK HERMAN PALENCHAR
 & SCOTT
Courthouse Place
54 West Hubbard Street – Suite 300
Chicago, IL 60610
Phone: (312) 494-440
Fax: (312) 494-4440

Attorneys for Ventana Medical
 Systems, Inc.

# DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 3
## PATENT CLAIM INTERPRETATION

Ventana and CytoLogix dispute the meaning of various terms in the claims of the '061 and '693 patents. I will now instruct you on the meaning of terms used in the claims of CytoLogix' patents. Where I provide an interpretation of a claim element, you should apply the interpretation that I am providing to you. Where I do not provide an interpretation of a term used in the claims, you are instructed to apply the ordinary and customary meaning of that term.

The claims of the '693 patent use the following terms and expressions, which I will interpret for you:

1. "Random access"

    Random access means, in the context of CytoLogix' patent claims, the ability to apply any reagent to any slide in any order.

2. "User interface"

    User interface means that portion of a general purpose computer having the ability to receive and interpret user inputs. The user interface serves as the host computer for performing functions such as the "comparator" function for comparing a set point temperature with actual temperatures for purposes of temperature control.

3. "Temperature controller" and "temperature controller electronic circuit"

    The term "temperature controller" is used to mean different things in different contexts. For purposes of the claims of CytoLogix' patents, the term "temperature controller" means a switch that directly controls the flow of electrical power to a heater.

    A "temperature controller electronic circuit" is this temperature controller and related electronics that form a physically discrete electronic circuit.

    The "temperature controller" as that term is used in the CytoLogix patent claims does not include the "comparator" function.

4. "In communication with"

    The term "in communication with," as used for example in claiming a user interface "in communication with" a temperature controller, means ongoing, back and forth communication.

5. "Communicating data to regulate the electrical power"

>The term "communicating data to regulate the electrical power" means to send an on/off signal to the temperature controller, telling the temperature controller to increase or decrease the flow of electric power to a heater to turn the heater on or off. In this context, "data to regulate the electrical power" means the signal that tells the temperature controller to turn the heater on or off, not the set point temperature information that is used by the host computer or user interface to perform the function of comparing the set point temperature with the actual temperature (called the "comparator" function).

6. "Data communication link"

>A "data communication link" as that term is used in the '693 patent means a direct line of communication between devices. A data communication link does not change data that passes over it. The data may be compressed or encoded, for example to allow "multiplexing," but the same data that enters the "communication link" arrives at the other end.

Claim 13 of CytoLogix' '693 patent is written in a special format called a "means plus function" claim. This means that the elements of the claim are written in terms of the "means" for achieving a particular "function." The claim therefore requires "heating means," "temperature controller means," and "user interface means."

In order for there to be infringement of this "means plus function" claim, the accused Ventana product must have a structure that performs the identical function as the "means" identified in each element of the claim. You are further instructed to interpret these "means" to be the structures specifically disclosed in the '693 patent for achieving these functions, and equivalent structures that existed in 1998 when CytoLogix filed its patent application:

1. "Heating means"

   The "heating means" disclosed in the '693 patent is a resistive heating element.

2. "Temperature controller means"

   The "temperature controller means" disclosed in the '693 patent is a switch that directly controls the flow of electrical power to a heater.

   This "temperature controller means" is the same as the "temperature controller" I have already defined for you in the context of CytoLogix' other patent claims. It does not include the comparator function.

3. "User interface means"

   The "user interface means" disclosed in the '693 patent means a general purpose computer having the ability to receive and interpret user inputs, and to serve as the host computer for performing functions such as the "comparator" function for comparing a set point temperature with actual temperatures for purposes of temperature control.

4. "Communicating data to regulate the electrical power"

   Claim 13 also requires a "user interface means . . . communicating data to regulate the electrical power to the heating means." You are instructed to interpret the term "communication data to regulate the electrical power" to mean the same thing in claim 13 as it means in claim 1 and claim 8. In this context, "data to regulate the electrical power" means the signal that tells the temperature controller to turn the heater on or off.

The '061 patent uses the following terms and expressions which I will interpret for you:

1. "Random access"

   Random access means, in the context of CytoLogix' patent claims, the ability to apply any reagent to any slide in any order.

2. "Heating station"

   In the context of the '061 patent, a "heating station" means a separate and distinct portion of the moving platform, characterized by a separate electrical power connection and separate electronic control. A heating station may be used to support only a single microscope slide, but it is designed to hold and heat a number of slides on a number of slide positions.

   A "heating station" does not mean an individual slide heating position.

   Claim 1 of the '061 patent requires a "plurality of heating stations," meaning more than one heating station, on the moving platform.

3.   "Electronic control for heating"

The '061 patent does not disclose the use of individual slide heating; therefore the claims of the patent cannot be interpreted to cover individual slide heating. The term "electronic control for heating" used in the claims of the '061 patent means common or group control of the electrical power to a number of slide positions on a heating station.

4.   "First and second heating elements" having "separate electrical power connections"

The '061 patent describes heating elements that are located on the moving platform. Each heating "element" is associated with a group of slide positions. The heating element for each group of slide positions has a separate connection to a source of electrical power located off the moving platform.

The term "first and second heating elements" means two heating elements that are physically distinct from each other.

The term "separate electrical power connections" for these first and second heating elements means separate connections running from each distinct heating element to a source of electrical power located off the moving platform.

**SUPPORT**: '061 patent and prosecution history; '693 patent and prosecution history; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-85 (Fed. Cir. 1996); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998); *Transmatic, Inc. v. Gulton Indus.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 989 (Fed. Cir. 1988); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995); *Pall Corp. v. PTI Techs., Inc.*, 259 F.3d 1383, 1393 (Fed. Cir. 2001), vacated on other grounds by *PTI Techs., Inc. v. Pall Corp.*, 122 S. Ct. 2324 (2002); 35 U.S.C. § 112(6); *Laitram v. Rexnord*, 939 F.2d 1533, 1536 (Fed. Cir. 1991); *Pennwalt Corp. v. Durand-Wayland*, 833 F.2d 931, 934 (Fed. Cir. 1987); *Alpex Computer Corporation v. Nintendo Company, Ltd.*, 102 F.3d 1214, 1222-23 (Fed. Cir. 1996).