# EXHIBIT A

# United States Court of Appeals for the Federal Circuit

2006-1012, -1081

IPVENTURE, INC.,

                                            Plaintiff-Appellant,

v.

PROSTAR COMPUTER, INC. and MIDERN COMPUTER, INC.,

                                            Defendants-Cross Appellants.

      Richard M. Birnholz, Irell & Manella LLP, of Los Angeles, California, argued for plaintiff-appellant.  With him on the brief were Morgan Chu and Rudy Y. Kim.

      Ian N. Feinberg, Mayer Brown LLP, of Palo Alto, California, argued for defendants-cross appellants.  With him on the brief were Donald M. Falk, Brandon D. Baum, and Eric B. Evans.  Of counsel were Michael A. Molano, John C. Kloosterman, and Joshua M. Masur.

Appealed from:  United States District Court for the Central District of California

Judge Dale S. Fischer

## United States Court of Appeals for the Federal Circuit

06-1012, -1081

IPVENTURE, INC.,

Plaintiff-Appellant,

v.

PROSTAR COMPUTER, INC. and MIDERN COMPUTER, INC.,

Defendants-Cross Appellants.

_____

DECIDED: September 28, 2007
_____

Before NEWMAN, LOURIE, and BRYSON, Circuit Judges.

NEWMAN, Circuit Judge.


IpVenture, Inc. owns and licenses patents on inventions related to the management of personal computer systems. The company is owned by Mr. Peter Tong and Mr. C. Douglass Thomas. On August 14, 2003 IpVenture sued two computer manufacturers, ProStar Computer, Inc. and Midern Computer, Inc. (together "Defendants"), charging them with infringement of United States Patent No. 6,216,235 (the '235 patent) entitled "Thermal

and Power Management for Computer Systems," the joint invention of C. Douglass Thomas and his father, Alan E. Thomas.

Mr. C. Douglass Thomas had for several years been employed by the Hewlett-Packard Company as a patent attorney.  The Defendants moved for dismissal on the ground that IpVenture did not have standing to sue because it did not own the entire interest in the '235 patent, based on Mr. Thomas' obligations under his employment contract with Hewlett-Packard.  The district court agreed, and dismissed the suit without prejudice.[1]  IpVenture appeals the dismissal, and the Defendants cross-appeal for attorney fees.  We conclude that the dismissal was in error, for Hewlett-Packard had no assignment of an interest in the patent, and had disclaimed any interest therein.

DISCUSSION

Only the entity or entities that own or control all substantial rights in a patent can enforce rights controlled by that patent, lest an accused infringer be subjected to multiple suits and duplicate liability.  See Independent Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 468  (1926); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1551 (Fed. Cir. 1995) (*en banc*); see generally Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc., 248 F.3d 1333 (Fed. Cir. 2001).  Thus all entities with an independent right to enforce the patent are indispensable or necessary parties to an infringement suit.  When such an entity declines to join in the suit it may be joined involuntarily, either as a party plaintiff or party defendant; the purpose is to assure that all interested parties are before the

---

[1]    IpVenture, Inc. v. ProStar Computer, Inc., No. CV03-5780-DSF (C.D. Cal. Aug. 26, 2005).

court and that their interests are considered, as the Court explained in Shields v. Barrow, 58 U.S. (17 How.) 130, 141 (1854):

> [A]s is observed by this court in Mallow v. Hinde, 12 Wheat. 198, when speaking of a case where an indispensable party was not before the court, "we do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to courts of equity, whatever may be their structure as to jurisdiction; we put it on the ground that no court can adjudicate directly upon a person's right, without the party being either actually or constructively before the court."

Questions of necessary parties, as well as ownership rights, receive plenary review. Rite-Hite, 56 F.3d at 1551. The question is whether Hewlett-Packard had an ownership interest in the '235 patent when the suit was filed, and if so, the effect of Hewlett-Packard's later statement that it "never has had any legal or equitable rights" in the patent. We conclude that Hewlett-Packard was not a necessary party, on the facts of this case; we need not reach the question of whether the district court had discretion, in applying Fed. R. Civ. P. 19(a), to permit the addition of parties in this case without requiring dismissal and refiling by the plaintiff. See generally 7 C. Wright & A. Miller, Federal Practice and Procedure, §1611 (3d ed. 2001) (the intent behind Rule 19(a) is to permit greater discretion in the courts).

## A

Mr. Thomas was employed by Hewlett-Packard from 1992 to 1995. His employment agreement included a provision concerning inventions made by him that relate to Hewlett-Packard's business. The agreement provided:

> This Agreement also concerns inventions and discoveries (whether or not patentable) . . . (hereinafter called "Proprietary Developments") that are conceived or made by me alone or with others while I am employed by HP; that relate to the research and development of the business of HP, or result from work performed by me for HP; or that do not qualify under the prevailing provisions of California Labor Code Section 2870. Such Proprietary Developments are the sole property of HP, and I agree:

> a. to disclose them promptly to HP;
> b. to assign them to HP; and
> c. to execute all documents and cooperate with HP in all necessary activities to obtain patent, copyright, mask work, and/or trade secret protection in all countries, HP to pay the expenses.

The patent application that led to the '235 patent was filed in 1994, as the joint invention of C. Douglass Thomas and his father. On April 20, 2005 IpVenture and Hewlett-Packard entered into an agreement that, inter alia, addressed issues of the '235 patent as follows:

> IpVenture is the sole assignee of [the '235 patent and other patents] . . . HP has never asserted any ownership rights to the IpVenture Patents and agrees to forbear from asserting such rights at anytime in the future . . . [Hewlett-Packard] has no rights . . . and never has had any legal or equitable rights, including any shop rights, to any of the IpVenture Patents.

However, the district court declined to consider the content and effect of this agreement, because it was executed after this suit was filed. The court ruled that this agreement could not cure a "standing" defect, even if viewed as a retroactive assignment:

> The agreement reached in April 2005 need not be considered because the Complaint was filed in August 2003. Even if the April 2005 agreement were deemed an assignment of HP's interest (which Plaintiff and HP do not claim), acquisitions of rights in the patent at issue subsequently acquired do not cure standing defects, even if the assignments are "retroactive."

IpVenture, slip op. at 19.

The district court stated that California law does not distinguish between an assignment itself and an agreement to assign, and ruled that the employment agreement "constituted an assignment of all Proprietary Developments to HP." Reviewing Federal Circuit authority, the court concluded that this case is akin to the agreements in FilmTec Corp. v. Hydranautics, 982 F.2d 1546, 1554 (Fed. Cir. 1992) (the employment agreement's use of the phrase "does hereby grant" indicated a present assignment) and in Speedplay,

2006-1012, -1081                          4

Inc. v. Bebop, Inc., 211 F.3d 1245, 1253 (Fed. Cir. 2000) (the employment agreement's use of the phrase "hereby conveys, transfers and assigns" was a present assignment).  The district court distinguished the agreement in Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574 (Fed. Cir. 1991), where the employment agreement used the phrase "will be assigned," and this court ruled that this was an agreement to assign, not a present assignment.  Thus the district court concluded that the Hewlett-Packard provision whereby the employment agreement obligated Thomas to assign his inventions to Hewlett-Packard served as an immediate assignment of all inventions when they were made.

However, the agreement in this case tracks that of Arachnid, not that of FilmTec.  The FilmTec usage "does hereby grant" is not present; nor is the Speedplay usage "hereby . . . assigns."  Instead, the Hewlett-Packard agreement says "agree to assign."  This difference is reinforced by the Hewlett-Packard 2005 statement that it "never has had any legal or equitable rights" to the '235 patent.  The district court should have considered this statement, although it was written after this suit was filed, for it serves to remove any uncertainty arising from the language of the employment agreement.  While that agreement is an agreement to assign, such interest in the '235 patent must be implemented by written assignment.  See Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496, 499 (1936) (an option in a property right may be an equitable interest in the property but "it would not follow that . . . he acquires property at the date of the option rather than at the date of the conveyance").

Hewlett-Packard, by stating that it never had an interest in the '235 patent, confirmed the situation as to that patent and removed the need to construe the employment agreement.  Hewlett-Packard also confirmed that there is no possibility of a separate

infringement suit by Hewlett-Packard, thus serving the policy purposes explained in Independent Wireless, 269 U.S. at 468.  The Hewlett-Packard statement that it "never has had any legal or equitable rights" is effective in accordance with its terms.  We know of no public policy that is violated by giving this statement the meaning that is stated on its face, at least when no intervening right or other equitable consideration is asserted.

In accordance with Arachnid, 939 F.2d at 1579, Hewlett-Packard was not an assignee in 2003; the later document from Hewlett-Packard supports that position.  We conclude that the district court erred in ruling that dismissal was obligatory.  The dismissal is vacated.  The cross-appeal is mooted, and is dismissed.

VACATED AND REMANDED; CROSS-APPEAL DISMISSED